LATHAM & WATKINS LLP
Michele D. Johnson (SBN 198298)
Email: michele.johnson@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel.: 714.540.1235
Fax: 714.755.8290

Douglas K. Yatter (SBN 236089)
Jason C. Hegt (admitted *pro hac vice*)
Email: douglas.yatter@lw.com
Email: jason.hegt@lw.com
1271 Avenue of the Americas
New York, NY 10020
Tel.: 212.906.1200
Fax: 212.751.4864

*Attorneys for Defendants Goldman Sachs & Co. LLC, Keefe, Bruyette & Woods, Inc., Canaccord Genuity LLC, Compass Point Research & Trading, LLC, Craig-Hallum Capital Group LLC, J.P. Morgan Securities LLC, Wedbush Securities Inc., Citigroup Global Markets Inc., and UBS Securities LLC*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SILVERGATE CAPITAL CORPORATION SECURITIES LITIGATION | Case No. 3:22-cv-01936-JES-MSB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNDERWRITER DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Hearing Date:  November 29, 2023<br>Time:  9:00 a.m.<br>Courtroom:  4B<br>Judge:  Hon. James E. Simmons, Jr. |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................1

BACKGROUND ........................................................................................3

    A.    Silvergate and the Emerging Digital Currency Industry ...................3

    B.    Silvergate Stock Becomes Widely Available on the Open Market ........................................................................................3

    C.    Silvergate Issues Securities in a Series of Secondary Offerings ....................................................................................4

    D.    The Offering Materials Warn of Risks ...........................................4

    E.    The Digital Currency Industry Experiences a Period of Significant Disruption ...............................................................5

    F.    Amidst This Industry Turmoil, Plaintiffs File Suit...........................6

LEGAL STANDARD ................................................................................7

ARGUMENT .............................................................................................7

I.    Plaintiffs Fail To Plead Threshold Requirements Necessary To Bring a Claim Under the Securities Act..................................................7

    A.    Plaintiffs Lack Statutory Standing To Bring Section 11 Claims ....................................................................................7

    B.    Plaintiffs Lack Statutory Standing To Bring Section 12 Claims ..................................................................................14

    C.    Plaintiffs Do Not Allege That the Sales Agents Are Underwriters With Respect To the March-May 2021 "At-The-Market" Offering ..............................................................15

II.    Plaintiffs Fail To Allege That the Offering Materials Contained a Single False or Misleading Statement or Omission ...............................17

    A.    Plaintiffs' Securities Act Claims Sound in Fraud and Must Be Pleaded With Factual Particularity.....................................18

    B.    Plaintiffs Do Not Allege an Actionable Misstatement or Omission ...................................................................................19

        1.    Plaintiffs Cannot Ignore Extensive Cautionary Language..................................................................19

        2.    Plaintiffs Do Not Allege Contemporaneous Facts That Contradict the Challenged Statements ..........................21

CONCLUSION..........................................................................................25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

i

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbey v. Comput. Memories, Inc.*,
634 F. Supp. 870 (N.D. Cal. 1986)...............................................................11, 13

*In re Activision Sec. Litig.*,
621 F. Supp. 415 (N.D. Cal. 1985)......................................................................16

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
No. 03 MD 1529, 2007 WL 2615928 (S.D.N.Y. Sept. 10, 2007) .....................16

*In re AGS, Inc. Sec. Litig.*,
No. 20-cv-1209, 2022 WL 17406100 (D. Nev. Dec. 2, 2022)....................13, 15

*Applestein v. Medivation, Inc.*,
561 F. App'x 598 (9th Cir. 2014)........................................................................23

*In re ARIAD Pharms. Sec. Litig.*,
842 F.3d 744 (1st Cir. 2016) .................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................7

*In re Bare Escentuals, Inc. Sec. Litig.*,
745 F. Supp. 2d 1052 (N.D. Cal. 2010) ..............................................................18

*Boilermakers Nat'l Annuity Tr. Fund v. WaMu Mortg. Pass Through Certificates, Series AR1*,
748 F. Supp. 2d 1246 (W.D. Wash. 2010) ..........................................................12

*Callan v. Motricity Inc.*,
No. C11-1340, 2013 WL 195194 (W.D. Wash. Jan. 17, 2013),
*aff'd sub nom. Mosco v. Motricity, Inc.*, 649 F. App'x 526 (9th Cir. 2016)........................................................................................................21

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013)......................................................................*passim*

*In re Century Aluminum Co. Sec. Litig.*,
749 F. Supp. 2d 964 (N.D. Cal. 2010), *aff'd* 729 F.3d 1104 (9th Cir. 2013)..............................................................................................................7, 8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

ii

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

*Cervantes v. Countrywide Home Loans, Inc.*,
   656 F.3d 1034 (9th Cir. 2011)................................................................ 7

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
   No. 18-cv-04844, 2019 WL 6877195 (N.D. Cal. Dec. 17, 2019)................ 22, 23

*In re Cloudera, Inc.*,
   No. 19-cv-03221, 2021 WL 2115303 (N.D. Cal. May 25, 2021)..................... 19

*Doherty v. Pivotal Software, Inc.*,
   No. 19-cv-03589, 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019) ....................... 11

*Foster v. Jesup & Lamont Sec. Co.*,
   759 F.2d 838 (11th Cir. 1985), *abrogated on other grounds by*
   *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521 (11th Cir.
   1991)............................................................................................... 15

*Guenther v. Cooper Life Scis., Inc.*,
   759 F. Supp. 1437 (N.D. Cal. 1990)..................................................... 8

*Kalin v. Semper Midas Fund, Ltd.*,
   No. 21-cv-01062, 2021 WL 5906053 (N.D. Cal. Dec. 14, 2021)..................... 22

*Krim v. pcOrder.com, Inc.*,
   402 F.3d 489 (5th Cir. 2005)............................................................... 11

*In re Laser Arms Corp. Sec. Litig.*,
   794 F. Supp. 475 (S.D.N.Y. 1989) ....................................................... 16

*In re LendingClub Sec. Litig.*,
   282 F. Supp. 3d 1171 (N.D. Cal. 2017) ................................................ 11

*McFarland v. Memorex Corp.*,
   493 F. Supp. 631 (N.D. Cal. 1980)....................................................... 16

*Mehedi v. View, Inc.*,
   No. 21-cv-06374, 2023 WL 3592098 (N.D. Cal. May 22, 2023)..................... 15

*In re Metricom Sec. Litig.*,
   No. C 01-4085, 2004 WL 966291 (N.D. Cal. Apr. 29, 2004) ......................... 18

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir. 1989)............................................................... 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

iii

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015) ......................................................................................... 21

*Pinter v. Dahl*,
   486 U.S. 622 (1988) ......................................................................................... 14

*In re Pivotal Sec. Litig.*,
   No. 19-cv-03589, 2020 WL 4193384 (N.D. Cal. July 21, 2020) ..................... 17

*Plevy v. Haggerty*,
   38 F. Supp. 2d 816 (C.D. Cal. 1998) ............................................................... 19

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*,
   886 F. Supp. 2d 328 (S.D.N.Y. 2012) .............................................................. 11

*In re Progenity, Inc. Sec. Litig.*,
   No. 20-cv-01683, 2023 WL 219345 (S.D. Cal. Jan. 13, 2023) .................... 21, 25

*In re Quarterdeck Off. Sys., Inc. Sec. Litig.*,
   No. CV 92-3970, 1993 WL 623310 (C.D. Cal. Sept. 30, 1993) ....................... 11

*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007) .......................................................... 15, 16

*Rubke v. Capitol Bancorp Ltd*,
   551 F.3d 1156 (9th Cir. 2009) .......................................................................... 18

*Scott v. ZST Digital Networks, Inc.*,
   896 F. Supp. 2d 877 (C.D. Cal. 2012) ............................................................... 9

*Slack Techs., LLC v. Pirani*,
   143 S. Ct. 1433 (2023) ............................................................................... 7, 8, 9

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) ................................................................. 17, 18, 20

*In re Talis Biomedical Corp. Sec. Litig.*,
   No. 22-cv-00105, 2022 WL 17551984 (N.D. Cal. Dec. 9, 2022) ..................... 25

*Thomas v. Magnachip Semiconductor Corp.*,
   167 F. Supp. 3d 1029 (N.D. Cal. 2016) ..................................................... 9, 10, 17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

iv

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

*Veal v. LendingClub Corp.*,
423 F. Supp. 3d 785 (N.D. Cal. 2019)..........................................................................19, 22

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
195 F. Supp. 3d 528 (S.D.N.Y. 2016) ......................................................................22

