**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
LAUREN M. CRUZ (Bar No. 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470

**COHEN MILSTEIN SELLERS
  & TOLL PLLC**
CAROL V. GILDEN (*pro hac vice*)
cgilden@cohenmilstein.com
190 S. LaSalle Street, Suite 1705
Chicago, IL 60603
Tel: (312) 629-3737

*Lead Counsel for Plaintiffs
and the proposed Class*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SILVERGATE CAPITAL CORPORATION SECURITIES LITIGATION | Case No. 3:22-cv-01936-JES-MSB<br><br>CLASS ACTION<br><br>**PLAINTIFFS' OPPOSITION TO SILVERGATE DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**<br><br>Date: November 29, 2023<br>Time: 9:00 a.m.<br>Dept: 4B<br>Hon. James E. Simmons, Jr. |

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...............................................................................1

II.  ARGUMENT......................................................................................2

    A.   Exhibits B, C, F, and O Are Random Pieces of Extrinsic Evidence Not Properly Considered for Any Purpose. .........................3

    B.   Exhibits A, D, E, G-N, and P Are SEC Filings that Could Hypothetically Have Been Considered for a Limited Purpose, But Not Defendants' Improper Purpose................................9

III. CONCLUSION..................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Accuray, Inc. S'holder Deriv. Litig.*,
    757 F. Supp. 2d 919 (N.D. Cal. 2010)........................................................13, 14

*Booth v. Strategic Realty Tr., Inc.*,
    2014 WL 3749759 (N.D. Cal. July 29, 2014) ..............................................11, 12

*Domantay v. NDEX W., LLC*,
    2015 WL 9268692 (E.D. Cal. Dec. 21, 2015) .....................................................9

*Dreiling v. Am. Express Co.*,
    458 F.3d 942 (9th Cir. 2006) ...........................................................................12

*Headwaters Inc. v. U.S. Forest Service*,
    399 F.3d 1047 (9th Cir. 2005) .............................................................................7

*Hebrank v. Linmar Mgmt., Inc.*,
    2014 WL 5092748 (S.D. Cal. Oct. 9, 2014).........................................................7

*In re Immune Response Sec. Litig.*,
    375 F. Supp. 2d 983 (S.D. Cal. 2005).................................................................2

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ....................................................................*passim*

*In re LDK Solar Sec. Litig.*,
    584 F. Supp. 2d 1230 (N.D. Cal. 2008).............................................................14

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) .............................................................................13

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) .............................................................................13

*In re Northpoint Commc'ns Grp., Inc. Sec. Litig.*,
    184 F. Supp. 2d 991 (N.D. Cal. 2001)...............................................................14

*Patel v. Parnes*,
    253 F.R.D. 531 (C.D. Cal. 2008)..................................................................11, 14

*Penermon v. Wells Fargo Bank, N.A.*,
  47 F. Supp. 3d 982 (N.D. Cal. 2014) .................................................................9

*Reina-Rodriguez v. United States*,
  655 F.3d 1182 (9th Cir. 2011) .........................................................................10

*Shenwick v. Twitter, Inc.*,
  282 F. Supp. 3d 1115 (N.D. Cal. 2017) .....................................................10, 11

*In re Silver Wheaton Corp. Sec. Litig.*,
  2019 WL 1512269 (C.D. Cal. Mar. 25, 2019)..................................................8

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)........................................................................................15

*United States v. Corinthian Colls.*,
  655 F.3d 984 (9th Cir. 2011) .............................................................................3

*Welgus v. TriNet Grp., Inc.*,
  2017 WL 6466264 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x
  239 (9th Cir. 2019).........................................................................................13

**OTHER AUTHORITIES**

Fed. R. Evid. 201 .......................................................................................2, 11

## I.    <u>INTRODUCTION</u>

The Ninth Circuit in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), forcefully criticized the "concerning pattern" of defendants in securities class actions misusing "judicial notice" and "incorporation-by-reference" to improperly present a skewed version of the "facts" at the pleading stage to undermine the complaint's well-pled allegations.  The Ninth Circuit made plain that "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint" because doing so contravenes the "prohibition against resolving factual disputes at the pleading stage." *Id*. at 1003.  The Ninth Circuit was unequivocal that "[s]uch undermining of the usual pleading burdens is not the purpose of judicial notice or the incorporation-by-reference doctrine." *Id.* at 999.

