SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JOHN P. STIGI III, Cal. Bar No. 208342
jstigi@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:   310.228.3700
Facsimile:   310.228.3701

POLLY TOWILL, Cal. Bar. No. 120420
ptowill@sheppardmullin.com
JOHN M. LANDRY, Cal. Bar No. 194374
jlandry@sheppardmullin.com
333 South Hope Street, 43d Floor
Los Angeles, California 90071-1422
Telephone:   213.620.1780
Facsimile:   213.620.1398

Attorneys for Defendants SILVERGATE CAPITAL
CORPORATION, ALAN J. LANE, ANTONIO
MARTINO, KAREN F. BRASSFIELD, PAUL D.
COLUCCI, THOMAS C. DIRCKS, AANCHAL
GUPTA, MICHAEL LEMPRES, SCOTT A. REED
and COLLEEN SULLIVAN

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>SILVERGATE CAPITAL CORPORATION SECURITIES LITIGATION. | Case No. 3:22-cv-01936-JES-MSB<br><br>CLASS ACTION<br><br>**REDACTED REPLY MEMORANDUM IN FURTHER SUPPORT OF SILVERGATE DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>Date: November 29, 2023<br>Time: 9:00 a.m.<br>Dept: 4B<br><br>Hon. James E. Simmons. Jr. |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................... 1

II.     PLAINTIFFS FAIL TO STATE AN EXCHANGE ACT CLAIM ................. 1

    A.      The CAC Fails to Plead Facts Sufficient to Show Falsity ..................... 2

        1.      The FE Allegations Do Not Support Plaintiffs' Falsity Theory ........................................................................................ 2

            a.      FE1, FE3, FE4 and FE6's Alleged Statements Are Unreliable ............................................................... 2

            b.      FE2 and FE5 Do Not Support the CAC's Falsity Theory ................................................................... 4

        2.      The Existence of FTX's Fraudulent Scheme Does Not Show That Silvergate Performed No Customer Due Diligence on FTX ............................................................. 6

        3.      Other Customers' Compliance Concerns Do Not Show the Absence of Any Customer Due Diligence ................................... 6

        4.      Plaintiffs' Alleged "Corroborating" Sources Do Not Show Falsity ................................................................................ 7

        5.      Some Statements Are Non-Actionable Statement of Opinion ................................................................................. 7

    B.      Plaintiffs' Scienter Theory Is Implausible And Must Be Rejected ........ 8

        1.      Plaintiffs' Scienter Theory Is Implausible ................................... 8

        2.      Even Assuming Plaintiffs' Theory Was Instead One of Mere Knowledge, Plaintiffs Fail to Plead a Strong Inference of Such Knowledge By Mr. Lane ............................... 10

            a.      The FE Allegations Do Not Show Mr. Lane's Scienter ................................................................... 10

            b.      Receipt of Customer Subpoenas Does Not Show Scienter ................................................................... 10

            c.      The Core Operations Doctrine Does Not Apply ............. 11

            d.      ███████████████████████████ ................. 12

        3.      The Stronger Inference Is That Scienter Is Lacking ................... 13

III.    PLAINTIFFS FAIL TO STATE A SECURITIES ACT CLAIM .............. 13

IV.     CONCLUSION ...................................................................................... 15

SMRH:4894-6212-6730.1

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*In re Accuray, Inc. Sec. Litig.*
757 F. Supp. 2d 936 (N.D. Cal. 2010)..................................................................5

*In re Amgen Inc. Sec. Litig.*
2014 U.S. Dist. LEXIS 183034 (C.D. Cal. Aug. 4, 2014) ...............................6, 7

*In re BofI Holding, Inc. Secs. Litig.*
2017 U.S. Dist. LEXIS 79062 (S.D. Cal. May 23, 2017) ....................................4

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*
637 F.3d 1047 (9th Cir. 2011) .............................................................................1

*Carden v. Westinghouse Elec. Corp.*
850 F.2d 996 (3d Cir. 1988) ................................................................................3

*In re Charles Schwab Corp. Sec. Litig.*
257 F.R.D. 534 (N.D. Cal. 2009) .......................................................................14

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*
65 F. Supp. 3d 840 (N.D. Cal. Aug. 22, 2014).....................................................6

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*
2019 U.S. Dist. LEXIS 216801 (N.D. Cal. Dec. 17, 2019) ...............................11

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*
932 F. Supp. 2d 1095 (CD. Cal. 2013)...............................................................14

*Curry v. Yelp Inc.*
2015 U.S. Dist. LEXIS 159001 (N.D. Cal. Nov. 24, 2015)..................................9

*In re Daou Sys., Inc.*
411 F.3d 1006 (9th Cir. 2005) ..............................................................................2

*Evanston Police Pension Fund v. McKesson Corp.*
411 F. Supp. 3d 580 (N.D. Cal. 2019)................................................................12

*Gilead Scis. Sec. Litig.*
536 F.3d 1049 (9th Cir. 2008)............................................................................13

SMRH:4894-6212-6730.1

*Glazer Cap. Mgmt. v. Forescout Techs., Inc.*
 63 F.4th 747 (9th Cir. 2023) ................................................................................7