*In re Vocera Commc'ns, Inc. Sec. Litig.*,
No. C-13-3567, 2015 WL 603208 (N.D. Cal. Feb. 11, 2015) ..........................14

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
495 F. Supp. 3d 622 (N.D. Ill. 2020), *aff'd sub nom. Nat'l Elevator
Indus. Pension Fund v. Conagra Brands, Inc.*, No. 21-1155, 2022
WL 1449184 (7th Cir. May 9, 2022)..........................................................12

*In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*,
259 F.R.D. 490 (W.D. Wash. 2009).............................................................14

*In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*,
694 F. Supp. 2d 1192 (W.D. Wash. 2009)..........................................................13

*Welgus v. TriNet Grp. Inc.*,
No. 15-cv-03625, 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017),
*aff'd*, 765 F. App'x 239 (9th Cir. 2019)..........................................................25

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
712 F. Supp. 2d 958 (N.D. Cal. 2010)..........................................................8, 13

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021)..........................................................22

*Wong v. Arlo Techs., Inc.*,
No. 19-cv-00372, 2019 WL 7834762 (N.D. Cal. Dec. 19, 2019)......................18

*In re Worlds of Wonder Sec. Litig.*,
35 F.3d 1407 (9th Cir. 1994)..........................................................25

*Yates v. Mun. Mortg. & Equity, LLC*,
744 F.3d 874 (4th Cir. 2014)..........................................................9

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009)..........................................................23

*In re Zynga Inc. Sec. Litig.*,
No. C 12-04007, 2014 WL 721948 (N.D. Cal. Feb. 25, 2014)..........................14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

v

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

## STATUTES

15 U.S.C.
   § 77a *et seq.* ................................................................................*passim*
   § 77b ...........................................................................................16
   § 77k ..................................................................................*passim*
   § 77*l* ......................................................................................14, 17
   § 78a *et seq.* ................................................................................*passim*

## RULES

Fed. R. Civ. P.
   9 ................................................................................................18
   11 ...............................................................................................23
   12 .................................................................................................7

## REGULATIONS

17 C.F.R. § 229.512 ..........................................................................14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

vi

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

# **GLOSSARY**

| Term | Definition |
|---|---|
| 2019 Form 10-K | Silvergate Form 10-K for the fiscal year ended December 31, 2019 filed with the SEC on March 10, 2020 (Ex. A) |
| 2020 Form 10-K | Silvergate Form 10-K for the fiscal year ended December 31, 2020 filed with the SEC on March 8, 2021 (Ex. C) |
| 2021 Offerings | The January 2021 Offering, March-May 2021 Offering, July 2021 Offering, and December 2021 Offering |
| Bucks County | Bucks County Employees Retirement Fund |
| Common Stock | Silvergate Class A Common Stock |
| Complaint or AC | Amended Consolidated Class Action Complaint in *In re Silvergate Capital Corporation Securities Litigation*, Case No. 3:22-cv-01936 (S.D. Cal.), ECF No. 43 |
| December 2021 Offering | Silvergate's offering of 3,806,895 shares of Common Stock conducted in December 2021 |
| December 2021 Offering Materials | Dec. 2021 ProSupp. and all documents incorporated therein by reference, including the 2020 Form 10-K |
| Dec. 2021 ProSupp. | Silvergate Prospectus Supplement filed with the SEC on December 8, 2021 (Ex. F) |
| Exchange Act | Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* |
| Exchange Act Defendants | Silvergate and Alan J. Lane |
| FE | Former Employee |
| IPRS | Indiana Public Retirement System |
| January 2021 Offering | Silvergate's offering of 4,563,493 shares of Common Stock conducted in January 2021 |
| January 2021 Offering Materials | Jan. 2021 ProSupp. and all documents incorporated therein by reference, including the 2019 Form 10-K |
| Jan. 2021 ProSupp. | Silvergate Prospectus Supplement filed with the SEC on January 25, 2021 (Ex. B) |
| July 2021 Offering | Silvergate's offering of 8 million shares of Preferred Stock conducted in July 2021 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

vii

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

| Term | Definition |
|---|---|
| July 2021 Offering Materials | July 2021 ProSupp. and all documents incorporated therein by reference, including the 2020 Form 10-K |
| July 2021 ProSupp. | Silvergate Prospectus Supplement filed with the SEC on July 30, 2021 (Ex. E) |
| Local 793 | International Union of Operating Engineers, Local No. 793, Members Pension Benefit Trust of Ontario |
| March-May 2021 Offering | Silvergate's "at-the-market" offering of 2.79 million shares of Common Stock conducted over a period of approximately 12 weeks from March to May of 2021 |
| March-May 2021 Offering Materials | Mar.-May 2021 ProSupp. and all documents incorporated therein by reference, including the 2020 Form 10-K |
| Mar.-May 2021 ProSupp. | Silvergate Prospectus Supplement filed with the SEC on March 9, 2021 (Ex. D) |
| Offering Materials | January 2021, March-May 2021, July 2021, and December 2021 Offering Materials |
| Preferred Stock or Preferred | Silvergate Preferred Stock, Series A |
| Sales Agents | Goldman Sachs & Co. LLC, Keefe, Bruyette & Woods, Inc., Canaccord Genuity LLC, Compass Point Research & Trading, LLC, Craig-Hallum Capital Group LLC, J.P. Morgan Securities LLC, and Wedbush Securities Inc. |
| Securities Act | Securities Act of 1933, 15 U.S.C. § 77a *et seq.* |
| SEN | Silvergate Exchange Network |
| Silvergate or the Company | Silvergate Capital Corporation |
| Silvergate Defendants | Silvergate, Alan J. Lane, Antonio Martino, Karen F. Brassfield, Paul D. Colucci, Thomas C. Dircks, Aanchal Gupta, Michael Lempres, Scott A. Reed, and Colleen Sullivan |
| Underwriter Defendants | Goldman Sachs & Co. LLC, Keefe, Bruyette & Woods, Inc., Canaccord Genuity LLC, Compass Point Research & Trading, LLC, Craig-Hallum Capital Group LLC, J.P. Morgan Securities LLC, Wedbush Securities Inc., Citigroup Global Markets Inc., and UBS Securities LLC |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

viii

## PRELIMINARY STATEMENT

Plaintiffs' Complaint contains two sets of claims. The first—under the Exchange Act against Silvergate and its CEO—covers purported misrepresentations made over a three-year period. The second—under the Securities Act against Silvergate, certain of its directors and officers, and the Underwriter Defendants—is limited to five statements made in written materials for offerings of new stock in 2021. Yet in the Complaint's more than 160 pages, Plaintiffs do not allege even the most basic facts necessary to plead Securities Act claims, which are the only claims asserted against the Underwriter Defendants. These claims are fundamentally flawed because Plaintiffs do not show, as required, that (1) Plaintiffs purchased securities issued in each of the offerings or (2) these five statements were false or misleading. Accordingly, Plaintiffs' Securities Act claims must be dismissed.

**Plaintiffs Lack Standing**: Plaintiffs acknowledge that their Securities Act claims are limited to the 2021 Offerings, yet they do not plead facts sufficient to show they purchased securities sold in these offerings. Under Section 11 of the Securities Act, a plaintiff can maintain a claim only where it can "trace" its shares to the specific registration statement (*i.e.*, documents that register particular securities for sale) that it contends was false or misleading. Section 12 of the Securities Act is even more stringent, permitting claims only by those who purchased in a public offering directly from the defendants. Plaintiffs do not allege facts to satisfy either of these standards, and they cannot substitute the generic boilerplate assertion that they purchased "pursuant and/or traceable to" or "pursuant to" the 2021 Offerings (AC ¶¶ 416, 418-19, 421, 436) to satisfy their pleading obligation. *See, e.g.*, *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013). This alone requires dismissal. *See* Section I.

**No False Statement**: Plaintiffs likewise do not plead that the published materials for any of these offerings were false or misleading. Unlike Plaintiffs'

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

1

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

Exchange Act claims, which challenge dozens of statements that Silvergate and its CEO made from 2019 to 2023, Plaintiffs' Securities Act claims purport only to challenge five statements found in the 2021 Offering Materials related to Silvergate's customer diligence practices. The crux of Plaintiffs' claims is that certain Silvergate customers were implicated in illicit activities and that Silvergate ceased operations amidst a historic disruption in the digital currency industry. But merely collecting negative news about Silvergate and the broader digital currency industry over the last year does not render any statement in the Offering Materials misleading because those events do not support Plaintiffs' theory of falsity—that Silvergate lacked the customer diligence practices it described to investors. To the contrary, Silvergate repeatedly warned investors of this precise scenario when it disclosed that (i) most of its deposits were from businesses involved in the digital currency industry, (ii) the nature of that industry meant that fraudulent transactions "may be more likely to occur" and (iii) there can be "no assurance" that Silvergate could detect or prevent such activity.