The Exchange Act Defendants' Request for Judicial Notice exemplifies the abuses the *Orexigen* court denounced.  Relying only on pre-*Orexigen* cases, Defendants ask the Court to judicially notice or deem incorporated by reference sixteen exhibits—most of which are nowhere mentioned in the Complaint—and then draw factual inferences and make factual determinations from those exhibits about the supposed vetting, due diligence, and monitoring that Silvergate was purportedly conducting; why all of the former employees ("FEs") somehow failed to notice it; and why Defendants just so happened to fail to detect any of the obvious and now-notorious schemes of Silvergate's customers.  Defendants' attempt to craft their own counter-narrative and invitation for the Court to resolve factual disputes on a pleading motion are precisely the types of misuses of judicial notice and incorporation-by-reference that the Ninth Circuit strongly condemned in *Orexigen*:

> The overuse and improper application of judicial notice and the incorporation-by-reference doctrine . . . can lead to unintended and harmful results …. [T]he unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after

discovery. . . . [T]he doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim.

*Id.* at 998, 1003.

For these reasons and those discussed further below, Plaintiffs respectfully submit that the Court should reject the competing factual inferences that Defendants ask the Court to draw based on extraneous documents outside the Complaint and should decline Defendants' invitation to decide factual issues on their pleading motion under the guise of the "judicial notice" doctrine.

## II.   **ARGUMENT**

Judicial notice and incorporation-by-reference are limited exceptions to the general rule that "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Id.* at 998.[1]

Federal Rule of Evidence 201 gives the court discretion to "judicially notice a fact that is not subject to reasonable dispute" if it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice is a "narrow exception" that "is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 995 (S.D. Cal. 2005).

"[A] court cannot take judicial notice of disputed facts," and even when a document is "susceptible to judicial notice," that still "does not mean that every

---

[1] Unless otherwise noted, citations to "Request" or "RJN" are to the Silvergate Defendants' Request for Judicial Notice (ECF No. 66-3) and "Exhibit(s)" or "Ex(s)." are to the Exhibits attached thereto (ECF Nos. 66-4 - 66-19), "Mot. __" are to the Silvergate Defendants' Motion to Dismiss Consolidated Amended Class Action Complaint (ECF No. 66), "¶__" are to the Complaint (ECF No. 43), emphasis is added, and internal citations, alterations, and quotations are omitted.

assertion of fact within that document is judicially noticeable for its truth." *Orexigen*, 899 F.3d at 999; *see United States v. Corinthian Colls.*, 655 F.3d 984, 998-99 (9th Cir. 2011) ("[W]e may not, on the basis of evidence outside of the Complaint, take judicial notice of facts favorable to Defendants that could reasonably be disputed.").

"[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself" if the complaint "refers extensively" to them or if they "form[ ] the basis of the plaintiff's claim." *Orexigen*, 899 F.3d at 1002. But "the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim." *Id.* at 1003. "[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.*

Defendants contend that all their exhibits are proper for judicial notice, and that Exhibits K and L are incorporated by reference. As discussed further below: (i) Exhibits B, C, F, and O are random pieces of extrinsic evidence that have nothing do with the Complaint and cannot be considered for any purpose, including the purpose advanced by Defendants; and (ii) Exhibits A, D, E, G-N, and P are SEC filings that could hypothetically have been considered for some limited purpose, but instead are cited for the improper purpose of contradicting the Complaint's well-pleaded allegations with facts purportedly asserted therein.

### A.      Exhibits B, C, F, and O Are Random Pieces of Extrinsic Evidence Not Properly Considered for Any Purpose.

**Exhibit B** is the Superseding Indictment against Sam Bankman-Fried, and **Exhibit C** is an order denying Mr. Bankman-Fried's motion to dismiss that indictment ("Indictment"). The Complaint does not cite or mention—much less "refer[] extensively"—to either document. *Orexigen*, 899 F.3d at 1002.