*Hershewe v. Joyy Inc.*
 2021 U.S. Dist. LEXIS 251310 (C.D. Cal. Nov. 5, 2021) ...................................7

*In re HP Sec. Litig.*
 2013 U.S. Dist. LEXIS 168292 (N.D. Cal. Nov. 26, 2013)................................13

*Huei-Ting Kang v. Paypal Holdings, Inc.*
 620 F. Supp. 3d 884 (N.D. Cal. 2022)..................................................................8

*In re Immune Response Sec. Litig.*
 375 F. Supp. 2d 983 (S.D. Cal. 2005) .................................................................12

*In re Intel Corp. Sec. Litig.*
 2023 U.S. Dist. LEXIS 57732 (N.D. Cal. Mar. 31, 2023) ..................................7

*Iowa Pub. Employees' Ret. Sys. v. MF Global, Ltd.*
 620 F.3d 137 (2d Cir. 2010) ................................................................................4

*Kipling v. Flex Ltd.*
 2020 U.S. Dist. LEXIS 94594 (N.D. Cal. May 29, 2020) ...................................8

*Knox v. Yingli Green Energy Holding Co. Ltd.*
 242 F. Supp. 3d 950 (C.D. Cal. 2017)..................................................................8

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*
 2011 U.S. Dist. LEXIS 125203 (C.D. Cal. May 5, 2011)..................................14

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*
 540 F.3d 1049 (9th Cir. 2008) ....................................................................1, 9, 12

*Nguyen v. Endologix*
 962 F.3d 405 (9th Cir. 2020) .......................................................................1, 8, 9

*In re NVIDIA Corp. Sec. Litig.*
 768 F.3d 1046 (9th Cir. 2014) ............................................................................13

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*
 58 F.4th 195 (5th Cir. 2023) .................................................................................3

*Pinter v. Dahl*
 486 U.S. 622 (1988) ............................................................................................14

SMRH:4894-6212-6730.1

Case No. 3:22-CV-01936-JES-MSB
REPLY ISO SILVERGATE DEFENDANTS' MOTION TO DISMISS CAC

*In re Portal Software, Inc. Sec. Litig.*
  2006 U.S. Dist. LEXIS 61589 (N.D. Cal. Aug. 17, 2006) .................................. 14

*In re Qualcomm Inc. Sec. Litig.*
  2019 U.S. Dist. LEXIS 44125 (S.D. Cal. Mar. 18, 2019) .................................. 12

*In re Rackable Sys., Inc. Sec. Litig.*
  2010 U.S. Dist LEXIS 2663 (N.D. Cal. Jan. 13, 2010) .................................... 10

*Robb v. Fitbit Inc.*
  2017 U.S. Dist. LEXIS 7722 (N.D. Cal. Jan. 19, 2017) .............................. 11, 12

*Smallen v. The W. Union Co.*
  950 F.3d 1297 (10th Cir. 2020) ................................................................. 8, 12

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*
  551 U.S. 308 (2007) ........................................................................................ 13

*Vignola v. FAT Brands, Inc.*
  2019 U.S. Dist. LEXIS 204654 (C.D. Cal. June 14, 2019) .............................. 14

*Wallack v. Idexx Lab'ys, Inc.*
  2013 U.S. Dist. LEXIS 131403 (S.D. Cal. Sept. 12, 2013) ................................ 1

*Welgus v. TriNet Grp., Inc.*
  2017 U.S. Dist. LEXIS 207777 (N.D. Cal. Dec. 18, 2017) .............................. 11

*Welgus v. Trinet Grp., Inc.*
  2017 U.S. Dist. LEXIS 6347 ........................................................................... 13

*Zaidi v. Adamas Pharms., Inc.*
  2023 U.S. Dist. LEXIS 8111 (N.D. Cal. Jan. 13, 2023) .................................. 11

*Zhou v. Faraday Future Intelligent Elec. Inc.*
  2022 U.S. Dist. LEXIS 192565 (C.D. Cal. Oct. 20, 2022) .............................. 12

*Zucco Partners, LLC v. Digimarc Corp.*
  552 F.3d 981 (9th Cir. 2009) ............................................................ 1, 2, 9, 10

Statutes

Private Securities Litigation Reform Act ......................................................... 1, 6

Other Authorities

Federal Rule of Civil Procedure 9(b) ........................................................................ 13

SEC Rule 159 ............................................................................................................ 14

## I. INTRODUCTION

Plaintiffs' theory, as pled, is that Silvergate performed absolutely *no* customer due diligence at any time during the Class Period, thereby rendering defendants' public statements about customer due diligence knowingly false when made. The Silvergate Defendants demonstrated that the CAC's factual allegations were not sufficient under the heightened pleading requirements of the PSLRA to support this falsity theory or a strong inference of scienter. *See, e.g., Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (PSLRA requires plaintiffs to plead with particularity "what is false and misleading about" each specific statement they allege is false and "why it is false"). In their opposition, plaintiffs attempt to retreat from their theory of the case, accusing defendants of "rewriting" the CAC. But in purporting to "correct" defendants' supposed mischaracterization, plaintiffs simply repeat the very allegations of "why [Silvergate's statements are] false" that underscore the CAC's "did-nothing" theory. (*See, e.g.*, Opp. at 7-8, 11-12, 17.) Moreover, plaintiffs' falsity theory renders their scienter allegations implausible under *Nguyen v. Endologix*, 962 F.3d 405, 414 (9th Cir. 2020). The Court should dismiss the CAC.