In light of these detailed warnings, Plaintiffs do not (and cannot) make this case about whether Silvergate had designed sufficient procedures to detect and prevent customers' fraud. Instead, Plaintiffs are forced to claim that statements in each of the 2021 Offering Materials were false or misleading when made because Silvergate allegedly had *no customer diligence procedures whatsoever* during 2021. The Complaint contains no support for such a theory. Plaintiffs recite purported wrongdoing by certain of Silvergate's digital currency customers in 2022, *after* the last of the offerings, but the Ninth Circuit has repeatedly held that this "pleading by hindsight" does not establish that statements were false when made, particularly where—as here—the Offering Materials warned of the very risks that later came to pass. Nor do allegations from six former Silvergate employees provide any support for a claim concerning Silvergate's customer diligence procedures in 2021. Indeed, two of the employees left Silvergate before the 2021 Offerings occurred, and two

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

2

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

others did not join until after they were completed. The generalized allegations attributed to the remaining two former employees lack even the most basic time references or other specifics to tie their allegations to any particular statement made in the 2021 Offering Materials. Simply put, Plaintiffs have done nothing to support their claim that the specific statements that are the subject of their Securities Act claims were false or misleading. *See* Section II.

For these reasons, Plaintiffs' Securities Act claims should be dismissed.[1]

## **BACKGROUND**

### A.   **Silvergate and the Emerging Digital Currency Industry**

Silvergate opened its doors in 1988 as an industrial bank, offering traditional financial services to customers in a range of industries. AC ¶ 26; Ex. A (2019 Form 10-K) at 86.[2] Over time, Silvergate began to provide services to customers in the emerging digital currency space. AC ¶ 27; Ex. A (2019 Form 10-K) at 8. As that industry grew, Silvergate developed specialized services, including the SEN which was a payment network that digital currency exchanges could use to transfer traditional currency. AC ¶ 30; Ex. A (2019 Form 10-K) at 8-9. By 2019, Silvergate had attracted many digital currency exchange customers and its deposits grew. AC ¶¶ 32-33.

### B.   **Silvergate Stock Becomes Widely Available on the Open Market**

On November 7, 2019, Silvergate completed an initial public offering of 3.3 million shares of its Common Stock. AC ¶ 3; Ex. A (2019 Form 10-K) at 8. None of the claims against the Underwriter Defendants relate to that IPO. Over the next year, many other shares of Silvergate stock entered the market. By mid-January 2021 (*i.e.*, at the time of the first of the 2021 Offerings), there were more than 18.7

---

[1] The Underwriter Defendants join in the contemporaneously filed motion to dismiss by the Silvergate Defendants (the "Silvergate Br.") (ECF No. 66) in all applicable respects.

[2] All citations to "Ex. ___" refer to the exhibits to the declaration of Jason C. Hegt filed concurrently herewith, and pin cites to exhibits refer to the page numbers stamped on the bottom-right corner of each page.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

3

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

million shares of Silvergate Common Stock in the open market. *See* Ex. D (Mar.-May 2021 ProSupp.) at 359.

### C.  Silvergate Issues Securities in a Series of Secondary Offerings

During 2021, Silvergate conducted three public offerings of its Common Stock—in January, March-May, and December of 2021—selling 11.1 million shares. AC ¶¶ 332-33, 335. Silvergate also conducted an offering of 8 million shares of Preferred Stock in July 2021. *Id.* ¶ 334. Unlike the Common Stock, the Preferred carried a 5.375% fixed rate of return and traded under a different ticker symbol. *Id.*; Ex. E (July 2021 ProSupp.) at 398, 401. Three of the offerings (January, July, and December 2021) were traditional offerings in which a group of financial institutions acted as "underwriters" by "commit[ting] to take and pay for all of the shares being offered" and then selling those shares to the public. *See, e.g.*, Ex. B (Jan. 2021 ProSupp.) at 168; AC ¶¶ 325, 327-28. The March-May 2021 Offering, however, was different. It was an "at-the-market" offering conducted over a period of approximately 12 weeks in which certain financial institutions merely acted as potential "sales agents" who, upon request, would attempt to broker sales of Common Stock from Silvergate to investors. AC ¶ 333; Ex. D (Mar.-May 2021 ProSupp.) at 321.

### D.  The Offering Materials Warn of Risks

The Offering Materials for each of the 2021 Offerings repeatedly warned potential investors of the "high degree of risk" associated with investing in Silvergate securities. *See, e.g.*, Ex. B (Jan. 2021 ProSupp.) at 155. Indeed, these disclosures clearly warned that Silvergate was operating in an evolving, high-risk industry, which created a likelihood that its risk management framework would not detect all illicit activity:

- "***The characteristics of digital currency have been, and may in the future continue to be, exploited to facilitate illegal activity . . . if any of our customers do so or are alleged to have done so, it could adversely affect us***. Digital currencies and the digital currency industry are relatively new and, in many cases, lightly regulated or largely unregulated. . . . While we

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

4

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

believe that our risk management and compliance framework . . . is reasonably designed to detect any such illicit activities conducted by our potential or existing customers (or, in the case of digital currency exchanges, their customers), we cannot ensure that we will be able to detect any such illegal activity in all instances.  Because the speed, irreversibility and anonymity of certain digital currency transactions make them more difficult to track, fraudulent transactions may be more likely to occur." Ex. A (2019 Form 10-K) at 27 (emphasis in original); Ex. C (2020 Form 10-K) at 221 (emphasis in original).[3]

- "[G]iven the rapid developments in digital currency markets and technologies, there can be no assurance that [Silvergate's] enhanced procedures will be adequate to detect or prevent money laundering activity." Ex. A (2019 Form 10-K) at 42; Ex. C (2020 Form 10-K) at 233.

- "The following factors, among others, could cause our financial performance to . . . materially" suffer: "potential exposure to fraud . . . relating to our development and use of new technology platforms"; "the effectiveness of our internal control over financial reporting"; and "the adequacy of our risk management framework."  Ex. B (Jan. 2021 ProSupp.) at 179-180; Ex. D (Mar.-May 2021 ProSupp.) at 354-55; Ex. E (July 2021 ProSupp.) at 450-51; Ex. F (Dec. 2021 ProSupp.) at 508-09.

- ***"The majority of the Bank's deposits are from businesses involved in the digital currency industry.  As a result, we rely heavily on the success of the digital currency industry*** . . . .  Other factors affecting the further development of the digital currency industry and our business include . . . the use of digital currencies, or the perception of such use, to facilitate illegal activity such as fraud [and] money laundering . . ." Ex. A (2019 Form 10-K) at 28; *see also* Ex. C (2020 Form 10-K) at 222.

### E.    The Digital Currency Industry Experiences a Period of Significant Disruption

In November 2022, almost two years from the first of the 2021 Offerings and almost one year from the last, reports began to emerge that digital currency exchange FTX, a Silvergate customer, had misappropriated billions of dollars from its customers.  AC ¶ 10.  The collapse of FTX started a "bank run" with  Silvergate's customers withdrawing funds, ultimately leading to Silvergate's deposits decreasing by more than 60% or $8.1 billion in the fourth quarter of 2022.  AC ¶ 276.  In March 2023, months after the CEO of one of its largest customers was indicted for fraud

---

[3] *See* Ex. B (Jan. 2021 ProSupp.) at 175 ("You should carefully review the risks and uncertainties . . . beginning on page 24 of our [2019 Form 10-K]."); AC ¶¶ 332-35 (admitting that the 2019 Form 10-K and 2020 Form 10-K were incorporated by reference into the Offering Materials).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

5

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

(including for deceiving Silvergate), Silvergate announced it would proceed with an orderly liquidation.  AC ¶¶ 100, 146.

### F.    Amidst This Industry Turmoil, Plaintiffs File Suit

On December 7, 2022, plaintiff Steven Rosa filed a purported class action suit against Silvergate and two of its officers, alleging Exchange Act violations.  *See* ECF No. 1 ¶¶ 12-16, 56-70.  Several other cases, including one alleging Securities Act claims, were later filed and consolidated with that suit (ECF Nos. 11, 13, 17), and on May 11, 2023, Plaintiffs filed the present Complaint consolidating all claims (ECF No. 43).  Plaintiffs bring Exchange Act claims against Silvergate and its CEO Alan J. Lane (AC ¶¶ 23-24) pertaining to dozens of statements from 2019 to 2023 and Securities Act claims against Silvergate, Mr. Lane, certain Silvergate directors, and the Underwriter Defendants.  *Id.* ¶¶ 323-24, 329.