Defendants improperly cite Exhibits B and C for highly strained inferences that Defendants say can be drawn from allegations made by the prosecutor in the

Indictment.  Mot. 1-2, 15, 29.  Defendants ask the Court to find based on their say-so that (1) Silvergate is "Bank 1" in the Indictment and "[a]mong the main victims of Bankman-Fried's fraud" (Mot. 1); (2) Mr. Bankman-Fried "lied to Silvergate and deceived Silvergate both in its initial account applications and during the course of Silvergate's due diligence" (Mot. 15); and (3) Mr. Bankman-Fried was "an imposter who defrauded the Bank" in applying for accounts (Mot. 29).

These extraneous exhibits are a complete side-show that in no way undercut the Complaint's well-pleaded allegations.  To start, both facts can be true: (1) FTX was a fraud, and (2) Silvergate failed to vet, conduct due diligence on, and monitor FTX in the manner that it specifically assured investors.  If FTX lied to Silvergate (Defendants' self-serving assertion that the Complaint does not allege and that cannot be determined now), that would not exonerate Silvergate.  Silvergate was supposed to be investigating its customers, not simply accepting their statements as true.  That is the fundamental purpose of due diligence, and the reason why Silvergate emphasized it to investors.  Moreover, Defendants' apparent request that the Court take "judicial notice" that FTX's fraud was so sophisticated that it would have and did "overcome" (Mot. 1, 15) the supposed vetting, due diligence, and monitoring that Silvergate promised, is, at best, premature.

Exhibits B and C are especially poor candidates for judicial notice for many additional reasons.  The Indictment does *not* identify Silvergate as "Bank 1."  The Indictment's allegations have *not* yet been proven to a jury.  And, even if Mr. Bankman-Fried is eventually convicted, that finding will *not* be binding upon Plaintiffs.  The truth of Silvergate's statements to investors about its vetting, due diligence, and monitoring are simply not at issue in the criminal case of Mr. Bankman-Fried.

Defendants venture even further afield in asking the Court to take "judicial notice" of, and draw strained inferences from, the Government's charging decision in that case.  Defendants say: "It is implausible that the government would bring

those charges [against Mr. Bankman-Fried] if the Bank had insight into the fraud being perpetrated upon it, much less if it was a co-conspirator with Bankman-Fried." Mot. 19 n.14.  Both parts of this request for "judicial notice" are circuitous and specious.

As to whether Silvergate had "insight," Defendants want the Court to find as a matter of "judicial notice" at the pleading stage that: (1) Silvergate's failure to conduct due diligence on FTX would have been a defense to the criminal charges currently pending against Mr. Bankman-Fried; (2) the Government would not have pursued indictment of Mr. Bankman-Fried if facts supported such a defense; (3) the Government's supposed determination that those facts do not exist is binding on Plaintiffs; and thus that (4) Silvergate conducted due diligence on FTX.  No step in that logic is sound.  Silvergate's failure to conduct due diligence is not even a defense available to Mr. Bankman-Fried in the criminal case.  Even if it were, the Government had no reason even to consider Silvergate's due diligence in pursuing an indictment against Mr. Bankman-Fried.  Even if it did, the Government's judgment would not be binding on Plaintiffs.

As to whether Silvergate was a "co-conspirator," Defendants apparently want the Court to find through "judicial notice" that: (1) Silvergate's failure to conduct due diligence on FTX would make Silvergate a "co-conspirator" of Mr. Bankman-Fried; (2) if Silvergate were a co-conspirator, it would have been indicted as a co-defendant; (3) the Government's decision not to charge Silvergate is binding on Plaintiffs; and thus, again, that (4) Silvergate conducted due diligence on FTX.  Again, that logic is unsound.  The Complaint's allegations in no way turn on Silvergate being a "co-conspirator" of FTX.  Investigations into Silvergate are ongoing, so it may yet face criminal charges.  And even if Silvergate eventually escapes criminal charges, such declination would in no way be binding on Plaintiffs.

Similarly, **Exhibit F** is a report filed by John J. Ray III, FTX's current CEO, in the FTX bankruptcy proceeding.  The Complaint does not cite or mention—much

less "refer[] extensively"—to Exhibit F.  Nor could it; Exhibit F was filed more than one month after the Complaint was filed.  Defendants improperly ask the Court to make two separate findings by "judicial notice" from Exhibit F.