## II. PLAINTIFFS FAIL TO STATE AN EXCHANGE ACT CLAIM

Congress enacted the PSLRA "to curb perceived abuses of the § 10(b) private action — nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests and manipulation by class action lawyers." *Endologix*, 962 F.3d at 414 (citations omitted); *Wallack v. Idexx Lab'ys, Inc.*, 2013 U.S. Dist. LEXIS 131403, at *15-16 (S.D. Cal. Sept. 12, 2013) (discussing key policy reasons underlying the PSLRA's pleading requirements). As a result, plaintiffs in securities actions face "formidable" pleading requirements. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1054-55 (9th Cir. 2008). Defendants demonstrated that the CAC fails to plead falsity and scienter with particularity as required under the PSLRA. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). Plaintiffs' opposition does not change this reality.

## A.    The CAC Fails to Plead Facts Sufficient to Show Falsity

To avoid dismissal for failing to adequately plead falsity, plaintiffs' opposition, like the CAC, relies upon: (1) purported statements by six unnamed former Silvergate employees (the "FEs"); (2) the circumstances leading to FTX's November 2022 collapse; (3) legal compliance issues that allegedly affected certain other Silvergate customers during the class period; and (4) alleged "findings" by politicians and "exposés" by "investigative journalists." (Opp. at 1, 12, 14, 15.) Contrary to plaintiffs' arguments, none of them satisfies the PSLRA's stringent pleading requirements.

### 1.    The FE Allegations Do Not Support Plaintiffs' Falsity Theory

#### a.    FE1, FE3, FE4 and FE6's Alleged Statements Are Unreliable

Defendants demonstrated that the CAC's allegations failed to show FE1, FE3, FE4 and FE6 held positions within Silvergate which would allow them to possess knowledge of the facts attributed to them, or otherwise failed to show the relevancy of the attributed facts. Plaintiffs essentially ignore defendants' arguments by simply repeating FE1, FE3, FE4 and FE6's alleged statements and urging the Court not to undertake a reliability analysis. (*See* Opp. at 23.) But Ninth Circuit authority instructs that the Court *must* assess each FE's reliability at the pleading stage to determine whether the allegations attributed to the FEs meet the PSLRA's pleading standards. *See Zucco*, 552 F.3d at 995; *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005). The deficiency is not simply about the FEs' job titles. Rather, it is the description of their and their department's actual responsibilities that renders it implausible the FEs had personal visibility into the Bank's customer diligence practices.

*FE1*. FE1 cannot have personal knowledge of occurrences she admittedly "never saw," "never heard" or of which she was "not aware." (Mot. at 11-12.) FE1 allegedly interacted with CEO Lane and Kathleen Fraher (Opp. at 22), but no alleged facts show that any of FE1's interactions concerned the Bank's BSA practices or their absence – which is not surprising, since FE1 did not serve in any BSA role and the CAC provides no basis for assuming FE1 actually had any visibility into the Bank's

BSA-related functions.[1]   Speculation that FE1 "would have been aware" of any diligence efforts is far from the "convincing detail" in a complaint that plaintiffs' own cited authority demands to credit a confidential source's reliability.  *See Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 208 (5th Cir. 2023).

*FE3*.  The CAC does not allege how FE3 could possibly know or infer the extent to which Silvergate performed customer due diligence.  Even if FE3 were "tasked with onboarding customers to the SEN" (Opp. at 22), plaintiffs allege no facts explaining how FE3 learned or inferred whether or what customer due diligence had been performed by others beforehand, or any post-onboarding diligence, or any BSA/AML monitoring.  The opposition concedes that FE3's alleged statement that Silvergate purchased but failed to implement AML software is based on statements by unidentified persons that FE3 heard at unidentified meetings. [2] (*Id.*)  Although the opposition points to FE3 as allegedly "personally handling wire limit[s]," nowhere does it explain how this bears on the Bank's due diligence procedures or shows falsity.

*FE4*.  The opposition stresses that FE4 has "a firm basis to provide her account" because she received reports of unauthorized transactions from other banks and copies of customer subpoenas.  (Opp. at 22.)  But these unremarkable observations shed no light on the Bank's due diligence procedures.  That would require allegations showing FE4 possessed reliable personal knowledge or insight into any resulting investigation by Silvergate in response to the alleged unauthorized transaction reports and subpoenas.  The CAC contains no such foundational facts, and plaintiffs point to none.

*FE6*.  The CAC does not explain why allowing Silvergate employees to fill out

---

[1] That FFIEC guidance does not "preclude" BSA personnel from interacting with management (*see* Opp. at 23) does not help plaintiffs because the CAC does not allege any such interaction actually took place between FE1 and any BSA personnel.