Plaintiffs' Securities Act claims challenge five statements, which appeared in each of the Offering Materials (or the material incorporated therein by reference).  The challenged statements are that Silvergate:

1.    conducts "extensive regulatory compliance diligence";

2.    has a "deep-rooted commitment and proprietary approach to regulatory compliance";

3.    performs "thorough reviews . . . as part of [its] due diligence process" in connection with its "onboarding new customers or monitoring existing customers";

4.    performs "ongoing monitoring of customer activities"; and

5.    conducts, for digital currency exchanges, "enhanced procedures to screen and monitor these customers, which include, but are not limited to, system monitoring rules tailored to digital currency activities, a system of 'red flags' specific to various customer types and activities, the development of and investment in proprietary technology tools to supplement our third-party transaction monitoring system, customer risk scoring with risk factors specific to the digital-currency industry." AC ¶ 336.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
ORANGE COUNTY

6

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

## LEGAL STANDARD

Under Rule 12(b)(6), dismissal is required where a complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement" to survive dismissal. *Id.* (internal quotation marks and citation omitted). Courts are "not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 969 (N.D. Cal. 2010), *aff'd* 729 F.3d 1104 (9th Cir. 2013) (internal quotation marks and citation omitted).

## ARGUMENT

Plaintiffs' Securities Act claims are subject to two overarching flaws. *First*, Plaintiffs fail to satisfy threshold standing requirements for these claims. *Second*, Plaintiffs fail to allege a false or misleading statement in the Offering Materials.

### I. Plaintiffs Fail To Plead Threshold Requirements Necessary To Bring a Claim Under the Securities Act

#### A. Plaintiffs Lack Statutory Standing To Bring Section 11 Claims

"To bring a claim under § 11, the securities held by the plaintiff must be traceable to the particular registration statement alleged to be false or misleading." *Slack Techs., LLC v. Pirani*, 143 S. Ct. 1433, 1440-41 (2023). This pleading requirement is not particularly onerous when section 11 claims are brought under a single registration statement (*e.g.*, after an initial public offering). However, "when a company has issued shares under more than one registration statement"—as is the case here for each of the 2021 Offerings which were effectuated over a year or more

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

7

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

after Silvergate first issued shares—"the plaintiff must prove that her shares were issued under the allegedly false or misleading registration statement, rather than some other registration statement." *Century Aluminum*, 729 F.3d at 1106-07. Just last month, the Supreme Court reaffirmed the importance of this requirement when reversing a Ninth Circuit decision excusing investors from pleading tracing, holding that a plaintiff must "plead and prove that he purchased shares traceable to the allegedly defective registration statement." *Slack Techs.*, 143 S. Ct. at 1442. This tracing requirement "is the condition Congress has imposed for granting access to the relaxed liability requirements § 11 affords," which generally does not require a plaintiff to plead reliance or loss causation. *Century Aluminum*, 729 F.3d at 1107 (internal quotation marks omitted); *see also Century Aluminum*, 749 F. Supp. 2d at 979 (tracing requirement exists to prevent Section 11 claims where "the shareholder's connection to the relevant offering is so attenuated that he or she cannot directly trace his or her shares to the offering").

Thus, to plead the requisite statutory standing under Section 11, Plaintiffs must provide factual allegations showing that (i) they "purchased their shares directly in the secondary offering itself," or (ii) "their shares, although purchased in the aftermarket, can be traced back to the secondary offering." *Century Aluminum*, 729 F.3d at 1106-07. "That is easier said than done" because Section 11 "require[s] plaintiffs to trace the chain of title for their shares back to the secondary offering, starting with their own purchases and ending with someone who bought directly in the secondary offering." *Id.* Indeed, as the Ninth Circuit has recognized, "[c]ourts have long noted that ***tracing shares in this fashion is often impossible***." *Id.* at 1107 (citation and internal quotation marks omitted) (emphasis added). Yet however difficult this requirement, "[t]he burden of tracing shares to a particular public offering rests with plaintiffs." *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 963 (N.D. Cal. 2010) (quoting *Guenther v. Cooper Life Scis., Inc.*, 759 F. Supp. 1437, 1439 (N.D. Cal. 1990)). Failure to plead tracing under

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

8

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

Section 11 constitutes a "failure to state a claim on which relief can be granted" and requires dismissal as a matter of law. *Century Aluminum*, 729 F.3d at 1109; *Slack Techs.*, 143 S. Ct. at 1441-42 (noting that the Securities Act is "limited in scope" and unless Congress "revise[s] the securities laws," Section 11 "requires a plaintiff to plead and prove that he purchased shares traceable to the allegedly defective registration statement" to survive dismissal).

Here, Plaintiffs offer no factual allegations even suggesting they meet either prong of this standard. They do not allege that they purchased "directly in" any of the 2021 Offerings or that their purchases are traceable to any of the 2021 Offerings. Instead, Plaintiffs allege in entirely conclusory fashion that their shares were purchased "pursuant and/or traceable to" or "pursuant to" the 2021 Offerings. AC ¶¶ 416, 418-19, 421, 432-33. However, the Ninth Circuit (and federal appellate courts across the country) have concluded that such bare recitations of the statutory requirements are insufficient to plead statutory standing.[4]

This pleading failure is particularly salient here where prior to the first of the four 2021 Offerings in January 2021, there were already more than 18.7 million outstanding shares of Silvergate Common Stock trading in the market. *See* Ex. D (Mar.-May 2021 ProSupp.) at 359. By the time of the December 2021 Offering, there were over 26.5 million shares outstanding, all issued pursuant to other registration statements. *See* Ex. F (Dec. 2021 ProSupp.) at 488. With millions of

---

[4] *See Century Aluminum*, 729 F.3d at 1108 ("[T]he conclusory allegation that plaintiffs 'purchased [the Company's] common stock directly traceable to the Company's Secondary Offering' does not allow [the Court] to draw a reasonable inference about anything because it is devoid of factual content."); *In re ARIAD Pharms. Sec. Litig.*, 842 F.3d 744, 756 (1st Cir. 2016) ("[A] general allegation that a plaintiff's shares are traceable to the offering in question is nothing more than a 'formulaic recitation' of that element."); *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 901 (4th Cir. 2014) (no Securities Act standing because "[t]he 'pursuant and/or traceable to' language of the complaint is conclusory"); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1055 (N.D. Cal. 2016) (noting that the Ninth Circuit "has explicitly rejected general allegations as sufficient pleadings of statutory standing"); *Scott v. ZST Digital Networks, Inc.*, 896 F. Supp. 2d 877, 883 (C.D. Cal. 2012) ("District courts in this Circuit addressing the issue have uniformly held that mere boilerplate allegations of traceability are insufficient to plead this standing requirement.") (collecting cases).

shares of Silvergate Common Stock outstanding and trading at the time of each of the 2021 Offerings, Plaintiffs' allegations are entirely consistent with an "obvious alternative explanation"—that Plaintiffs purchased shares from the pre-existing, rather than newly issued, Silvergate Common Stock.  *See Century Aluminum*, 729 F.3d at 1108 (dismissing Section 11 claims where plaintiffs did "not tend to exclude the possibility that their shares came from the pool of previously issued shares.").

**January and December 2021 Offerings**:  Plaintiffs assert, for just two of the challenged offerings, that some of the Plaintiffs purchased shares around the date of the offerings at the public offering prices.[5]  But these carefully worded allegations do not plead, as required, that any Plaintiff purchased "directly in the secondary offering itself," or that their shares are traceable to the relevant offerings.  *Century Aluminum*, 729 F.3d at 1106.  Allegations that a plaintiff "purchased their shares on the day of the . . . Offering . . . and for the same offering price" are insufficient to plead statutory standing.  *See Thomas*, 167 F. Supp. 3d at 1055.  That is because these allegations again are entirely consistent with an "obvious alternative explanation"—that Plaintiffs purchased shares from the pre-existing, rather than newly issued, Silvergate Common Stock.  Indeed, "brokerage houses do not identify specific shares with particular accounts but instead treat the account as having an undivided interest in the house's position," so Plaintiffs' (unidentified) brokers may have given all customers the same price even though some customers may have received preexisting shares purchased at slightly different prices.  *Century Aluminum*, 729 F.3d at 1107 (citation omitted).[6]

---

[5] *See* AC ¶¶ 418, 446 (alleging that Bucks County "acquired common stock pursuant to the January 2021 Offering" and "purchased 660 shares of Silvergate common stock on January 22, 2021 at the public offering price in the January 2021 Offering"); AC ¶¶ 419, 447 (alleging that IPRS and Local 793 "each acquired common stock pursuant to the December 2021 Offering" and on December 7, 2021, each purchased "at the public offering price in the December 2021 Offering").