*First*, as with Exhibits B and C, Defendants ask the Court to find as fact Mr. Ray's allegation that Mr. Bankman-Fried made "[f]alse Statements to a U.S. Bank," which Defendants characterize as "'lies' in North Dimension's account application and in response to the Bank's specific questions as part of its ongoing monitoring."  Mot. 15 (quoting Ex. F); *see also* Mot. 19 n.14.  Such findings of "judicial notice" would be improper for the same reasons as with Exhibits B and C. Indeed, Mr. Ray did not even identify Silvergate by name in his report; the bankruptcy court did not adopt Mr. Ray's statements as findings; and Mr. Ray's statements are not binding on Plaintiffs in this case.  Also, as explained in Plaintiffs' opposition to Defendants' Motion filed currently herewith, even if accepted, the purported facts do nothing to resolve the red flags alleged in the Complaint as to North Dimension.  Pltfs' Opp. to Mot. 8, 15, 17.

*Second*, Defendants also improperly ask the Court to find as fact Mr. Ray's additional statement that it has been "challenging" to trace FTX's assets, particularly its blockchain assets, in the bankruptcy proceeding.  Mot. 15 n.11.  Defendants apparently want the Court to infer through "judicial notice" that, if the FTX bankruptcy proceeding has been difficult, it also would have been difficult to vet or perform due diligence on FTX.  The purpose of which, once again, is apparently the factual conclusion that Silvergate did conduct due diligence on and monitor FTX and failed to find any red flags only because of the difficulty of the task.  That is a disputed fact that cannot be determined now—and certainly not through "judicial notice."

Even if considered, Defendants' argument is also wholly unpersuasive because Mr. Ray's work in the FTX bankruptcy proceeding is very different from the work that Silvergate should have done (but, as detailed in the Complaint, did not

do).  Mr. Ray has no choice, after the fact, but to try to piece the situation together despite FTX's lack of books and records.  Silvergate, if confronted with that same lack of books and records (if it had bothered to check), should have declined to approve FTX in the first place.

Contrary to Defendants' contention, the mere fact that Exhibits B, C, and F are "publicly available on PACER" (RJN 3), is not a sufficient basis for judicial notice.  Even if the exhibits are public records, "a court cannot take judicial notice of disputed facts contained in such public records." *Orexigen*, 899 F.3d at 999.  The cases cited by Defendants (RJN 3-4) pre-date *Orexigen* and do not remotely say otherwise.[2]

**Exhibit O** is a small excerpt from a large manual published by the Federal Financial Institutions Examination Council ("FFIEC") on the Bank Secrecy Act ("BSA") and anti-money laundering ("AML").  The Complaint does not mention, cite, or refer to Exhibit O.  Defendants improperly urge "judicial notice" of Exhibit O for the purpose of arguing that FE1 could not possibly have known about Silvergate's "BSA function and diligence procedures" because they were supposedly "segregated from the bank's operational and finance functions." Mot. 11 n.6 (citing Ex. O).  This argument is entirely improper for several reasons.

---

[2] In *Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047 (9th Cir. 2005), which involved a challenge under various statutes to a Forest Service policy, the Ninth Circuit took judicial notice of the fact that a document was filed on a different docket (*id.* at 1051 n.3), not the *truth* of the *contents* of that filing.  Likewise, in *Hebrank v. Linmar Management, Inc.*, 2014 WL 5092748, at *3 (S.D. Cal. Oct. 9, 2014), an action for payment on promissory notes, the court took judicial notice of "dockets and case files" in other lawsuits to assess a fee request based on the work performed in those cases (based on what was filed on those dockets), not to assess the *truth* of the *contents* of those filings.  Therefore, Defendants' reliance on these cases is entirely misplaced.  Defendants go beyond asking this Court to take judicial notice of the fact that Exhibits B, C, and F were filed on PACER.

*First*, it cannot be assumed that Silvergate's actual BSA/AML function during the Class Period complied with the FFIEC's guidance.  The Complaint nowhere alleges such compliance; to the contrary, it alleges numerous deficiencies that are grossly inconsistent with that (or any) guidance on BSA and AML compliance.  *See In re Silver Wheaton Corp. Sec. Litig.*, 2019 WL 1512269, at \*8 (C.D. Cal. Mar. 25, 2019) (improper for defendants to seek to use judicial notice "to have this Court rely on these documents to adopt defendants' version of facts at the pleading stage").