[2] Plaintiffs contend that FE3's reliance upon vague hearsay from anonymous "Relationship Managers" (CAC ¶ 67) and unidentified "colleagues" (*id.* ¶ 75) does not undermine her reliability.  (Opp. at 24 n.6.)  But the party-opponent exception to hearsay is not applicable where, as here, the "author of the [hearsay] statement is unknown." *Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1003 (3d Cir. 1988).

paperwork forms for customers (a practice FE6 allegedly observed) shows falsity. (Mot. at 13 n.9.) Plaintiffs never respond to this, attempting instead to shift the burden by claiming that defendants "now contend" it was "proper" for Silvergate employees to fill out the forms. (Opp. at 23 n.5.) Although plaintiffs characterize this as an "impropriety" (*id.*), they never explain why or how it was improper. Plaintiffs also do not contend the forms were in fact false, or that those same employees did not also confirm the accuracy of the information with bank customers.

### b. FE2 and FE5 Do Not Support the CAC's Falsity Theory

FE2 and FE5 are the only FEs alleged to have any actual role with or visibility into the BSA Department. Defendants pointed out that FE2 left months *before* the start of the Class Period (CAC ¶ 59 n.46), and so his purported observations could not be probative of Silvergate's BSA compliance and diligence procedures at the time of any alleged misstatements. (Mot. at 12.) Plaintiffs offer no real response to this.[3] Moreover, the CAC's FE2 allegations positively undermine plaintiffs' falsity theory, as FE2 allegedly worked in the Bank's BSA unit with other BSA employees, and he is not alleged to claim that he and his BSA colleagues did nothing and were paid to do nothing (as one would expect given plaintiffs' falsity theory). Indeed, FE2's alleged statements are all about his belief and opinion that Silvergate's BSA procedures were deficient rather than non-existent — a very different falsity theory than the one alleged in the CAC.[4] (*See, e.g.*, CAC ¶¶ 59, 60, 62.) Regardless of plaintiffs'

---

[3] Plaintiffs' only response is a novel "bookend" argument in which they surmise no changes must have been made to the Bank's due diligence processes and procedures between when FE2 departed from the Bank (June 2019) and FE5's tenure (May 2022-May 2023). (*See* Opp. at 24.) The argument has no support. In *In re BofI Holding, Inc. Secs. Litig.*, 2017 U.S. Dist. LEXIS 79062, at *36-37 (S.D. Cal. May 23, 2017), the relevant FE complained that his department was understaffed "throughout his time at BofI, which extended into the Class Period." It thus did not involve an informant who, like FE2, was not employed at any point during the Class Period. *Iowa Pub. Employees' Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137 (2d Cir. 2010), likewise is distinguishable because it did not involve any question of the FE's reliability based on his employment status during the relevant time period.

[4] Plaintiffs did not plead a deficiency theory in the CAC, as it would be squarely foreclosed by Silvergate's robust disclosures that its due diligence procedures may

falsity theory, none of FE2's speculative or opinion allegations establish falsity with the requisite particularity. *See In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 944 (N.D. Cal. 2010). The CAC's FE2 allegations fail as a matter of law.

FE5 is alleged to have personal knowledge regarding Silvergate's due diligence practices during the alleged Class Period. But, as with FE2, FE5's allegations contradict rather than support plaintiffs' theory that Silvergate performed no customer due diligence and so are similarly self-defeating. FE5 alleges that, "prior to August 15, 2022," Silvergate's BSA compliance and due diligence procedures were merely lacking, not non-existent. (*See* CAC ¶¶ 83, 84, 86.) The only specifics FE5 provides, however, are that Silvergate did not conduct site visits (*id.* ¶ 67), did not review potential customers' culture of compliance at the onboarding stage (*id.* ¶ 83), never said "no" to a client prior to May 2022 (*id.*) and did not take a "hard enough line" with customers who violated the purported "wire rule" (*id.* ¶ 85). Taken together, these allegations do not show that Silvergate failed to perform *any* onboarding due diligence or subsequent customer monitoring. At most, they suggest Silvergate declined to conduct in-person site visits during a global pandemic and did not, in FE5's opinion, do as good a job as it could have done in weeding out bad customers.

Moreover, plaintiffs rely upon FE5 to introduce



not be sufficient to detect illegal activity by Bank customers in all instances. (*See* RJN Exs. M at 24, 39-40; N at 22, 33-34.)

-5-

████████████████████████████████████████████████████████████

████████████████████████████████████ further contradicting plaintiffs' theory. At best, plaintiffs are left with a single FE who identifies alleged "deficiencies" with respect to Silvergate's customer diligence practices.

### 2. The Existence of FTX's Fraudulent Scheme Does Not Show That Silvergate Performed No Customer Due Diligence on FTX

According to plaintiffs, "had" Silvergate conducted even some minimal due diligence on FTX, it "would have" discovered several purportedly blatant red flags regarding FTX's activities. (Mot. at 15; *see* Opp. at 15 (citing, *e.g.*, CAC ¶¶ 94, 100, 104, 108).) This is pure speculation with no particularized allegations to support it. (*Id.*) No FE alleges based upon personal knowledge that Silvergate did not conduct BSA diligence on FTX or its related entities. In their opposition, plaintiffs "double down" on their "would have discovered" supposition, but provide no authority that such speculation can ever satisfy the PSLRA. It does not. *In re Amgen Inc. Sec. Litig.*, 2014 U.S. Dist. LEXIS 183034, at *54 (C.D. Cal. Aug. 4, 2014); *see also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 853 (N.D. Cal. Aug. 22, 2014) (speculative allegations "are no substitute for factual allegations demonstrating Defendants' actual assumptions were false, and accordingly do not rise to the level of particularity required by the PSLRA").