[6] Plaintiffs' alleged purchase dates likewise do not show that they purchased "directly in" or traceable to either offering.  Although Bucks County alleges it made its purchase on January 22, 2021 (AC ¶ 418; ECF No. 43-1 at 12), the final

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

10

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

Here, it is especially likely that Plaintiffs purchased previously existing shares not traceable to the relevant offerings. By the time of the January 2021 Offering there were already over 18.7 million shares of Silvergate Common Stock outstanding, far more than the just over 4.5 million shares offered in connection with the January 2021 Offering. AC ¶ 332; Ex. D (Mar.-May 2021 ProSupp.) at 359. And by the time of the December 2021 Offering, which registered approximately 3.8 million shares, there already were more than 26.5 million shares of Silvergate Common Stock outstanding. AC ¶ 335; Ex. F (Dec. 2021 ProSupp.) at 488. However, even were the odds reversed (*i.e.*, more newly issued shares than pre-existing ones), "[t]raceability . . . is not a matter of probability, but rather is construed literally and requires a showing that the shares purchased were actually the offending shares." *Doherty v. Pivotal Software, Inc.*, No. 19-cv-03589, 2019 WL 5864581, at *10 (N.D. Cal. Nov. 8, 2019) (quoting *In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1180 (N.D. Cal. 2017)).[7] This is because "[p]laintiffs are in

prospectus supplement for the January 2021 Offering was issued on January 25, 2021 (AC ¶ 332), and noted that shares would be delivered "on or about January 26, 2021." Ex. B (Jan. 2021 ProSupp.) at 136. Previously issued shares of Silvergate Common Stock were trading on the open market during this entire window. Likewise, although IPRS and Local 793 allege they made their purchases on December 7, 2021 (AC ¶ 419; ECF No. 43-1 at 4), the final prospectus supplement for the December 2021 Offering was issued on December 8, 2021 (AC ¶ 335), and noted that shares would be delivered "on or about December 9." AC ¶ 335; Ex. F (Dec. 2021 ProSupp.) at 472. This defeats Section 11 standing. *See Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 339 (S.D.N.Y. 2012) (holding that plaintiff who purchased prior to offering "cannot possibly 'trace' its stock purchases to an offering or registration statement").

[7] *See also Doherty*, 2019 WL 5864581, at *10 ("Simply alleging that stock is traceable because of a favorable percentage does not give rise to a reasonable inference that plaintiffs' shares are traceable.") (internal quotation marks omitted); *In re Quarterdeck Off. Sys., Inc. Sec. Litig.*, No. CV 92-3970, 1993 WL 623310, at *2-3 (C.D. Cal. Sept. 30, 1993) (plaintiffs failed to allege traceability where 97% of the outstanding shares were issued pursuant to the challenged registration statement); *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 496-97 (5th Cir. 2005) ("[A]ccepting such 'statistical tracing' would impermissibly expand the statute's standing requirement. . . . To allow Appellants to satisfy the tracing requirement for aftermarket standing in this case with the proffered statistical methodology would contravene the language and intent of Section 11."); *Abbey v. Comput. Memories, Inc.*, 634 F. Supp. 870, 875 (N.D. Cal. 1986) ("Relaxing the tracing requirement such that a plaintiff may fulfill it by showing even a high probability that some of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

11

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

the best position to know whether [they] purchased stock directly from an underwriter and could have included more information in the complaint." *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 670-71 (N.D. Ill. 2020), *aff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Conagra Brands, Inc.*, No. 21-1155, 2022 WL 1449184 (7th Cir. May 9, 2022); *see Boilermakers Nat'l Annuity Tr. Fund v. WaMu Mortg. Pass Through Certificates, Series AR1*, 748 F. Supp. 2d 1246, 1254 (W.D. Wash. 2010) ("[I]f plaintiffs did in fact purchase the Certificates directly from the defendants, they should have said so.") (citation and internal quotation marks omitted). The Ninth Circuit requires Plaintiffs to do more than offer a handful of facts that are "merely consistent with their favored explanation"; they must provide "[s]omething more . . . such as facts tending to exclude the possibility" that they acquired pre-existing shares. *Century Aluminum*, 729 F.3d at 1108 (affirming dismissal where Plaintiffs' factual allegations were "consistent with their shares having come from either source"). Having not made the required factual allegations tracing their purchases to either the January or December 2021 Offerings, Plaintiffs lack standing to pursue claims under Section 11 related to those offerings.

**March-May 2021 Offering**: Unlike the other 2021 Offerings at issue, the March-May 2021 Offering was conducted over a period of approximately twelve weeks from early March to mid-May 2021. AC ¶ 333. Purchases in this "at-the-market" offering were made "directly on or through the New York Stock Exchange," "through a market maker," or through "privately negotiated transactions." Ex. D (Mar.-May 2021 ProSupp.) at 321. The prices of these transactions varied, as they were made at "market prices prevailing at the time of sale," "negotiated prices," or at prices "agreed between [Silvergate] and any sales agent." *Id.* The Complaint does not even attempt to allege that any Plaintiff purchased in this offering, instead

his shares were from the relevant offering would be inconsistent with the narrow scope of potential liability envisioned by [S]ection 11.").

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
ORANGE COUNTY

12

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

asserting generally that Plaintiffs purchased shares "during the Class Period," which extends from 2019 to 2023. *See* AC ¶¶ 17-22; *see also id.* ¶ 421. These allegations, untethered to the March-May 2021 Offering, are self-defeating, and accordingly, Plaintiffs' claims with respect to this offering fail as a matter of law. *See Century Aluminum*, 729 F.3d at 1108.

**July 2021 Offering**: Unlike the other 2021 Offerings, the July 2021 Offering involved shares of Preferred Stock. AC ¶ 334. Plaintiffs do not allege that they purchased even a single share of Preferred Stock at any time. As a result, they lack standing to bring Section 11 claims related to this offering. *See Wells Fargo*, 712 F. Supp. 2d at 964 (courts have "overwhelmingly held that the lead plaintiffs named in the complaint lack standing to challenge any offering through which no lead plaintiff actually purchased a security") (citations omitted); *In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 694 F. Supp. 2d 1192, 1221 (W.D. Wash. 2009) (dismissing for lack of Section 11 standing because "[t]here is no named plaintiff who can be deemed a 'person acquiring such security'").[8]

\*    \*    \*

At bottom, Plaintiffs have not met their pleading burden to trace their shares to any particular registration statement. "Section 11 simply was not intended to provide a remedy to every person who might have been harmed by a defective registration statement. . . . [A] plaintiff who can only show that his or her shares might have been issued in the relevant offering . . . should be treated the same as individuals whose shares clearly were not issued in the offering." *Abbey*, 634 F. Supp. at 875. Plaintiffs' Section 11 claims should be dismissed.[9]

---

[8] Because UBS Securities LLC and Citigroup Global Markets Inc. did not play any role with respect to any of the other offerings, this pleading failure disposes of all claims brought against them. *See* AC ¶¶ 325-28.

[9] Offering-by-offering analysis is required because even "where an offering is made pursuant to a common Registration Statement, but with an amended Prospectus, 'each such post-effective amendment shall be deemed to be a new registration statement relating to the securities offered therein.'" *Wells Fargo*, 712 F. Supp. 2d

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

13

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

**B.      Plaintiffs Lack Statutory Standing To Bring Section 12 Claims**

Section 12 of the Securities Act is even narrower than Section 11.  Liability under Section 12(a)(2) extends only to those who "offer[] or sell[] a security" by means of a prospectus or oral communication that includes a misstatement.  15 U.S.C. § 77*l*(a)(2).  The Supreme Court has interpreted this language as contemplating a "buyer-seller relationship not unlike traditional contractual privity." *Pinter v. Dahl*, 486 U.S. 622, 642 (1988).  In *Pinter*, the Court defined "seller" as (1) "the owner who passed title," or (2) a "person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner."  *Id.* at 642, 647; *see also Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 536-37 (9th Cir. 1989). "Mere participation" in a solicitation or sale does not suffice.  *Pinter,* 486 U.S. at 650.