*Second*, even if one assumes Silvergate complied with the FFIEC guidance (which is disputed), the FFIEC guidance describes multiple options—for example, "centralized," or not; "consolidated," or not (Ex. O at 160-61)—and there is no way to know, at this stage, which if any described Silvergate.

*Third*, contrary to Defendants' mis-citation, the FFIEC does not recommend that the BSA/AML function be "*segregated*"—under *any* of the options it discusses. Defendants say (falsely) in their Motion: "Pursuant to FFIEC guidance, the BSA function is ***segregated*** from a bank's operational and finance functions 'to avoid conflicts of interest' so that 'objectivity is maintained.'"  Mot. 11 n.6 (quoting Ex. O).  But the actual quote in the FFIEC guidance is that "***a clear line of responsibility*** may help to avoid conflicts of interest and ensure that objectivity is maintained." Ex. O at 162.  Indeed, the FFIEC clarifies in the very next paragraph that: "Regardless of the management structure or size of the institution, BSA/AML compliance staff located within lines of business is ***not*** precluded from close interaction with the management and staff of the various business lines."  *Id.* Because compliance staff should have had close interaction with management, the FFIEC's actual guidance ***supports***, rather than undermines, FE1's statement that, based on her seniority and decades of experience, she would have been aware of, if it existed, extensive vetting, due diligence, and monitoring processes.

Contrary to Defendants' contention, the mere fact that Exhibit O is a "public record" that is "available" on FFIEC's website (RJN 4) is not a sufficient basis for

judicial notice. As with Exhibits B, C, and F, "a court cannot take judicial notice of disputed facts contained in such public records." *Orexigen*, 899 F.3d at 999. The cases cited by Defendants (RJN 4), which are not PSLRA cases, do not say otherwise.[3]

**B.**    **Exhibits A, D, E, G-N, and P Are SEC Filings that Could Hypothetically Have Been Considered for a Limited Purpose, But Not Defendants' Improper Purpose.**

**Exhibits A, G, M, and N** are various documents filed by Silvergate with the SEC. Defendants make the erroneous argument that "judicial notice of these documents is appropriate because Silvergate's financial reporting is 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.'" RJN 3. The Complaint alleges specifically, however, that Exhibit G contains a misstatement (¶155) and thus its accuracy is directly in dispute. Moreover, the Complaint does not cite or refer to any of the other exhibits. These exhibits may be considered solely for the fact that Silvergate made the statements therein. But judicial notice is *not* proper for the purpose that Silvergate urges: to find as fact that these statements fully disclosed (which they did not) the misstated and omitted facts. *See* Mot. 16-18, 29 n.23; Pltfs' Opp. to Mot. 18-20.

"It is improper to judicially notice a [document] when the substance of the [document] 'is subject to varying interpretations, and there is a reasonable dispute

---

[3] *Domantay v. NDEX W., LLC*, 2015 WL 9268692 (E.D. Cal. Dec. 21, 2015), and *Penermon v. Wells Fargo Bank, N.A.*, 47 F. Supp. 3d 982, 989 (N.D. Cal. 2014), were both actions removed from state court that involved various California statutory and common law claims by homeowners against mortgage lenders. *Domantay* took judicial notice of FDIC and OCC documents "regarding the merger of World Savings Bank, FSB into Wells Fargo Bank, N.A." 2015 WL 9268692, at *4. *Penermon* took judicial notice of similar FDIC and OCC documents under an inapplicable California statute that allows judicial notice of government "official acts." 47 F. Supp. 3d at 989. In both cases, the requests for judicial notice were unopposed. *Domantay*, 2015 WL 9268692, at *3; *Penermon*, 47 F. Supp. 3d at 989.

as to what the [document] establishes.'" *Orexigen*, 899 F.3d at 1000 (quoting *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011)); *see also id.* at 1014 (because "courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage," district court erred by finding that Form 8-K submitted by defendants as an exhibit "amounted to a prior, accurate disclosure" that "absolved" an alleged misstatement made at a different time); *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1122, 1140 n.24 (N.D. Cal. 2017) (taking judicial notice of earnings call transcript, but "not for the purpose of determining the truth of those statements" because "the facts contained in the documents are subject to reasonable dispute").