### 3. Other Customers' Compliance Concerns Do Not Show the Absence of Any Customer Due Diligence

Plaintiffs' theory that Silvergate conducted *no* customer diligence also relies upon compliance concerns that developed among a handful of other Bank customers. But the CAC alleges no particularized facts that justify this reliance. No FE is alleged to have had any oversight over any of those accounts and no FE allegations identify or concern the due diligence performed on the accounts. Instead, plaintiffs' reliance rests entirely on the same speculative, and so invalid, "would have discovered"

allegations described above. [5]  (*See*, *e.g*, Opp. at 2, 9, 16, 18.)

### 4.   Plaintiffs' Alleged "Corroborating" Sources Do Not Show Falsity

The CAC's purported Congressional "findings" show no falsity.  First, as alleged, these "findings" were just a "request for information." (CAC ¶ 270.)  Second, far from "finding" anything, the request merely "*suggest[ed]* that [Silvergate] *may have* failed to implement or maintain an effective [AML] program." (*Id*. (emphasis added).)  Third, because the senators had no alleged personal knowledge to support their speculation, their alleged statements cannot show falsity.  *See Amgen*, 2014 U.S. Dist. LEXIS 183034, at *54.  The various alleged "exposés" by purported "investigative journalists" also fail because they lack "factual particulars" and "independent investigative effort," which renders them unreliable.  *See In re Intel Corp. Sec. Litig.*, 2023 U.S. Dist. LEXIS 57732, at *67-68 (N.D. Cal. Mar. 31, 2023).  The articles and posts do not identify the source of their assertions or demonstrate any effort to independently verify the assertions.  (*See*, *e.g.*, CAC ¶¶ 130, 134.)  They thus cannot bolster allegations of falsity in the Ninth Circuit.  *See*, *e.g.*, *Hershewe v. Joyy Inc.*, 2021 U.S. Dist. LEXIS 251310, at *13-14 (C.D. Cal. Nov. 5, 2021).

### 5.   Some Statements Are Non-Actionable Statement of Opinion

Plaintiffs' efforts to recast several alleged misstatements in the CAC as objective statements of fact all fail for the reasons set forth in defendants' opening memorandum.  Plaintiffs' argument that courts should avoid deciding whether challenged statements constitute non-actionable puffery at the motion to dismiss stage is simply

---

[5] This speculation is also inconsistent with the alleged reality of the cryptocurrency industry as depicted in the CAC itself.  As alleged, other banks "were reticent" to accept cryptocurrency exchanges as clients and "shunned" them, recognizing the inherent difficulty in detecting "sham" crypto clients and the fraud and money laundering risk it presented, a risk that Silvergate undertook and robustly disclosed.  (CAC ¶ 29; Opp. at 3.)  Yet, plaintiffs' theory rests on the assumption that fraud by alleged sham customers would have been instantly "obvious" to Silvergate if it had performed "even a fraction" of its represented diligence.  (Opp. at 17-18.)  When tested against the CAC's other allegations, this assumption does not satisfy even the low "reasonable inference standard of plausibility." *Glazer Cap. Mgmt. v. Forescout Techs., Inc.*, 63 F.4th 747, 769 (9th Cir. 2023).

wrong. (Mot. at 17-18); *see also Smallen v. The W. Union Co.*, 950 F.3d 1297, 1314 (10th Cir. 2020) (affirming dismissal of complaint where defendant bank described its BSA/AML compliance policies as "robust," "effective" and "strong"). Indeed, courts regularly engage in just this type of rigorous statement-by-statement analysis, dismissing claims to the extent they are not actionable under the federal securities laws. *See, e.g., Kipling v. Flex Ltd.*, 2020 U.S. Dist. LEXIS 94594, at *41-42 (N.D. Cal. May 29, 2020). The Court should do so here. [6]

**B.      Plaintiffs' Scienter Theory Is Implausible And Must Be Rejected**

**1.      Plaintiffs' Scienter Theory Is Implausible**

Plaintiffs must establish a *strong* inference that Mr. Lane actually knew, at the time he spoke, that Silvergate was not performing *any* diligence on *any* of its customers. Plaintiffs theorize that Mr. Lane staffed the Bank's BSA department with dozens of personnel, paid them, but instructed them to sit idly by and not conduct *any* standard BSA functions, all while knowing this would garner regulatory scrutiny and sanction, with "devastating" negative consequences to the Bank and Mr. Lane personally. (CAC ¶ 224.) As defendants have shown, this scienter theory is implausible, in the same sense, manner and degree as the scienter theory rejected by the Ninth Circuit in *Endologix*. (Mot. at 20 (citing *Endologix*, 962 F.3d at 407-08).) Plaintiffs attempt to distinguish *Endologix* by asserting that (1) Mr. Lane had "something to gain" from engaging in fraud because he sold some of his stock during the