Here, the Complaint asserts in conclusory fashion that Defendants "were statutory sellers and offerors and/or solicitors of purchases of the Silvergate securities registered in the 2021 Offerings," and that "each Defendant named in this count promoted, solicited, and/or sold millions of Silvergate securities to Plaintiffs and members of the Class."  AC ¶ 444.  This boilerplate language provides none of the facts that would satisfy either prong of *Pinter*.

First, Plaintiffs do not allege that they received title from any of the Underwriter Defendants.  In fact, the AC does not provide any information regarding

at 964 (quoting 17 C.F.R. § 229.512(a)(2)).  "The case law is clear that a named plaintiff has standing under Section 11 only as to the documents that governed his own purchase of securities."  *Id.*; *see also In re AGS, Inc. Sec. Litig.*, No. 20-cv-1209, 2022 WL 17406100, at *3 (D. Nev. Dec. 2, 2022) (holding that plaintiffs lacked statutory standing to challenge a secondary offering in which they did not purchase notwithstanding that plaintiffs purchased in a different secondary public offering which "relied on nearly identical shelf registration statements and resulted in the same type of injury"); *In re Zynga Inc. Sec. Litig.*, No. C 12-04007, 2014 WL 721948, at *3-4 (N.D. Cal. Feb. 25, 2014) ("[L]ead plaintiffs . . . lack standing to challenge any offering through which no lead plaintiff actually purchased a security."); *In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 259 F.R.D. 490, 504 (W.D. Wash. 2009) ("Because . . . causes of action [under Section 11 and Section 12(a)(2) ] are tied to an offering document or oral communication, only those who acquired securities in the offering to which the document or oral communication pertains have standing to sue.") (citation omitted).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

14

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

who sold Plaintiffs any of their shares.  This failure alone is dispositive.  *See In re Vocera Commc'ns, Inc. Sec. Litig.*, No. C-13-3567, 2015 WL 603208, at *2 (N.D. Cal. Feb. 11, 2015) (no Section 12 claim absent alleged purchase from defendants).

Second, the Complaint does not allege that any of the Underwriter Defendants "successfully solicited" any of Plaintiffs' purchases.  The Complaint's threadbare allegations about the Underwriters Defendants' conduct (AC ¶¶ 444 ("promoted, solicited, and/or sold"), 445 ("issued and disseminated" statements "in the 2021 Offering Documents"), 450 ("directly or indirectly . . . used the means and instrumentalities of interstate commerce")) merely list generic tasks that any underwriter might perform in connection with any offering, and are therefore insufficient to state a claim.  *See Mehedi v. View, Inc.*, No. 21-cv-06374, 2023 WL 3592098, at *12 (N.D. Cal. May 22, 2023) (dismissing for failure to allege that each defendant "played a direct role in the solicitation of the Plaintiff"); *AGS, Inc.*, 2022 WL 17406100, at *4 (rejecting "vague and conclusory allegations" that defendants were statutory sellers where, as here, allegations were only in the portions of the complaint that introduced parties or listed causes of action); *see also Foster v. Jesup & Lamont Sec. Co.*, 759 F.2d 838, 845 (11th Cir. 1985) ("The fact that Congress made every underwriter liable in § 11, but not in § 12, suggests that underwriters are not to be liable under § 12 solely by virtue of their status as underwriters."), *abrogated on other grounds by Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1525-28 (11th Cir. 1991).

### C.    Plaintiffs Do Not Allege That the Sales Agents Are Underwriters With Respect To the March-May 2021 "At-The-Market" Offering

Plaintiffs' Section 11 claims with respect to the March-May 2021 Offering fail for the additional reason that the AC has not adequately alleged that any of the Defendants were "underwriters" of this offering.  Section 11 permits claims against "underwriters," 15 U.S.C. § 77k(a)(5), but this is not "a term of unlimited applicability that includes anyone associated with a given transaction."  *See In re*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

15

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

*Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 629 (S.D.N.Y. 2007); *see also* 15 U.S.C. § 77b(a)(11). Rather, the term "underwriter" applies only to persons who participate in specific ways in the distribution of securities. *See McFarland v. Memorex Corp.*, 493 F. Supp. 631, 644-46 (N.D. Cal. 1980) (adopting multi-part test for determining "underwriter" status). Unlike the other 2021 Offerings, for the March-May 2021 Offering, certain of the Defendants merely agreed to "act as an agent on [Silvergate's] behalf" to sell stock "from time to time," over the course of approximately 12 weeks, on terms set by Silvergate, and none of these "Sales Agents" were "required to sell any specific number . . . of shares" or even to make any sales at all. *See* AC ¶ 333; Ex. D (Mar.-May 2021 ProSupp.) at 344. "[W]hile a market maker could become a statutory underwriter if it held a particular relationship to the offering, the duties of a statutory underwriter cannot be imposed simply by virtue of one's status as a market maker." *In re Laser Arms Corp. Sec. Litig.*, 794 F. Supp. 475, 484 (S.D.N.Y. 1989).

Here, Plaintiffs have "failed to make any specific allegations of 'participation' of the kind that would qualify the [Sales Agents] as underwriters of the public offering" under Section 11. *Refco*, 503 F. Supp. 2d at 629-30. Instead, Plaintiffs merely provide conclusory allegations that the "Underwriter Defendants . . . each were underwriters . . . within the meaning of Section 11." AC ¶ 425; *see also id.* ¶¶ 324, 326, 331, 417, 428, 444. These allegations lack even the most basic factual details about how any Sales Agent participated in the offering, so they cannot state a claim under Section 11. *See In re Activision Sec. Litig.*, 621 F. Supp. 415, 424 (N.D. Cal. 1985) ("Plaintiff's many allegations that these defendants purchased with a view toward distribution without more are not sufficient to state a claim under § 11."); *Refco*, 503 F. Supp. 2d at 629 (dismissing Section 11 claim given lack of "allegations as to the extent of participation or what actual actions the defendants took"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MD 1529, 2007 WL 2615928, at *8 (S.D.N.Y. Sept. 10, 2007) ("bare pleading" that banks

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

16

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

"extended loans," "induced and structured numerous public offerings" through affiliates, and had "direct or indirect participation in the distribution" not sufficient).

## II.    Plaintiffs Fail To Allege That the Offering Materials Contained a Single False or Misleading Statement or Omission

Even if Plaintiffs could somehow overcome the fatal threshold deficiencies in their Securities Act claims set forth above, these claims must be dismissed for the additional reason that they fail to plead that the Offering Materials contained a single material misstatement or omission.

Sections 11 and 12(a)(2) of the Securities Act create private rights of action for purchasers of securities pursuant to an offering in which the offering materials—a registration statement and prospectus—contained an untrue statement of a material fact. *See* 15 U.S.C. § 77k (Section 11); *id.* § 77*l*(a)(2) (Section 12(a)(2)). To state a claim under Section 11, a plaintiff must allege "(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403-04 (9th Cir. 1996). "To plead a claim under Section 12(a)(2), the plaintiff must allege that (1) the defendant is a statutory seller; (2) the sale was effected by means of a prospectus or oral communication; and (3) the prospectus or oral communication contained a material misstatement or omission." *Thomas*, 167 F. Supp. 3d at 1051 (citation omitted). With respect to omissions, it is not enough that a registration statement omitted relevant "facts, or even material facts. . . . Instead an omission 'must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists.'" *In re Pivotal Sec. Litig.*, No. 19-cv-03589, 2020 WL 4193384, at *5 (N.D. Cal. July 21, 2020). Here, in attempting to plead sprawling claims against the Exchange Act Defendants about nearly everything Silvergate said over a more than three-year period, Plaintiffs have failed entirely to plausibly allege that any specific statements in the 2021 Offering Materials were materially false or misleading when they were made.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

17

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

### A. Plaintiffs' Securities Act Claims Sound in Fraud and Must Be Pleaded With Factual Particularity

Because their Securities Act claims "sound[] in fraud," Plaintiffs must comply with the heightened pleading requirements of Rule 9(b) and plead their claims with particularity. *See Stac Elecs.*, 89 F.3d at 1404-05. The Securities Act claims "sound in fraud" because Plaintiffs rely on the "same factual allegations" as those used to "allege fraudulent conduct under [S]ection 10(b) of the Exchange Act." *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009). Although Plaintiffs attempt a cosmetic separation between the Securities Act and Exchange Act claims by separating the Complaint into two sections, there is an "obvious overlap" between them. *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1068 (N.D. Cal. 2010). For instance, every statement challenged under the Securities Act is also challenged in the Exchange Act claim. *Compare* AC ¶ 336, *with id.* ¶¶ 52, 55, 148, 283. Both claims rely on anonymous allegations from the same six former Silvergate employees. *Compare id.* ¶¶ 337-38, 340, 346, 350, 390, 394, *with id.* ¶¶ 50, 51, 58, 65, 298. And all of the topics underlying the Securities Act claim also underlie the Exchange Act claim.[10] Plaintiffs "cannot allege fraud based on a series of events occurring before the offerings and on essentially identical events continuing after the offerings, and then scissor out a non-fraud claim from the center of that unified course of conduct." *In re Metricom Sec. Litig.*, No. C 01-4085, 2004 WL 966291, at *24 (N.D. Cal. Apr. 29, 2004). Rule 9(b)'s heightened pleading standards therefore apply to the Securities Act claims. *See Wong v. Arlo Techs., Inc.*, No. 19-cv-00372, 2019 WL 7834762, at *5-6 (N.D. Cal. Dec. 19, 2019). Plaintiffs' allegations are so lacking in factual detail as to fail under any standard, but are particularly deficient when viewed through the required lens of Rule 9(b).