Silvergate also cites **Exhibit A** for the additional improper purpose of establishing as fact that Silvergate "is a highly regulated financial institution, subject to exacting supervision and regular examinations by the Federal Reserve and the California Department of Financial Protection and Innovation ('DFPI')."  Mot. 1 (citing Ex. A).  That, Defendants say, makes it implausible that Silvergate would make any misstatements, or that it would do so with scienter. *Id.* at 3-4, 19, 33.  The purported fact that Silvergate was highly regulated is not properly determined by judicial notice at this stage. *See Orexigen*, 899 F.3d at 999.  Also, as noted in Plaintiffs' opposition to Defendants' Motion, even if Silvergate were highly regulated, that is no defense as to either falsity or scienter, and securities fraud claims have been repeatedly sustained against banks subject to the same supervision and examination.  Pltfs' Opp. to Mot. 12, 14-15, 33-34.

**Exhibits D and E** are Forms 10-Q filed by Silvergate for 2Q and 3Q 2022. The Complaint does not cite or refer to either exhibit.  A Form 10-Q could hypothetically be considered for the limited purpose described *supra*, at 9-10, but Defendants do not cite these exhibits for that purpose.  Instead, Defendants cite Exhibits D and E for the improper purpose of establishing the supposed "truth" of certain matters asserted by Silvergate therein: specifically, the number of

cryptocurrency exchange customers that Silvergate had in June 2022 (Mot. 4 (citing Ex. D)), and the number of employees that Silvergate had in November 2022 (Mot. 11 n.7 (citing Ex. E)).  The Court should not take judicial notice of these "irrelevant fact[s]." *Orexigen*, 899 F.3d at 1000 n.5.  Defendants seek to use these numbers, indirectly, to argue that: (1) the nine notorious frauds conducted by its customers represented only a small percentage of its cryptocurrency customers (*see* Mot. 16); and (2) some of Silvergate's employees (other than the FEs) must have conducted due diligence (*see* Mot. 11 n.7).  Neither strained inference is properly drawn against Plaintiffs at this stage.  *See Shenwick*, 282 F. Supp. 3d at 1139-40 n.24 (taking judicial notice of earnings call transcript but only "draw[ing] reasonable inferences in favor of Plaintiff").

**Exhibits H, I, and J** are Forms 4 filed by Defendant Lane.  The Complaint refers to Lane's insider sales (¶240), but does not cite these Forms 4.  Plaintiffs do not oppose judicial notice of these documents, with the clarification that "[t]he truth of the content, and the inferences properly drawn from them, however, is not a proper subject of judicial notice under Rule 201." *Patel v. Parnes*, 253 F.R.D. 531, 546 (C.D. Cal. 2008) (discussing Forms 4).  Without assuming the truth of their content, the Forms 4 have no relevance.

Contrary to Defendants' contention, the mere fact that Exhibits A, D, E, G-N, or P were "filed with the SEC" (RJN 3) is not a sufficient basis for judicial notice. *See Orexigen*, 899 F.3d at 999-1000 (rejecting judicial notice of document filed with the SEC "for its truth").  The cases cited by Defendants (RJN 3) stand for the unremarkable proposition that SEC filings are sometimes appropriate for judicial notice for certain limited purposes.  Neither case supports a *per se* rule that all SEC filings are appropriate for judicial notice, or that such notice may be for their truth.  Indeed, in *Booth v. Strategic Realty Trust, Inc.*, 2014 WL 3749759 (N.D. Cal. July 29, 2014) (cited at RJN 3), where judicial notice of SEC filings was unopposed (*id.* at *3), the court went on to hold that whether the filings disclosed facts establishing

inquiry notice for statute of limitations purposes was a factual issue that could not be decided on a motion to dismiss. *Id.* at *6.[4]

**Exhibits K and L** are prospectuses for offerings that Silvergate conducted in January and December 2021. The prospectuses are the basis of the Securities Act claims, and therefore Plaintiffs do not disagree that such documents are incorporated by reference in the Complaint. RJN 2-3. But Defendants cite them only for the truth of matters asserted therein, and "it is improper to assume the truth of an incorporated document." *Orexigen*, 899 at 1003.