---

[6] That a challenged statement contains *some* objectively verifiable facts does not save portions that are vague and subjective. As a result, statements that Silvergate's process was "like the good housekeeping seal of approval" (CAC ¶¶ 152, 173) and describing its risk management and compliance framework as "robust" (*id.* ¶ 161) are precisely the kind of vague, subjective claims that constitute non-actionable puffery in the Ninth Circuit. *See Huei-Ting Kang v. Paypal Holdings, Inc.*, 620 F. Supp. 3d 884, 898-99 (N.D. Cal. 2022). Likewise, the statement that Silvergate "comprehensively investigates prospective customers according to the level *it* deems necessary and appropriate" (CAC ¶ 155, RJN Ex. G, at 8 (emphasis added)) and explaining what the Bank's diligence and monitoring processes were "designed to" accomplish (CAC ¶ 166) are incapable of objective verification and are thus non-actionable puffery. *See Knox v. Yingli Green Energy Holding Co. Ltd.*, 242 F. Supp. 3d 950, 961 (C.D. Cal. 2017). Plaintiffs fail to show otherwise in the opposition.

Class Period and (2) the fallout here was not "inevitable." Both arguments fail.

First, plaintiffs fail to allege facts sufficient to support a cogent motive for Mr. Lane to have engaged in such a profound intentional failure of management. Plaintiffs do not dispute, and thus concede, that the CAC fails to allege Mr. Lane's stock sales satisfy any of the three factors courts consider in determining whether insider stock sales are suspicious, even going so far as to acknowledge that their allegations about Mr. Lane's stock sales may not "carry the day." (Opp. at 32); *see also Metzler*, 540 F.3d at 1067 (listing factors).[7]

Second, plaintiffs argue that the CAC does not expressly allege that Mr. Lane embarked on a "doomed path" that would "no doubt" result in Silvergate's destruction (and so "getting caught" was "far from 'inevitable'"). (Opp. at 33.) But neither did the complaint in *Endologix expressly* allege that the false promise of FDA approval in that case would inevitably be exposed, but that was the necessary implication that led the Ninth Circuit to rule the way it did. The same is precisely the case here given the indisputable reality in which Silvergate allegedly operated.[8] For plaintiffs' theory to suffice, they would have to explain: (1) how it was reasonably plausible for Silvergate to avoid performing any of its due diligence obligations *for years*, and for Silvergate to have gotten away with it *for years*; and (2) why Mr. Lane would do so *knowing* that such a failure would "essentially put the entire bank at jeopardy." (CAC ¶ 224.) Plaintiffs make no attempt to do so.

---

[7] Plaintiffs' failure to allege Mr. Lane's trading history is itself fatal and dispositive on this issue. Plaintiffs seek to justify their admitted failure, but the Ninth Circuit was unequivocal when it held, two years after the unpublished district court opinion plaintiffs rely upon, that "[e]ven if the defendant's trading history is simply not available for reasons beyond a plaintiff's control, the plaintiff is not excused from pleading the relevant history." *Zucco*, 552 F.3d at 1005. Courts applying *Zucco* have strictly applied this requirement even when, as here, trading history is unavailable because there are no pre-Class Period sales. *See Curry v. Yelp Inc.*, 2015 U.S. Dist. LEXIS 159001, at *53 (N.D. Cal. Nov. 24, 2015).

[8] The fact that Silvergate was subject to regular examinations by the Federal Reserve is not only a matter properly subject to judicial notice (as well as common knowledge and common sense), but is also clear from plaintiffs' own allegations. (*See, e.g.*, CAC ¶¶ 7, 77-80, 172, 175, 178, 184, 188.)

**2.** **Even Assuming Plaintiffs' Theory Was Instead One of Mere Knowledge, Plaintiffs Fail to Plead a Strong Inference of Such Knowledge By Mr. Lane**

Any scienter theory based upon mere knowledge reflects an attempt by plaintiffs to retreat from their original theory of a deliberate failure to conduct any due diligence. Even then, the CAC's allegations fail to support the requisite strong inference that Mr. Lane actually knew, at the time he spoke, that Silvergate was not conducting *any* due diligence on *any* customer. In fact, even if plaintiffs retreat further and instead argue only that the challenged statements were misleading because Silvergate's diligence procedures were insufficient, their allegations still fail to establish the requisite *strong* inference that Mr. Lane actually knew of any ongoing and unaddressed deficiencies at any time during the Class Period.

**a.** **The FE Allegations Do Not Show Mr. Lane's Scienter**

No FE allegations show that Mr. Lane was exposed to information showing Silvergate did not perform any due diligence. (Mot. at 24-25.) Only two FEs (FE1 and FE3) were alleged to have had any contact with Mr. Lane, and those FEs, in addition to defendants' other cited deficiencies, were not even on the Bank's BSA/AML compliance team. Plaintiffs ignore this obvious information gap and argue "there is no requirement that an FE have 'contact' with a defendant to allege scienter." (Opp. at 35.) Under controlling Ninth Circuit law, however, an FE's allegations "must themselves be indicative of scienter." *Zucco*, 552 F.3d at 995. Plaintiffs make no attempt to show that *any* FE communicated with Mr. Lane about any BSA-related issues or how any FE sheds any light on Mr. Lane's actual exposure to Silvergate's purported lack of diligence processes. *See In re Rackable Sys., Inc. Sec. Litig.*, 2010 U.S. Dist LEXIS 2663, at *26 (N.D. Cal. Jan. 13, 2010) (rejecting FE allegations when they had no "interaction or communication with any of the defendants"). Thus, plaintiffs' FE allegations are not "themselves indicative of scienter."