---

[10] *See, e.g.*, AC ¶¶ 50, 336(a) (customer due diligence); *id.* ¶¶ 3, 336(b) (regulatory compliance); *id.* ¶¶ 3, 336(c) (customer onboarding); *id.* ¶¶ 3, 336(d) (customer monitoring); *id.* ¶¶ 42, 336(e) (procedures for digital currency customers).

**B.      Plaintiffs Do Not Allege an Actionable Misstatement or Omission**

While Plaintiffs' Exchange Act claims challenge statements made from Silvergate's IPO in 2019 through 2023, Plaintiffs' Securities Act claim is premised on just five statements from the 2021 Offering Materials.  *See* AC ¶ 336.  These five statements, which each relate to Silvergate's regulatory compliance and monitoring of new and existing customers, appear verbatim in the Offering Materials for each challenged offering (or the information incorporated therein by reference).  To plead an actionable misstatement or omission, Plaintiffs "must, for each allegedly false or misleading statement, clearly allege . . . why the statement was false or misleading at the time it was made." *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 808-09 (N.D. Cal. 2019).  This requirement means Plaintiffs must allege "contemporaneous facts" showing a "contradiction between the alleged materially misleading statements and reality." *In re Cloudera, Inc.*, No. 19-cv-03221, 2021 WL 2115303, at *11 (N.D. Cal. May 25, 2021).  The crux of Plaintiffs' claim is that the five challenged statements in the Offering Materials (concerning Silvergate's customer diligence and monitoring) were false and misleading.  But Plaintiffs do not identify a contradiction between these statements and facts that existed at the time each statement was made.

1.      Plaintiffs Cannot Ignore Extensive Cautionary Language

On a motion to dismiss, the Court must consider the entire offering document, and "where a company's filings contain abundant and specific disclosures regarding the risks facing the company, as opposed to terse, generic statements, the investing public is on notice of these risks and cannot be heard to complain that the risks were masked as mere contingencies." *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 832 (C.D. Cal. 1998).  Rather than grappling with the extensive risk disclosures contained in the Offering Materials, Plaintiffs ignore or selectively quote them in an attempt to manufacture a contradiction where none exists.  For example, Plaintiffs challenge the statement that "Silvergate performs 'thorough reviews . . . as part of [its] due

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

19

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

diligence process' in connection with its 'onboarding new customers or monitoring existing customers,'" as if Silvergate somehow represented that it had a perfect process that would detect all misconduct.  AC ¶ 336(c).  But the AC omits the full disclosure, which warned that although Silvergate believed its risk management and compliance framework was adequate, substantial risks remained:

> ***While we believe that our risk management and compliance framework***, which includes thorough reviews we conduct as part of our due diligence process (either in connection with onboarding new customers or monitoring existing customers), is reasonably designed to detect any such illicit activities conducted by our potential or existing customers (or, in the case of digital currency exchanges, their customers), ***we cannot ensure that we will be able to detect any such illegal activity in all instances***.

Ex. A (2019 Form 10-K) at 27 (emphases added).  Silvergate went on to explain precisely why its procedures would not detect all potential depositor misconduct:

- "Some types of digital currency have characteristics . . . that make digital currency particularly susceptible to use in illegal activity such as fraud, money laundering, tax evasion and ransomware scams." *Id.*

- "The characteristics of digital currency have been, and may in the future continue to be, exploited to facilitate illegal activity such as fraud, money laundering, tax evasion and ransomware scams; if any of our customers do so or are alleged to have done so, it could adversely affect us." *Id.*

- "Because the speed, irreversibility and anonymity of certain digital currency transactions make them more difficult to track, fraudulent transactions may be more likely to occur. . . .  [I]t may be difficult or impossible for us to detect and avoid such transactions in certain circumstances." *Id.*

The AC's allegations about certain of Silvergate's customers (AC ¶¶ 361-406), even if taken as true, say only that some of the well-disclosed risks came to pass.  For instance, Plaintiffs highlight alleged misconduct by one customer (FTX) but ignore that those very same allegations make clear that FTX's founder made "false representations" designed to "disguise the true nature of an account," in order to induce Silvergate Bank to open the account.  Silvergate Br. at 1-2.  This is precisely the risk that Silvergate repeatedly disclosed, and under a long line of Ninth Circuit precedent these allegations do not state a viable claim.  *See Stac Elecs.*, 89 F.3d at 1406 (affirming dismissal where prospectus made "detailed disclosures

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

20

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

concerning the risk" plaintiffs complained materialized); *In re Progenity, Inc. Sec. Litig.*, No. 20-cv-01683, 2023 WL 219345, at *10 (S.D. Cal. Jan. 13, 2023) (dismissing complaint where registration statement "clearly warned" of risks and "cautioned that they could not guarantee" those risks would not materialize); *Callan v. Motricity Inc.*, No. C11-1340, 2013 WL 195194, at *11 (W.D. Wash. Jan. 17, 2013) (dismissing Section 11 claims where the registration statement accurately described business and risks), *aff'd sub nom. Mosco v. Motricity, Inc.*, 649 F. App'x 526 (9th Cir. 2016).[11]

2.      Plaintiffs Do Not Allege Contemporaneous Facts That Contradict the Challenged Statements

Recognizing that Silvergate's extensive risk disclosures on these topics are fatal to their claims, Plaintiffs resort to a more extreme version of their story—that Silvergate had *no compliance systems whatsoever*. *See* AC ¶ 337 (asserting that Silvergate performed "no due diligence before onboarding customers to the SEN" and "no ongoing monitoring of customer activities on the SEN"). But the Complaint lacks factual allegations—either from the time of the statements or afterwards—to support this bold assertion. To the contrary, Plaintiffs claim that the "truth" was revealed beginning in November 2022 when "reports emerged that FTX— Silvergate's most important customer—was a clear fraud," which, in turn, caused a "bank run." AC ¶¶ 10, 276. This was undoubtedly a negative development for both Silvergate and the broader digital currency industry, but it did not reveal that Silvergate performed "no due diligence before onboarding customers to the SEN" and "no ongoing monitoring of customer activities on the SEN." AC ¶ 337; *see* Silvergate Br. at 14-17. Indeed, the only allegations Plaintiffs offer regarding these

[11] Plaintiffs do not (and cannot) premise their claim on the *effectiveness* of Silvergate's procedures in light of these disclosures and because these statements are non-actionable statements of opinion. The AC carefully excises from the relevant disclosures phrases such as "we believe" because "a sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless whether an investor can ultimately prove the belief wrong," *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015).

statements are (i) statements allegedly attributed to purported former Silvergate employees, and (ii) recent news stories about Silvergate and certain of its customers from *after* the 2021 Offerings. Neither carries Plaintiffs' burden of showing that at the time of the Offering Materials, Silvergate conducted no customer diligence or monitoring whatsoever. AC ¶ 337. This pleading deficiency requires dismissal. *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1196 (9th Cir. 2021) (affirming dismissal for failure to plead falsity of the statement that "great progress" was being made for failure to plead facts showing that defendant was "making no progress at all").[12]

*First*, Plaintiffs purport to quote six former Silvergate employees, but the allegations make clear that four of them did not work at Silvergate at the time of the 2021 Offerings, so their alleged statements could not possibly demonstrate contemporaneous falsity. FE 1 and FE 2 ceased employment with Silvergate well before the first relevant offering in January 2021.[13] "[S]tatements from employees who left [the company] before the alleged misstatements were made cannot substitute for reports during the [c]lass [p]eriod, required to establish each statement was false *when made*." *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, No. 18-cv-04844, 2019 WL 6877195, at *14 (N.D. Cal. Dec. 17, 2019) (emphasis in original). Likewise, FE 3 and FE 5 did not join Silvergate until *after* the 2021

---

[12] Likewise, Plaintiffs cannot manufacture a Securities Act claim by challenging various adjectives. AC ¶ 336 (challenging "extensive" compliance, "deep-rooted commitment" to regulatory compliance, "thorough" reviews, and "enhanced" procedures). These descriptors are inactionable puffery because they are vague expressions of positive sentiment whose meaning is in the eye of the beholder and, as such, no reasonable investor would rely on them. *See Veal*, 423 F. Supp. 3d at 804-05 (holding that statements including "[o]ur priority is to reaffirm our commitment to trust, compliance and risk management" were inactionable puffery); *Kalin v. Semper Midas Fund, Ltd.*, No. 21-cv-01062, 2021 WL 5906053, at *5 (N.D. Cal. Dec. 14, 2021) (recognizing that statements defining a strategy as "proprietary" were inactionable puffery) (quoting *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 538 (S.D.N.Y. 2016)).