Defendants improperly cite Exhibits K and L for "facts" that there was supposedly a 90-day lock-up after the January 2021 offering and a 60-day lock-up after the December 2021 offering. Mot. 22 (citing Exs. K-L). Defendants say these lock-ups make it unsuspicious that Defendant Lane sold shares in the periods before and/or after the lock-up periods, which purportedly "undermines a strong inference of scienter." *Id.* That inference cannot be drawn now. The lock-up agreements signed by Lane are not yet before the Court, so it is premature to interpret their terms or their effect on his trading behavior. Additionally, the inference of scienter does not arise from the mere fact that Lane did not sell during the short periods when he

---

[4] *Dreiling v. American Express Co.*, 458 F.3d 942 (9th Cir. 2006), involved a derivative "short-swing" profits claim under Section 16(b) of the Exchange Act. The primary issue on appeal was the validity of SEC Rule 16b-3(d), exempting from Section 16(b) certain transactions approved by the issuer's board of directors, which the court upheld. In a footnote, the court stated that it "may consider documents referred to in the complaint or any matter subject to judicial notice, such as SEC filings." *Id.* at 946 n.2. The court considered SEC filings for the undisputed point that "the board approved of the merger with Prio and the concomitant issuance of InfoSpace stock to Prio shareholders." *Id.* at 955. But the court did not credit defendants' exhibits on the issues of "[w]hether TRS was a director by deputization, and, if so, whether InfoSpace, in approving the general Prio–InfoSpace transaction, intended to approve a specific insider-issuer transaction with respect to TRS." *Id.* To the contrary, the Ninth Circuit "reverse[d] the district court's grant of TRS's motion to dismiss because Rule 16b-3(d) does not, *on the facts alleged*, shield TRS from liability under § 16(b)." *Id.*

was locked up.  Instead, the inference of scienter arises from the fact that Lane sold more than *76%* of his holdings for profits of more than *$21 million* during the Class Period.  *See* Pltfs' Opp. to Mot. 31-32.  The lock-up periods do not explain Lane's dramatic sell-off.  Unsurprisingly, neither of the cases cited by Defendants supports taking judicial notice of prospectuses for the purpose of ascertaining a lock-up period and then discounting as unsuspicious stock sales that occurred before or after the lock-up period.  *See* Mot. 22 (citing *In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d 919 (N.D. Cal. 2010), and *Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017)).[5]

The cases cited in Defendants' Request do not support this either.  *See* RJN 2-3. Indeed, *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) (RJN 2-3), reversed the dismissal of a Section 1983 claim because the district court "assumed the existence of facts that favor defendants based on evidence outside plaintiffs' pleadings," and "also erred by taking judicial notice of disputed matters." *Id.* at 688-90.[6]  On this Motion, it is too early to make the disputed factual finding, as

[5] *Accuray* discounted the inference from stock sales because the individual defendant made one "lone stock sale" of "only 10.5% of his stock . . . during the IPO."  757 F. Supp. 2d at 933.  That is a far cry from Lane's *76%* sell-off here.  *Accuray* says nothing about a lock-up.  *Welgus* discounted the inference from stock sales for many reasons, including because: (1) many of the sales alleged in the complaint were made by individuals other than the individual defendants, whose mental state was not at issue; (2) the individual defendants sold pursuant to Rule 10b5-1 plans; and (3) the individual defendants also purchased some shares.  2017 WL 6466264, at *18.  None of those reasons applies here.  The court mentioned the "lock-up agreements" (cited in the complaint) only in the context of defendants' lack of prior trading history, not to draw the inference that trades made at a particular time were innocent.  *Id.*

[6] *Lee* held that judicial notice was appropriate only of "the *fact* of the extradition hearing, the *fact* that a Waiver of Extradition was signed by Kerry Sanders, and the *fact* that Kerry Sanders purportedly waived his right to challenge his extradition to New York as 'Robert Sanders.'" 250 F.3d at 689-90 (emphasis in original). *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (RJN 2), an intellectual property case, found that a release agreement referred to in the complaint was incorporated by

Defendants urge, that the times before or after lock-up periods are times "when shareholders traditionally trade stock," and thus wholly unsuspicious.  Mot. 22 (quoting *Accuray*, 757 F. Supp. 2d at 933).

Finally, **Exhibit P** is a Form 4 for non-party Kathleen Fraher.  The Complaint does not cite or refer to Exhibit P, nor does it make allegations about her trading. Defendants improperly cite Exhibit P to prove that Kathleen Fraher's title was "Executive Vice President and Chief Operating Officer" as of November 2019. Mot. 11 n.6 (citing Ex. P).  Because FE1 described Ms. Fraher as "Silvergate's then-Vice President, 'Compliance and BSA Officer'" (¶56), this supposedly demonstrates (according to Defendants) that FE1 was "far removed from the BSA function" and thus unreliable.  Mot. 11 n.6.  Even if the Form 4 accurately states Ms. Fraher's title (which cannot be determined now), that is not necessarily inconsistent with Ms. Fraher also being the Compliance and BSA Officer—either in function or in title. Nor is there much, if any, difference between a "Vice President" and an "Executive Vice President."  Defendants' efforts to impeach FE1's credibility are premature and improper at this stage, not to mention wholly ineffective.  *See* Pltfs' Opp. to Mot. 20-24; *Patel*, 253 F.R.D. at 546 (Form 4 not properly noticed for "truth of the content").

*     *     *

In sum, Defendants' use of these Exhibits is an improper attempt to "turn[ ] FRCP 12 into a trial-type, papers-only proceeding . . . in which defendants get the benefit of every conceivable doubt, including credibility calls."  *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1260 (N.D. Cal. 2008).  The Court should reject these Exhibits because it remains the job of the jury, in securities actions as in other

---

reference.  *In re Northpoint Communications Group, Inc. Securities Litigation*, 184 F. Supp. 2d 991, 994 n.1 (N.D. Cal. 2001) (RJN 2), took judicial notice of a Form 8-K that attached a merger agreement that was incorporated by reference in the complaint.

cases, "to assess the credibility of witnesses, resolve any genuine issues of fact, and make the ultimate determination whether [defendants] … acted with scienter." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 328 (2007).

## III.     CONCLUSION

Accordingly, Plaintiffs respectfully submit that the Court should not take judicial notice of or treat as incorporated by reference the facts and inferences that Defendants ask the Court to find from their Exhibits.

Dated: September 8, 2023

Respectfully submitted,

*/s/ Carol V. Gilden\**
**COHEN MILSTEIN SELLERS & TOLL PLLC**
Carol V. Gilden (*pro hac vice*)
cgilden@cohenmilstein.com
190 S. LaSalle Street, Suite 1705
Chicago, IL 60603
Tel: (312) 629-3737

*-and-*

Steven J. Toll (*pro hac vice*)
stoll@cohenmilstein.com
S. Douglas Bunch (*pro hac vice*)
dbunch@cohenmilstein.com
Jan Messerschmidt (*pro hac vice*)
jmesserschmidt@cohenmilstein.com
Brendan Schneiderman (*pro hac vice*)
bschneiderman@cohenmilstein.com
1100 New York Avenue, N.W.
Suite 500
Washington, DC 20005
Tel: (202) 408-4600

*-and-*

Christina D. Saler (*pro hac vice*)
100 N. 18th Street
Suite 1820
Philadelphia, PA 19103
Tel: (267) 479-5707

*/s/ Jonathan D. Uslaner*
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470

*-and-*

John J. Rizio-Hamilton (*pro hac vice* pending)
johnr@blbglaw.com
Shane V. Avidan (*pro hac vice* pending)
shane.avidan@blbglaw.com
Nicole Santoro (*pro hac vice* pending)
nicole.santoro@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400

*Lead Counsel for Plaintiffs and the proposed Class*

\*All electronic signatures ("*/s/*") are signed with consent of counsel pursuant to Section 2(F)(4) of this Court's Electronic Case Filing Administrative Policies and Procedures Manual, as of July 24, 2023.