**b.** **Receipt of Customer Subpoenas Does Not Show Scienter**

Defendants showed the CAC is devoid of any allegations that Mr. Lane knew

SMRH:4894-6212-6730.1

about the customer subpoenas in question.  (Mot. at 28.)  Plaintiffs' only response is their speculation that "it is a reasonable inference that those executives informed Lane."  (Opp. at 31.)  That is not a reasonable nor proper inference.  *See Zaidi v. Adamas Pharms., Inc.*, 2023 U.S. Dist. LEXIS 8111, at *24-25 (N.D. Cal. Jan. 13, 2023); *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 U.S. Dist. LEXIS 216801, at *58 (N.D. Cal. Dec. 17, 2019).[9]  Nor do plaintiffs explain how knowledge of these subpoenas would cause Mr. Lane to know, or even suspect, the alleged falsity of his statements regarding the Bank's due diligence processes.

### c.    The Core Operations Doctrine Does Not Apply

Defendants demonstrated that the CAC fails to include the necessary "detailed allegations" about Mr. Lane's "actual exposure" to the relevant information.  (Mot. at 25.)  Plaintiffs do not address this failure.  Instead, they rely entirely upon the "core operations" doctrine to support their supposition that Mr. Lane should be deemed to have known that Silvergate performed no customer due diligence.  The core operations doctrine is inconsistent with and would require the Court to ignore plaintiffs' overarching theory of deliberateness.  Despite this inherent inconsistency, plaintiffs argue a strong inference of scienter must exist because due diligence was of "central importance" to Silvergate's business strategy.  (Opp. at 28.)  Pleading scienter based on this theory is "not easy" and appropriate only in "rare circumstances."  *Welgus v. TriNet Grp., Inc.*, 2017 U.S. Dist. LEXIS 207777, at *63-64  (N.D. Cal. Dec. 18, 2017).  This is not one of those rare circumstances.  Although plaintiffs allege that Mr. Lane had "personal involvement" in the Bank's monitoring and due diligence procedures, they fail to point to any "specific information . . . related to the fraud" that

---

[9] In *Robb v. Fitbit Inc.*, 2017 U.S. Dist. LEXIS 7722, at *13 (N.D. Cal. Jan. 19, 2017), the court held the inference that Fitbit executives would know about the outcomes of quality assurance testing conducted "specifically" to assess the functioning of products that accounted for 80% of Fitbit's revenue to be plausible.  Here, on the other hand, there is no basis to infer that the receipt of routine customer subpoenas by a bank would have ever made their way near the CEO's desk.

SMRH:4894-6212-6730.1
Case No. 3:22-CV-01936-JES-MSB
REPLY ISO SILVERGATE DEFENDANTS' MOTION TO DISMISS CAC



was conveyed to him. *See Metzler*, 540 F.3d at 1068.[10]  Accordingly, plaintiffs cannot rely on the core operations doctrine to plead a strong inference of scienter.

      **d.**  ██████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

---

[10] Plaintiffs' cited cases are distinguishable for this reason. *See Fitbit*, 2017 U.S. Dist. LEXIS 7722, at *14-16 (alleging the CEO actually "accessed the internal reports"); *Zhou v. Faraday Future Intelligent Elec. Inc.*, 2022 U.S. Dist. LEXIS 192565, at *29-30 (C.D. Cal. Oct. 20, 2022) (per FE, the reservation numbers were discussed at meetings defendants attended); *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1022 (S.D. Cal. 2005) (plaintiffs specifically identified the reports containing contrary information to which defendants had access); *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 602-03 (N.D. Cal. 2019) (analyzing specific admissions from top executives that "indicate[d] not just a willingness to monitor the market, but access to information putting them on notice that the price increases were not driven by legitimate supply disruptions."); *In re Qualcomm Inc. Sec. Litig.*, 2019 U.S. Dist. LEXIS 44125 (S.D. Cal. Mar. 18, 2019) (defendants were allegedly "directly and extensively involved in developing and maintaining the licensing model and sales agreements" and "participated in and supervised negotiations that tied together technology licensing and chipset sales").

[11] Plaintiffs still do not identify any facts that suggest Mr. Lane knew or even suspected that Silvergate's due diligence procedures remained deficient after August 2022. (*See* CAC ¶¶ 82, 84, 86, 87; *see also* Mot. at 28 n.22.)

[black redaction bar] [12]

### 3. The Stronger Inference Is That Scienter Is Lacking

Plaintiffs do not refute the more plausible inference that some of the Bank's customers purposely circumvented Silvergate's due diligence and monitoring procedures, a possibility Silvergate repeatedly and openly warned. (*See* Mot. at 29.) Plaintiffs contend only that defendants' counter-inference is based exclusively on its request for judicial notice (RJN) of certain court documents. Not so. It is instead based upon the CAC's own allegations. (*See*, *e.g.*, CAC ¶¶ 98, 101, 102; *see also id.* ¶ 100 (noting that Bankman-Fried has been indicted for his fraud).) Defendants do not need to *create* any counter-inference in their RJN. Rather, the RJN materials *corroborate* defendants' counter-inference and illustrate why it is a stronger one than plaintiffs' scienter theory: *e.g.*, the United States Government has found the counter-inference worthy of pursuing, and FTX's new CEO has admitted its viability.[13]

### III. PLAINTIFFS FAIL TO STATE A SECURITIES ACT CLAIM[14]

*Allegations Against the Individual Defendants*. To establish the Individual Defendants' statutory seller status, the opposition rests entirely on plaintiffs' claim that simply signing the registration statement is enough. It is not. *See Welgus v.*

---

[12] AC allegation purports to suggest Mr. Lane's knowledge [redacted] and so plaintiffs fail, at a minimum, to plead facts to estab[lish] scienter prior to the "first quarter of 2022." *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014); *see also In re HP Sec. Litig.*, 2013 U.S. Dist. LEXIS 168292 (N.D. Cal. Nov. 26, 2013) (analyzing scienter separately for statements made before versus after a certain date).

[13] Plaintiffs' "response" to defendants' RJN (ECF No. 80) is an improper attempt to place extra, unsanctioned briefing before the Court. Defendants' RJN is proper. *See Tellabs, Inc. v. Makor Issues & Rights Ltd.*,„ 551 U.S. 308, 322 (2007); *Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (court need not "accept as true allegations that contradict matters properly subject to judicial notice").

[14] Plaintiffs do not dispute that the heightened pleading standard of Rule 9(b) applies to their Securities Act Claims as to Silvergate and Mr. Lane. (*See* Securities Opp. at 19-20.) Because plaintiffs rely upon virtually identical allegations to support their Exchange Act Claims and Securities Act Claims, they fail to meet that standard for the same reasons set forth above. (*See* Section II.A, *supra*.)

*Trinet Grp., Inc.*, 2017 U.S. Dist. LEXIS 6347, at \*59-61; *Vignola v. FAT Brands, Inc.*, 2019 U.S. Dist. LEXIS 204654, at \*23-26 (C.D. Cal. June 14, 2019). To date, the Ninth Circuit has not addressed whether simply alleging that a defendant signed a registration statement suffices to state a Section 12 claim. However, even plaintiffs' cited cases confirm there must be something more. *See In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 549 (N.D. Cal. 2009) (complaint "also alleges that defendants 'actively solicited the sale of the fund's shares' and that certain defendants were involved in marketing the fund"); *In re Portal Software, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 61589, at \*11 (N.D. Cal. Aug. 17, 2006) (defendants' solicitation included "participating in . . . the preparation of the false and misleading Prospectus"). No similar allegations exist here.

*Allegations Against Silvergate. Pinter v. Dahl*, 486 U.S. 622 (1988), is clear: to assert claims against Silvergate as a Section 12 statutory seller, plaintiffs *must* allege either that: (1) Silvergate directly transferred title of its securities to them, or (2) facts showing that it actively solicited the sale of shares for its own financial gain or that of the securities' owner. *Id.* at 647. Plaintiffs attempt to sidestep this clear requirement only by pointing to SEC Rule 159A. (Opp. at 32.) Yet, most courts presented with the question of whether an issuer is a statutory seller in a firm commitment underwriting have applied *Pinter* and almost all have found that unless there are specific allegations that the issuer engaged in active solicitation, the issuer is not a statutory seller, notwithstanding Rule 159. *See, e.g., Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 U.S. Dist. LEXIS 125203, at \*38-39 (C.D. Cal. May 5, 2011) (rejecting reliance on Rule 159 and requiring that plaintiffs allege direct solicitation under *Pinter*);[15] *accord In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 932 F. Supp. 2d 1095, 1118 (CD. Cal. 2013). Plaintiffs do not otherwise dispute that they fail to satisfy *Pinter*, and so fail to show that Silvergate is a statutory seller.

---

[15] Plaintiffs argue, without authority or reasoning, that the *Maine State* court "incorrectly found" that SEC Rule 159A conflicted with *Pinter*. (Opp. at 33.)

## IV. CONCLUSION

For the foregoing reasons, and for the reasons set forth in the defendants' moving papers, the Court should grant defendants' motions to dismiss.

Dated:  October 23. 2023          SHEPPARD. MULLIN. RICHTER & HAMPTON LLP

By:  _____*s/John P. Stigi III*_____
JOHN P. STIGI III
POLLY TOWILL
Attorneys for the SILVERGATE DEFENDANTS
Email:  jstigi@sheppardmullin.com
Email:  ptowill@sheppardmullin.com

SMRH:4894-6212-6730.1

Case No. 3:22-CV-01936-JES-MSB
REPLY ISO SILVERGATE DEFENDANTS' MOTION TO DISMISS CAC