[13] *See* AC ¶¶ 51 n.45, 346 n.190 (admitting that FE 1 "joined Silvergate in March 2019 and stopped working at the Bank the week before Christmas in December 2019"); *id.* ¶¶ 58, 390 n.231 (admitting that FE 2 worked at Silvergate "from October 2017 to June 2019").

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
ORANGE COUNTY

22

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

Offerings had been completed.[14]  Accordingly, these individuals cannot speak in any first-hand way about Silvergate's operations at the time of the 2021 Offerings.

The statements attributed to FE 4 and FE 6 lack factual and temporal specificity and therefore similarly fail to "provide an adequate basis for believing that the defendants' statements were false." *Applestein v. Medivation, Inc.*, 561 F. App'x 598, 600 (9th Cir. 2014) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009)).  FE 4, who worked at Silvergate "from February 2011 to July 2021," AC ¶ 394 n.232, allegedly stated that when Silvergate received reports of unauthorized transactions, Silvergate did not investigate. *Id.* ¶ 394.  But the AC does not provide a single example of any such incident, much less specify when it occurred.  Plaintiffs' allegations are therefore entirely consistent with such an incident occurring in 2011, nearly a decade before the Offering Materials described Silvergate's then-existing customer diligence process.  "Generally alleging wrongdoing during the [confidential witness's] employment at the Company" is insufficient; rather, reports from confidential witnesses "must be specific in their time references to support that *each alleged misstatement* was false *when made*." *Oracle*, 2019 WL 6877195, at *14 (emphasis in original).  In fact, FE 5's allegations undermine any conclusion that Silvergate had **no** diligence process at the time of the 2021 Offerings, "explain[ing] that Silvergate rolled out the **new** diligence processes on August 15, 2022," AC ¶ 354 (emphasis added), while carefully avoiding a suggestion that there was **no** process in place prior to this time.

FE 6 allegedly stated that Silvergate employees filled out beneficial ownership forms on behalf of customers, and that FE 6 was not aware of physical site visits.  AC ¶¶ 340, 343.  But even if credited, this allegation does not render any statements false or misleading.  The AC does not (and cannot consistent with Rule 11) allege that site visits were the only, or even a particularly key, tool available

_____

[14] *See* AC ¶¶ 63 n.47, 338 n.188 (admitting that FE 3 worked at Silvergate "from the beginning of March 2022 until the end of November 2022"); *id.* ¶¶ 78 n.51, 350 n.191 (admitting that FE 5 "worked at Silvergate from May 2022 until May 2023").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

23

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

for evaluating customers in 2021.  Accordingly, the AC does not establish that it was false to say Silvergate conducted "extensive regulatory compliance diligence" and "ongoing monitoring of customer activities" (AC ¶ 336) based on claims about whose hand typed the information collected or whether Silvergate conducted physical site visits.  Indeed, as outlined more fully in the Silvergate Defendants' brief, the FEs merely offer a collection of speculation about specific things they believe Silvergate either did not do or did not do well in hindsight.  *See* Silvergate Br. at 10-17.  But what they do not—and evidently cannot—say is that Silvergate lacked any process in these areas whatsoever.  This is fatal to Plaintiffs' claims.

*Second*, Plaintiffs allege that the Offering Materials must be false or misleading because *months or years after the offerings*, certain of Silvergate's customers were implicated in wrongdoing, spurring action by regulators.[15]  Citing to nothing, Plaintiffs repeatedly assert that "[h]ad Silvergate conducted the represented diligence described in the 2021 Offering Documents," it would have uncovered a wide array of purported wrongdoing.  *See* AC ¶¶ 361, 368, 375, 377, 379-82; *see also id.* ¶¶ 401, 403, 405 (speculating that Silvergate "would have identified" wrongdoing had it conducted any monitoring).  This allegation is fundamentally flawed because it assumes that customer monitoring detects and prevents all misconduct.  This assumption ignores the actual disclosures Plaintiffs challenge, which repeatedly warned that despite Silvergate's efforts on risk management and compliance, it "cannot ensure that we will be able to detect any such illegal activity in all instances" because the "characteristics of digital currency have been, and may in the future continue to be, exploited to facilitate illegal activity."  Ex. A (2019

---

[15] *See, e.g.*, AC ¶ 350 ("*[I]n the first quarter of 2022*, the Federal Reserve sent Silvergate a report identifying Matters Requiring Immediate Attention."); *id.* ¶ 10 ("*Beginning in November 2022*, reports emerged that FTX—Silvergate's most important customer—was a clear fraud."); *id.* ¶ 399 (noting a *December 5, 2022* letter from several senators to Defendant Lane); *id.* ¶ 363 & n.196 (noting testimony from FTX's CEO in *December 2022*) (emphasis added in all preceding quotes).

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
ORANGE COUNTY

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

24

Form 10-K) at 27; *see also* Silvergate Br. at 1, 15 (noting allegation that FTX founder "told [Silvergate] a false story" to obtain U.S. bank account).

Moreover, using subsequent developments to speculate that earlier statements must have been false is insufficient as a matter of law in this Circuit. "To state a claim under Section 11, plaintiffs must show that the challenged statement was false at the time of the offering and 'cannot use the benefit of 20-20 hindsight to turn management's business judgment into securities fraud.'" *In re Talis Biomedical Corp. Sec. Litig.*, No. 22-cv-00105, 2022 WL 17551984, at *12 (N.D. Cal. Dec. 9, 2022) (quoting *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1419 (9th Cir. 1994)); *see In re Progenity*, 2023 WL 219345, at *6 (dismissing for lack of actionable omission because plaintiffs "have not demonstrated that the alleged omitted information . . . existed at the time the registration statement became effective) (internal quotation marks and citation omitted); *Welgus v. TriNet Grp., Inc.*, No. 15-cv-03625, 2017 WL 6466264, at *8 (N.D. Cal. Dec. 18, 2017) (dismissing where falsity could be "inferred only by hindsight rather than with allegations that the statements were false when made"), *aff'd*, 765 F. App'x 239 (9th Cir. 2019). Plaintiffs cannot state a claim by questioning, with the benefit of hindsight, whether Silvergate should have employed different or additional procedures to address the disclosed risks of customer misconduct. As Plaintiffs rightly recognize, their claim that the five statements in the Offering Materials were false or misleading when made depends on the assertion that Silvergate conducted no diligence or monitoring at all. AC ¶ 337. Yet despite its voluminous length, the AC fails to offer any factual support for that claim. Plaintiffs' Securities Act claims therefore fail as a matter of law.

## CONCLUSION

For the foregoing reasons, all claims against the Underwriter Defendants should be dismissed.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

25

UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

Dated:  July 10, 2023

**LATHAM & WATKINS LLP**

/s/ Michele D. Johnson
Email: michele.johnson@lw.com

Attorneys for Defendants Goldman Sachs & Co. LLC, Keefe, Bruyette & Woods, Inc., Canaccord Genuity LLC, Compass Point Research & Trading, LLC, Craig-Hallum Capital Group LLC, J.P. Morgan Securities LLC, Wedbush Securities Inc., Citigroup Global Markets Inc., and UBS Securities LLC

LATHAM&WATKINSLLF
ATTORNEYS AT LAW
ORANGE COUNTY

26                    UNDERWRITER DEFENDANTS' MEM. OF POINTS
& AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB