LATHAM & WATKINS LLP
Michele D. Johnson (SBN 198298)
Email: michele.johnson@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel.: 714.540.1235
Fax: 714.755.8290

Douglas K. Yatter (SBN 236089)
Jason C. Hegt (admitted *pro hac vice*)
Email: douglas.yatter@lw.com
Email: jason.hegt@lw.com
1271 Avenue of the Americas
New York, NY 10020
Tel.: 212.906.1200
Fax: 212.751.4864

*Attorneys for Defendants Goldman Sachs & Co. LLC, Keefe, Bruyette & Woods, Inc., Canaccord Genuity LLC, Compass Point Research & Trading, LLC, Craig-Hallum Capital Group LLC, J.P. Morgan Securities LLC, Wedbush Securities Inc., Citigroup Global Markets Inc., and UBS Securities LLC*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SILVERGATE CAPITAL CORPORATION SECURITIES LITIGATION | Case No. 3:22-cv-01936-JES-MSB |
| | **REPLY MEMORANDUM IN FURTHER SUPPORT OF UNDERWRITER DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| | Hearing Date: November 29, 2023<br>Time: 9:00 a.m.<br>Courtroom: 4B<br>Judge: Hon. James E. Simmons, Jr. |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

UNDERWRITER DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ..........................................................................................................2

I.  Plaintiffs Fail To Satisfy Threshold Standing Requirements .......................2

    A.  Plaintiffs Lack Statutory Standing To Bring Section 11 Claims ....................................................................................2

    B.  Plaintiffs Lack Statutory Standing To Bring Section 12 Claims ....................................................................................7

    C.  Plaintiffs Have Not Alleged That the Sales Agents Were Underwriters of the March-May 2021 "At-The-Market" Offering .................................................................................9

II. Plaintiffs Do Not Allege That the Offering Materials Contained a Single False or Misleading Statement or Omission ................................10

    A.  Plaintiffs' Securities Act Claims Sound in Fraud and Must Be Pleaded With Factual Particularity ..................................10

    B.  Plaintiffs Do Not Allege an Actionable Misstatement or Omission .............................................................................10

        1.  Plaintiffs Cannot Ignore Extensive Cautionary Language ................................................................11

        2.  Plaintiffs Do Not Allege Contemporaneous Facts That Contradict the Challenged Statements .....................12

CONCLUSION ....................................................................................................15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

i

UNDERWRITER DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re AGS, Inc. Sec. Litig.*,
No. 20-cv-1209, 2022 WL 17406100 (D. Nev. Dec. 2, 2022)..........................6, 7

*Alameda v. Nuveen Mun. High Income Opportunity Fund*,
No. 08-cv-4575, 2009 WL 1424529 (N.D. Cal. May 20, 2009)........................11

*Baker v. Seaworld Ent., Inc.*,
No. 14-cv-2129, 2016 WL 2993481 (S.D. Cal. Mar. 31, 2016) ......................8, 9

*In re Bare Escentuals, Inc. Sec. Litig.*,
745 F. Supp. 2d. 1052 (N.D. Cal. 2010) ......................................................8, 10

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013)...........................................................2, 3, 4, 5

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004).............................................................................6

*In re Cloudera, Inc.*,
No. 19-cv-3221, 2021 WL 2115303 (N.D. Cal. May 25, 2021)........................14

*In re CytRx Corp. Sec. Litig.*,
No. 14-cv-1956, 2015 WL 5031232 (C.D. Cal. July 13, 2015)..........................4

*In re DDi Corp. Sec. Litig.*,
No. 03-cv-7063, 2005 WL 3090882 (C.D. Cal. July 21, 2005).........................12

*De Vito v. Liquid Holdings Grp., Inc.*,
No. 15-cv-6969, 2018 WL 6891832 (D.N.J. Dec. 31, 2018).............................2

*Flynn v. Sientra*,
2016 WL 3360676 (C.D. Cal. June 9, 2016).......................................................4

*Goldstein v. General Motors LLC*,
445 F. Supp. 3d 1000 (S.D. Cal. 2020) ..............................................................7

*In re HealthSouth Corp. Sec. Litig.*,
No. 03-cv-1500, 2009 WL 10708552 (N.D. Ala. Feb. 26, 2009) ......................9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

ii

UNDERWRITER DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

*In re Honest Co. Sec. Litig.*,
   615 F. Supp. 3d 1149 (C.D. Cal. 2022)...............................................................13

*Jedrzejczyk v. Skillz Inc.*,
   No. 21-cv-3450, 2022 WL 2441563 (N.D. Cal. July 5, 2022)............................4

*Johnson v. Providence Health & Services*,
   No. 17-cv-1779, 2018 WL 1427421 (W.D. Wash. Mar. 22, 2018) ....................6

*Karimi v. Deutsche Bank Aktiengesellschaft*,
   607 F. Supp. 3d 381 (S.D.N.Y. 2022) ..............................................................11

*King v. Nat'l Gen. Ins. Co.*,
   186 F. Supp. 3d 1062 (N.D. Cal. 2016) .............................................................6

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
   722 F. Supp. 2d 1157 (C.D. Cal. 2010)..............................................................6

*McFarland v. Memorex Corp.*,
   493 F. Supp. 631 (N.D. Cal. 1980).....................................................................9

*Mehedi v. View, Inc.*,
   No. 21-cv-6374, 2023 WL 3592098 (N.D. Cal. May 22, 2023)..........................3

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) .......................................................................6, 7

*Neborsky v. Valley Forge Composite Techs., Inc.*,
   No. 13-cv-2307, 2014 WL 3767011 (S.D. Cal. July 29, 2014) ........................12

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015) .........................................................................................12

*Pinter v. Dahl*,
   486 U.S. 622 (1988) ..................................................................................7, 8, 9

*Pirani v. Slack Techs., Inc.*,
   445 F. Supp. 3d 367 (N.D. Cal. 2020), *aff'd*, 13 F.4th 940 (9th Cir. 2021), *vacated and remanded sub nom. Slack Techs., LLC v. Pirani*, 598 U.S. 759 (2023) .............................................................................5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

iii

UNDERWRITER DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

*Plumbers, Pipefitters & MES Local Union Pension Fund v. Fairfax Fin. Holdings Ltd.*,
886 F. Supp. 2d 328 (S.D.N.Y. 2012) ...................................................................... 3

*In re Qualcomm Inc. Sec. Litig.*,
No. 17-cv-0121, 2019 WL 1239301 (S.D. Cal. Mar. 18, 2019) ........................ 13

*In re RAIT Fin. Trust Sec. Litig.*,
No. 07-cv-3148, 2008 WL 5378164 (E.D. Pa. Dec. 22, 2008) ........................... 11

*Rivera v. Invitation Homes, Inc.*,
No. 18-cv-3158, 2019 WL 11863726 (N.D. Cal. June 19, 2019) ....................... 7

*Rubke v. Capitol Bancorp Ltd*,
551 F.3d 1156 (9th Cir. 2009) ............................................................................ 10

*Scott v. ZST Digital Networks, Inc.*,
896 F. Supp. 2d 877 (C.D. Cal. 2012) .................................................................. 2

*Sihler v. Fulfillment Lab, Inc.*,
No. 20-cv-1528, 2020 WL 7226436 (S.D. Cal. Dec. 8, 2020) ........................... 7

*Smallen v. The W. Union Co.*,
No. 17-cv-0474, 2019 WL 1382823 (D. Colo. Mar. 27, 2019),
*aff'd*, 950 F.3d 1297 (10th Cir. 2020) ................................................................. 12

*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*,
243 F. Supp. 3d 1109 (E.D. Cal. 2017) ................................................................ 3

*Thomas v. Magnachip Semiconductor Corp.*,
167 F. Supp. 3d 1029 (N.D. Cal. 2016) ......................................................... 2, 4, 5

*Veal v. LendingClub Corp.*,
423 F. Supp. 3d 785 (N.D. Cal. 2019) ................................................................ 14

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ............................................................................ 10

*Welgus v. Trinet Grp., Inc.*,
No. 15-cv-3625, 2017 WL 167708 (N.D. Cal. Jan. 17, 2017) ........................... 5

*Welgus v. TriNet Grp., Inc.*,
No. 15-cv-3625, 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) ......................... 7

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
ORANGE COUNTY

iv

UNDERWRITER DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

*Wenger v. Lumisys, Inc.*,
    2 F. Supp. 2d 1231 (N.D. Cal. 1998) .......................................................................... 10

*West Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
    495 F. Supp. 3d 622 (N.D. Ill. 2020), *aff'd*, 2022 WL 1449184 (7th Cir. May 9, 2022) ................................................................................................... 3

*Yates v. Mun. Mortg. & Equity, LLC*,
    744 F.3d 874 (4th Cir. 2014) ....................................................................................... 3

**STATUTES**

15 U.S.C. § 77b(a)(8) ......................................................................................................... 7

**RULES**

Fed. R. Civ. P. 9(b) .......................................................................................................... 10

**REGULATIONS**

17 C.F.R. § 229.512 ........................................................................................................... 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

v

UNDERWRITER DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

# GLOSSARY

| Term | Definition |
| --- | --- |
| 2019 Form 10-K | Silvergate Form 10-K for the fiscal year ended December 31, 2019 filed with the SEC on March 10, 2020 (Ex. A to Opening Brief, ECF No. 71-4) |
| 2020 Form 10-K | Silvergate Form 10-K for the fiscal year ended December 31, 2020 filed with the SEC on March 8, 2021 (Ex. C to Opening Brief, ECF No. 71-6) |
| 2021 Offerings or Offerings | The January 2021 Offering, March-May 2021 Offering, July 2021 Offering, and December 2021 Offering |
| Bucks County | Bucks County Employees Retirement Fund |
| Common Stock | Silvergate Class A Common Stock |
| Complaint or AC | Amended Consolidated Class Action Complaint in *In re Silvergate Capital Corporation Securities Litigation*, Case No. 3:22-cv-01936 (S.D. Cal.), ECF No. 43 |
| December 2021 Offering | Silvergate's offering of 3,806,895 shares of Common Stock conducted in December 2021 |
| December 2021 Offering Materials | Dec. 2021 ProSupp. and all documents incorporated therein by reference, including the 2020 Form 10-K |
| Dec. 2021 ProSupp. | Silvergate Prospectus Supplement filed with the SEC on December 8, 2021 (Ex. F to Opening Brief, ECF No. 71-9) |
| Exchange Act | Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* |
| Exchange Act Defendants | Silvergate and Alan J. Lane |
| FE | Former Employee |
| IPRS | Indiana Public Retirement System |
| January 2021 Offering | Silvergate's offering of 4,563,493 shares of Common Stock conducted in January 2021 |
| January 2021 Offering Materials | Jan. 2021 ProSupp. and all documents incorporated therein by reference, including the 2019 Form 10-K |
| Jan. 2021 ProSupp. | Silvergate Prospectus Supplement filed with the SEC on January 25, 2021 (Ex. B to Opening Brief, ECF No. 71-5 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

vi

UNDERWRITER DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

| Term | Definition |
|---|---|
| July 2021 Offering | Silvergate's offering of 8 million shares of Preferred Stock conducted in July 2021 |
| July 2021 Offering Materials | July 2021 ProSupp. and all documents incorporated therein by reference, including the 2020 Form 10-K |
| July 2021 ProSupp. | Silvergate Prospectus Supplement filed with the SEC on July 30, 2021 (Ex. E to Opening Brief, ECF No. 71-8) |
| Local 793 | International Union of Operating Engineers, Local No. 793, Members Pension Benefit Trust of Ontario |
| March-May 2021 Offering | Silvergate's "at-the-market" offering of 2.79 million shares of Common Stock conducted over a period of approximately 12 weeks from March to May of 2021 |
| March-May 2021 Offering Materials | Mar.-May 2021 ProSupp. and all documents incorporated therein by reference, including the 2020 Form 10-K |
| Mar.-May 2021 ProSupp. | Silvergate Prospectus Supplement filed with the SEC on March 9, 2021 (Ex. D to Opening Brief, ECF No. 71-7) |
| Offering Materials | January 2021, March-May 2021, July 2021, and December 2021 Offering Materials |
| Opening Brief or UW Br. | Memorandum of Points and Authorities In Support of Underwriter Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint (ECF No. 71-1) |
| Opposition or Opp. | Plaintiffs' Opposition to the Securities Act Defendants' Motions to Dismiss the Securities Act Claims (ECF No. 81) |
| Preferred Stock or Preferred | Silvergate Preferred Stock, Series A |
| Sales Agents | Goldman Sachs & Co. LLC, Keefe, Bruyette & Woods, Inc., Canaccord Genuity LLC, Compass Point Research & Trading, LLC, Craig-Hallum Capital Group LLC, J.P. Morgan Securities LLC, and Wedbush Securities Inc. |
| Securities Act | Securities Act of 1933, 15 U.S.C. § 77a *et seq.* |
| SEN | Silvergate Exchange Network |
| Silvergate or the Company | Silvergate Capital Corporation |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

vii

UNDERWRITER DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

| Term | Definition |
| --- | --- |
| Silvergate Brief or Silvergate Br. | Unredacted Memorandum of Points and Authorities In Support of Silvergate Defendants' Motion to Dismiss Consolidated Class Action Complaint (ECF No. 65) |
| Silvergate Defendants | Silvergate, Alan J. Lane, Antonio Martino, Karen F. Brassfield, Paul D. Colucci, Thomas C. Dircks, Aanchal Gupta, Michael Lempres, Scott A. Reed, and Colleen Sullivan |
| Silvergate Reply | Unredacted Reply Memorandum In further Support of Silvergate Defendants' Motion to Dismiss Consolidated Amended Class Action Complaint (ECF No. 89) |
| Underwriter Defendants | Goldman Sachs & Co. LLC, Keefe, Bruyette & Woods, Inc., Canaccord Genuity LLC, Compass Point Research & Trading, LLC, Craig-Hallum Capital Group LLC, J.P. Morgan Securities LLC, Wedbush Securities Inc., Citigroup Global Markets Inc., and UBS Securities LLC |
| UW RJN Reply | Underwriter Defendants' Reply Memorandum In Support of The Request For Consideration Under Incorporation By Reference And Judicial Notice, filed concurrently herewith |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

viii

UNDERWRITER DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

# PRELIMINARY STATEMENT

Plaintiffs' Opposition does nothing to address the fatal flaws Defendants identified that require dismissal of their Securities Act claims. Plaintiffs have not shown that: (1) they purchased securities issued in *any* of the four offerings at issue and, therefore, that they have standing to bring Securities Act claims or (2) the five statements they challenge in their Securities Act claims were false or misleading.

***First***, as to statutory standing, the Securities Act permits claims only by investors who can show that they purchased securities in the offerings at issue. Because Silvergate issued shares via more than one registration statement, Section 11 requires Plaintiffs to plead that their shares were issued pursuant to the registration statements for each relevant offering. Section 12 is even more stringent, requiring Plaintiffs to plead that they purchased directly from, or were successfully solicited by, the Defendants. Plaintiffs' opposition fails to explain how the AC satisfies these threshold requirements. Instead, Plaintiffs misconstrue the law to suggest that they can rely on entirely conclusory allegations devoid of even the most basic details like from whom they purchased any of their shares. Their fallback plea that the Court defer these questions to a later stage is wrong as a matter of law and confirms that the AC does not plead Securities Act standing. *See* <u>Section I</u>.

***Second***, Plaintiffs likewise do not plead that any of the five statements they challenge under the Securities Act was false or misleading. Instead, they argue that because certain Silvergate customers were accused of misconduct, Silvergate must not have had any customer diligence procedures whatsoever during 2021. The AC, however, does not plead any specific facts in support of this theory, and Plaintiffs even ask the Court to ignore Silvergate's other disclosures warning precisely of the very risks that ultimately materialized. *See* <u>Section II</u>.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
ORANGE COUNTY

1

UNDERWRITER DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

## ARGUMENT

### I.   Plaintiffs Fail To Satisfy Threshold Standing Requirements

#### A.   Plaintiffs Lack Statutory Standing To Bring Section 11 Claims

Rather than plead factual allegations to satisfy the requirement that the shares they purchased were issued under the allegedly false or misleading registration statement, as opposed to some other registration statement, Plaintiffs argue that bare assertions of traceability suffice. That is not the law. *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013). Where, as here, a company "has issued shares under more than one registration statement," Plaintiffs are required to prove that (i) they "purchased their shares directly in the secondary offering itself," or (ii) their shares "can be traced back to the secondary offering." *Id.* at 1106-07. Although sometimes difficult to do, and particularly so here where most of Silvergate's stock was issued before all four of the 2021 Offerings, this tracing requirement is the "condition Congress has imposed for granting access to" Section 11 claims. *Id.* at 1107. Yet Plaintiffs do not even attempt to trace their shares back to the relevant offerings, and instead rest their claims on bare assertions that three of six Plaintiffs bought "pursuant to" or "at the public offering price in" the January and December 2021 Offerings. Opp. at 12; AC ¶¶ 416, 418-19, 421, 436, 446-47. This is insufficient as a matter of law.

**January and December 2021 Offerings**: Courts in the Ninth Circuit and across the country have repeatedly held that these bare recitations of the statutory requirements are insufficient. *See Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1055 (N.D. Cal. 2016); *Scott v. ZST Digital Networks, Inc.*, 896 F. Supp. 2d 877 (C.D. Cal. 2012); *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *17 (D.N.J. Dec. 31, 2018). Indeed, "the Ninth Circuit stated that the conclusory allegation that plaintiffs purchased . . . directly traceable to the [offering] does not allow us to draw a reasonable inference about anything because it is devoid

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
ORANGE COUNTY

2

of factual content." *Mehedi v. View, Inc.*, 2023 WL 3592098, at *6 (N.D. Cal. May 22, 2023) (citing *Century Aluminum*, 729 F.3d at 1108) (internal quotations omitted).

The AC's silence is particularly telling because Plaintiffs have sued all of the underwriters of these two offerings. In other words, to have purchased "in" the offerings, Plaintiffs would have had to purchase *from the Underwriter Defendants*, yet the AC does not identify from whom *any* Plaintiff purchased even a single share of Silvergate stock. "Plaintiffs are in the best position to know whether [they] purchased stock directly from an underwriter[, so they] could have included more information in the complaint," and their failure to do so precludes them as a matter of law from establishing Section 11 standing. *West Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 670-71 (N.D. Ill. 2020), *aff'd*, 2022 WL 1449184 (7th Cir. May 9, 2022).[1]

Instead, the AC carefully states only that three Plaintiffs purchased shares "pursuant to" or "at the public offering price in" those offerings. *See* AC ¶¶ 418-19, 446-47. The Court should reject this "coy choice of words," which obscures the nature of Plaintiffs' purchases. *See Conagra*, 495 F. Supp. 3d at 670 (quoting *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 900 (4th Cir. 2014)). As an initial matter, Plaintiffs allege to have purchased their shares several days before the relevant Offering Materials were published, which precludes their claims as a matter of law. *See Plumbers, Pipefitters & MES Local Union Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 339 (S.D.N.Y. 2012) ("[B]ecause Plaintiff purchased shares before the challenged offerings, it cannot possibly 'trace' its stock purchases to an offering or registration statement.").[2] But, in any event, a long line

_____

[1] Plaintiffs' own cases (Opp. at 13) recognize that the "failure to argue or allege that they purchased . . . directly from defendants" undermines the claim that plaintiffs purchased directly in the relevant offering. *Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, 243 F. Supp. 3d 1109, 1113 (E.D. Cal. 2017).

[2] Plaintiffs do not deny that their alleged purchase dates for the January and December 2021 Offerings were each ***prior to*** the issuance of the at-issue disclosures and prior to the time the Offering Materials indicated shares would be delivered.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

3

UNDERWRITER DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

of courts has rejected as insufficient to plead statutory standing the allegation that plaintiffs "purchased their shares on the day of the . . . Offering . . . and for the same offering price." *Thomas*, 167 F. Supp. 3d at 1055 (collecting cases). That is "due to a significant possibility that the shares purchased originated from the prior offering but were being traded at the secondary offering price." *Jedrzejczyk v. Skillz Inc.*, 2022 WL 2441563, at *7 (N.D. Cal. July 5, 2022). Indeed, because "brokerage houses do not identify specific shares with particular accounts but instead treat the account as having an undivided interest in the house's position," the "obvious alternative explanation" is that brokers gave all customers the same price that day because it is impossible to distinguish between newly issued and preexisting shares. *Century Aluminum*, 729 F.3d at 1107 (citation omitted).[3] That is particularly true here where Plaintiffs (1) tellingly do not allege that they bought shares from the Underwriter Defendants and (2) offer no facts about whether the unnamed brokers from whom they did purchase had new or existing shares to sell.

UW Br. at 10-11 n.6. Having staked their claim on the assertion that they purchased "in" the relevant offerings, Plaintiffs' argument (Opp. at 14 n.6) that the Court should now ignore judicially noticeable information about offering dates is without merit. *See* UW RJN Reply.

[3] Plaintiffs' attempt (Opp. at 12-13) to distinguish Defendants' cases based on whether the plaintiffs in those cases alleged that they purchased in the offering misses the point. *Century Aluminum* makes clear that a heightened level of factual specificity is required whenever—as here—a company "has issued shares under more than one registration statement," and the fact that a plaintiff merely declares to have purchased in the offering at issue does not suffice. *Century Aluminum*, 729 F.3d at 1106; *see also id*. at 1109 (finding that, "[a]bsent an allegation that Citigroup held *only* shares issued in the secondary offering," possibility existed that "Citigroup . . . filled the order with previously issued shares it was holding") (emphasis in original). Plaintiffs' authorities either are inconsistent with *Century Aluminum*, contain no reasoning, or conflict with one another. For instance, in *In re CytRx Corp. Sec. Litig.*, the court found that allegations that plaintiffs "purchased shares during the offering period at the secondary offering price" were insufficient to plead that plaintiffs "purchased their shares directly from the Secondary Offering," yet still found Section 11 standing present. 2015 WL 5031232, at *15 (C.D. Cal. July 13, 2015). In contrast, in *Flynn v. Sientra*, the court concluded that nearly identical allegations *were* "sufficient to demonstrate that Quad 'purchased [its] shares directly in the secondary offering itself.'" 2016 WL 3360676, at *18 (C.D. Cal. June 9, 2016). Neither decision contains any reasoning for these inconsistent results, much less how they follow *Century Aluminum*, and this Court should not follow them.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

4

UNDERWRITER DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

Plaintiffs next try to distinguish (Opp. at 13-14) the Supreme Court's recent ruling on Section 11 standing, but there is no debate that the plaintiff there (like here) alleged that he purchased pursuant to the at-issue registration statement on the day the newly issued shares began trading, and such allegations were insufficient. *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 372 (N.D. Cal. 2020), *aff'd*, 13 F.4th 940 (9th Cir. 2021), *vacated and remanded sub nom. Slack Techs., LLC v. Pirani*, 598 U.S. 759 (2023).  In reversing the Ninth Circuit, the Supreme Court re-affirmed that Section 11 "requires a plaintiff to plead and prove that he purchased shares traceable to the allegedly defective registration statement."  *Slack*, 598 U.S. at 770.

Nor is there any merit to Plaintiffs' claim (Opp. at 14) that this is a fact issue not suitable for resolution on the pleadings.  As the Ninth Circuit did in *Century Aluminum*, courts evaluating Section 11 standing routinely consider the magnitude of pre-existing shares and how the alleged purchases compare to observable market prices on relevant dates.  *See* UW Br. at 10 & n.7 (collecting cases); *see also Welgus v. Trinet Grp., Inc.*, 2017 WL 167708, at *15 (N.D. Cal. Jan. 17, 2017) (dismissing after considering relative magnitude of new and previously existing shares); *Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d at 339 (dismissing after considering purchase price and offering dates); *Thomas*, 167 F. Supp. 3d at 1055 (same).

**<u>March-May 2021 and July 2021 Offerings</u>**:  Plaintiffs do not even attempt to allege that they bought in the March-May 2021 and July 2021 Offerings.  *See* UW Br. at 12-13.  They instead ask the Court to sidestep their pleading obligation by accepting that their standing for these offerings can be established by virtue of their purported standing for the January and December 2021 Offerings.  Opp. at 15.

This argument conflates Article III standing (not at issue here) with statutory standing.  The Ninth Circuit has been clear that the only persons with *statutory standing* under Section 11 are those who purchased securities "directly in" the offering at issue, or who can trace their later-purchased stock back to that offering.  *See Century Aluminum*, 729 F.3d at 1106.  Plaintiffs argue (Opp. at 14-16) that the

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
ORANGE COUNTY

5

UNDERWRITER DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

Ninth Circuit's decision in *Melendres v. Arpaio*—a Fourth Amendment case addressing *Article III standing*—somehow obviated the statutory standing requirements for a Securities Act claim. 784 F.3d 1254, 1258, 1263 (9th Cir. 2015) (holding that plaintiff stopped by police also had Article III standing to challenge other types of police stops). Plaintiffs are incorrect.

*Melendres* did not expand statutory standing for Section 11 claims; indeed, the decision nowhere mentioned it, and courts have overwhelmingly held that *Melendres* is limited to Article III standing. *See In re AGS, Inc. Sec. Litig.*, 2022 WL 17406100, at *3 (D. Nev. Dec. 2, 2022) (dismissing Section 11 claims because "statutory standing" is the "type of standing at issue" and *Melendres* did not address statutory standing); *see also King v. Nat'l Gen. Ins. Co.*, 186 F. Supp. 3d 1062, 1070 (N.D. Cal. 2016) (holding that cases "address[ing] whether the plaintiffs met the statutory standing requirements specific to class action claims brought under Section 11" were "inapposite" to Article III standing).[4] The claims in this case are a creature of statute. Therefore, "[i]f a plaintiff has suffered sufficient injury to satisfy the jurisdictional requirement of Article III but Congress has not granted statutory standing, that plaintiff cannot state a claim upon which relief can be granted." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004). For that reason, even if a plaintiff has Article III standing, "[f]ederal courts have consistently dismissed 1933 [Securities] Act claims related to offerings in which the plaintiffs did not purchase for lack of statutory standing." *See Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1163 (C.D. Cal. 2010).[5]

---

[4] The primary cases besides *Melendres* that Plaintiffs cite to support their position (Opp. at 14-17) also concern only Article III standing. Thus, like in *AGS*, Plaintiffs here "provide[] case law concerning Constitutional standing" that is irrelevant to statutory standing. 2022 WL 17406100 at *3; *see also Johnson v. Providence Health & Services*, 2018 WL 1427421, at *3 (W.D. Wash. Mar. 22, 2018).

[5] This is true even when offerings are issued pursuant to the same shelf registration statement. *See AGS*, 2022 WL 17406100 at *3 (dismissing Section 11 claims for lack of statutory standing where plaintiff had standing for a separate offering issued under the same shelf registration statement). Plaintiffs' claims to the contrary (Opp.

In a last-ditch effort to avoid dismissal, Plaintiffs argue that, under *Melendres,* the question of their standing should be "defer[ed] to the class certification stage." Opp. at 16.  But again such deferrals are appropriate only when considering Article III, not statutory standing.  *See AGS*, 2022 WL 17406100 at *3, n.3 ("[P]laintiff suggests standing is . . . a class certification issue" not to be decided on a motion to dismiss, but "[t]he merits of this contention are irrelevant here as Constitutional standing is not at issue.").  *Melendres* was a class decertification decision, and "multiple opinions issuing . . . in the Ninth Circuit" have found that "[*Melendres*] says nothing about a district court's discretion to make determinations of standing in a putative class action at the pleading stage." *Rivera v. Invitation Homes, Inc.*, 2019 WL 11863726, at *3-4 (N.D. Cal. June 19, 2019); *Goldstein v. General Motors LLC*, 445 F. Supp. 3d 1000, 1020-21 (S.D. Cal. 2020) ("Plaintiffs must show they have standing for each claim they raise [and] *Melendres* does not . . . stand for the proposition that this Court must delay its consideration of standing."); *Sihler v. Fulfillment Lab, Inc.*, 2020 WL 7226436, at *16 (S.D. Cal. Dec. 8, 2020) (similar).

## B.   Plaintiffs Lack Statutory Standing To Bring Section 12 Claims

Standing under Section 12 is even more limited than under Section 11, and Plaintiffs come nowhere close to satisfying the applicable pleading standard.  Under Section 12, Plaintiffs have standing only if they allege that an Underwriter Defendant (1) directly passed title in the securities or (2) successfully solicited the Plaintiffs' purchase.  *See Pinter v. Dahl*, 486 U.S. 622, 643 & n.21, 647 (1988).

---

at 14-15 & n.7) are without merit.  Plaintiffs first cite to 15 U.S.C. § 77b(a)(8), which provides a general definition of the phrase "registration statement" and does not address this issue.  Plaintiffs next cite 17 C.F.R. § 229.512, which provides that "each such post-effective amendment shall be deemed to be *a new registration statement*"—language that directly contradicts Plaintiffs' position that multiple offerings should be analyzed as being pursuant to a single registration statement. Plaintiffs' citation (Opp. at 16 n.8) to *Welgus v. TriNet Grp., Inc.* is likewise unavailing.  2017 WL 6466264 (N.D. Cal. Dec. 18, 2017).  In *Welgus*, the court conflated the issues of Article III and statutory standing, discussing them interchangeably, and referenced its own conflicting decisions on this issue "only to clarify" that Plaintiff's claims were dismissed on multiple other grounds rather than standing. *Id.* at *23-24.

As to the first prong, Plaintiffs do not allege that any Underwriter Defendant directly sold Silvergate shares to Plaintiffs. *See* UW Br. at 14-15. Plaintiffs' only response is that because three of the four at-issue offerings were "firm commitment" offerings, the Underwriter Defendants qualify as statutory sellers. Opp. at 30-32. Not so. "[E]ven in a firm commitment underwriting, it is possible that the underwriters sold to a broker who may have actually passed the title to [p]laintiffs." *Baker v. Seaworld Ent., Inc.*, 2016 WL 2993481, at *18 (S.D. Cal. Mar. 31, 2016) (dismissing claims against underwriters due to lack of allegations of direct sale); *see Pinter*, 486 U.S. at 643 n.21 ("a buyer cannot recover against his seller's seller"). Indeed, the Offering Materials specifically contemplate that the Underwriter Defendants may sell shares "to securities dealers" or to "certain other brokers" who then may pass title to the public. *See* Ex. B (Jan. 2021 ProSupp.) at 168; Ex. E (July 2021 ProSupp) at 437; Ex. F (Dec. 2021 ProSupp.) at 497. Plaintiffs offer even less for the March-May 2021 Offering—which was an at-the-market (and not a firm commitment) offering. *See* UW Br. at 12-13. Here, Plaintiffs argue only that they have alleged that the "Underwriter Defendants also purchased and passed title to Class members." Opp. at 31. But this "mere assertion[] that defendants are . . . sellers" under Section 12 "is a legal conclusion and therefore insufficient to withstand a motion to dismiss." *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d. 1052, 1073 (N.D. Cal. 2010). In short, Plaintiffs plead no *facts* to establish that they purchased securities directly from the Underwriter Defendants and, therefore, fail to meet the first prong of *Pinter*.[6]

As to the second prong of *Pinter*, Plaintiffs fail to demonstrate that any Underwriter Defendant "successfully solicited" the purchase of Silvergate shares by *any* named Plaintiff in *any* Offering. Plaintiffs merely allege in conclusory terms

---

[6] Plaintiffs describe this argument as a demand that the AC "should have been more specific about which Underwriter sold securities to which named plaintiff." Opp. at 31-32. Not so. The problem with the AC is that it does not contain factual allegations showing *any* direct sale from *any* Underwriter Defendant to *any* Plaintiff.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

8

UNDERWRITER DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

that each Underwriter "promoted, solicited, and/or sold millions of Silvergate securities to Plaintiffs and members of the Class" and were "motivated by their own financial interests." Opp. at 31-32; AC ¶ 444. These fact-free allegations about the services that any underwriter might perform in connection with any offering are not enough. *See Pinter*, 486 U.S. at 651 (those who merely provide "professional services" in connection with the transaction are not "sellers"); *Baker*, 2016 WL 2993481 at *18 ("[B]arebones allegations that [defendants] are . . . solicitor[s] . . . are insufficient to properly allege solicitation."); *see also* UW Br. at 15.

### C. Plaintiffs Have Not Alleged That the Sales Agents Were Underwriters of the March-May 2021 "At-The-Market" Offering

Plaintiffs' Section 11 claims with respect to the March-May 2021 Offering fail for the additional reason that the AC offers no factual allegations suggesting that any of the Defendants were "underwriters" of this offering. *See* UW Br. at 15-16; *see also McFarland v. Memorex Corp.*, 493 F. Supp. 631, 644 (N.D. Cal. 1980) ("It is crucial to the definition of 'underwriter' that any underwriter must participate in the distribution of a security."). Plaintiffs' argument that the March-May 2021 Offering Materials state that the Underwriter Defendants "may" sell shares on Silvergate's behalf and "may" be deemed an underwriter (Opp. at 17 n. 10) highlights the problem—a complete absence of any allegations indicating that any Underwriter Defendant did, in fact, make such sales. *See In re HealthSouth Corp. Sec. Litig.*, 2009 WL 10708552, at *5 (N.D. Ala. Feb. 26, 2009) (collecting cases and concluding that "these cases demonstrate that participation must be linked to the distribution or transfer of securities to qualify the entity as an underwriter.").[7]

---

[7] Indeed, the March-May 2021 Offering Materials specifically contemplate that no underwriter was "required to sell any" shares and each could "decline[]" to sell. *See* Ex. D (Mar.-May 2021 ProSupp.) at 344.

9

UNDERWRITER DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:22-CV-01936-JES-MSB

## II. Plaintiffs Do Not Allege That the Offering Materials Contained a Single False or Misleading Statement or Omission

### A. Plaintiffs' Securities Act Claims Sound in Fraud and Must Be Pleaded With Factual Particularity

Because their Securities Act claims "sound in fraud," Plaintiffs must comply with "the particularity requirements of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003). Securities Act claims "sound in fraud" when plaintiffs rely on the "same factual allegations" as those used to "allege fraudulent conduct under [S]ection 10(b) of the Exchange Act." *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009). When assessing these kinds of overlapping allegations, courts will apply the standard uniformly and dismiss all claims against all defendants—including underwriters—if allegations are lacking in specificity. *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231 (N.D. Cal. 1998).

Here, there is an "obvious overlap" between Plaintiffs' Securities Act and Exchange Act claims. *See Bare Escentuals*, 745 F. Supp. 2d at 1068. For example, (i) every statement challenged under the Securities Act is also challenged in the Exchange Act claim, *compare* AC ¶ 336 *with id.* ¶¶ 52, 55, 148, 283, (ii) both claims rely on anonymous allegations from the same six former Silvergate employees, *compare id.* ¶¶ 337-38, 340, 346, 350, 390, 394 *with id.* ¶¶ 50, 51, 58, 65, 298, and (iii) both claims pertain to the same general topics.[8] This overlap subjects Plaintiffs' Securities Act claims to Rule 9(b), but the allegations are so lacking in factual detail as to the five statements at issue that they fail under any standard.

### B. Plaintiffs Do Not Allege an Actionable Misstatement or Omission

Plaintiffs challenge just five statements under the Securities Act, asserting that each was false or misleading for the same reason—*i.e.*, that Silvergate had *no compliance systems whatsoever*. UW Br. at 6. Plaintiffs appear unable to defend

---

[8] *See, e.g.,* AC ¶¶ 50, 336(a) (customer diligence); *id.* ¶¶ 3, 336(b) (regulatory matters); *id.* ¶¶ 3, 336(c) (customer onboarding); *id.* ¶¶ 3, 336(d) (monitoring).

this theory, so they accuse Defendants of "recast[ing]" their allegations. Opp. at 20. Plaintiffs cannot rewrite their complaint. The plain terms of the AC clearly show that Plaintiffs' theory rests on allegations about the absence of any compliance systems at Silvergate. *E.g.*, AC ¶ 337 (asserting that Silvergate performed "no due diligence before onboarding customers to the SEN" and "no ongoing monitoring of customer activities on the SEN"). The problem for Plaintiffs is that they lack any contemporaneous factual support, and so the AC must be dismissed.

### 1. Plaintiffs Cannot Ignore Extensive Cautionary Language

Plaintiffs do not deny that the Offering Materials contained extensive disclosures warning of risks to Silvergate posed by the digital currency industry, including that Silvergate's customers might engage in illicit activity and that Silvergate could not "ensure that we will be able to detect any such illegal activity in all instances." Ex. A (2019 Form 10-K) at 27; UW Br. at 4-5, 20. Against the backdrop of these disclosures, Plaintiffs cannot allege that the existence of customer misconduct means that Silvergate had no compliance systems whatsoever. To the contrary, this is precisely the risk that Silvergate warned could materialize, and courts in the Ninth Circuit routinely dismiss securities claims for lack of falsity where the offering materials warned of risks that ultimately materialized. UW Br. at 20-21. Plaintiffs ask the Court to ignore these disclosures and cite cases where the allegation was that a company knew its processes were not as effective as disclosed. Opp. at 24-25.[9] But Plaintiffs did not elect to pursue a case about the effectiveness of Silvergate's procedures and must defend their claim that Silvergate employed no due diligence and no customer monitoring whatsoever. AC ¶ 337.

___

[9] *See Karimi v. Deutsche Bank Aktiengesellschaft*, 607 F. Supp. 3d 381, 396 (S.D.N.Y. 2022) (alleging that defendants knew their "specific processes . . . were being systematically undermined" at the time the statements were made); *In re RAIT Fin. Trust Sec. Litig.*, 2008 WL 5378164, at *6 (E.D. Pa. Dec. 22, 2008) (alleging a "complete deficiency of Defendant RAIT's credit underwriting and monitoring" such that it was "incapable of detecting risk"); *Alameda v. Nuveen Mun. High Income Opportunity Fund*, 2009 WL 1424529, at *7 (N.D. Cal. May 20, 2009). (alleging that when defendants issued notes to build a telecom system, they "already knew that the Telecom System was not economically feasible").

Case 3:22-cv-01936-JES-MSB   Document 92   Filed 10/23/23   PageID.2690   Page 21 of 24

### 2.   Plaintiffs Do Not Allege Contemporaneous Facts That Contradict the Challenged Statements

Neither the Opposition nor the AC deliver on the bold claim that Silvergate had *no compliance systems whatsoever* during 2021 when the Offering Materials were published. *See* AC ¶ 337. This failure requires dismissal for several reasons.

***First***, Plaintiffs appear to acknowledge that they cannot support their original theory—*i.e.*, that statements about customer diligence were false because Silvergate did no diligence—and instead pivot to the argument that even if literally true, the five Securities Act statements were misleading by omission. Opp. at 20. The information Plaintiffs contend was omitted was that Silvergate's diligence was allegedly not "meaningful" or that "some" due diligence was (in Plaintiffs' view and with the benefit of hindsight) not enough. *Id.* at 20-21. But whether Silvergate was doing *enough* diligence is expressly framed in the Offering Materials as a matter of opinion,[10] and Plaintiffs do not even attempt to allege that these opinion statements are actionable under *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015); *see* UW Br. at 21 n.11.[11]

---

[10] *See, e.g.*, Ex. A (2019 Form 10-K) at 27 ("While ***we believe*** that our risk management and compliance framework, which includes thorough reviews we conduct as part of our due diligence process . . . is reasonably designed to detect any such illicit activities conducted by our potential or existing customers we cannot ensure that we will be able to detect any such illegal activity in all instances.") (emphasis added); Ex. C (2020 Form 10-K) at 221 (same); Ex. A (2019 Form 10-K) at 42 ("***We believe*** these enhanced procedures adequately screen and monitor our customers associated with the digital currency initiative for their compliance with anti-money laundering laws; however, given the rapid developments in digital currency markets and technologies, there can be no assurance that these enhanced procedures will be adequate to detect or prevent money laundering activity.") (emphasis added); Ex. C (2020 Form 10-K) at 233 (same).

[11] *See also Smallen v. The W. Union Co.*, 2019 WL 1382823, at *40 (D. Colo. Mar. 27, 2019) (PSLRA complaint against bank dismissed, where bank described its AML compliance policies as "robust," "effective," "strong," and a competitive advantage given that "nobody else has the global compliance capabilities that we have"), *aff'd*, 950 F.3d 1297 (10th Cir. 2020). Plaintiffs' citations to cases where Defendants quibbled with definitions at the motion to dismiss stage are inapposite. *See Neborsky v. Valley Forge Composite Techs., Inc.*, 2014 WL 3767011, at *5 (S.D. Cal. July 29, 2014) (refusing to construe the term "momentum wheel" at the motion to dismiss stage); *In re DDi Corp. Sec. Litig.*, 2005 WL 3090882, at *12 n.14 (C.D.

***Second***, Plaintiffs misconstrue the argument that certain statements are inactionable puffery. Opp. at 22-23. In shying away from the claim that the at-issue statements were false because Silvergate had no compliance systems whatsoever, Plaintiffs now focus on whether those systems were, in fact, "extensive," "thorough" or "enhanced," or if the Company's commitment was "deep-rooted." *Id*. at 20. But these are precisely the sort of terms that cannot serve as the basis of a Securities Act claim because they are not subject to objective verification and would not be relied upon by reasonable investors. UW Br. at 22 n.12.[12] This long-standing law is presumably why Plaintiffs elected their original strategy of alleging that Silvergate had no compliance systems whatsoever—although, as described below, the AC does not substantiate that theory either.

***Third***, Plaintiffs agree that pleading "fraud by hindsight" is impermissible, but argue that their claim is based on alleged misstatements of existing fact. Opp. at 25-26. In reality, however, Plaintiffs offer the conclusion that Silvergate did not have any compliance systems during 2021, which they premise almost entirely on the fact that issues emerged with certain Silvergate customers long after the 2021 Offerings. *See, e.g.*, Opp. at 2 ("Had Silvergate done even a fraction of the represented onboarding, due diligence, and ongoing monitoring that it promised investors in the Offering Documents, the Bank would have readily discovered" various issues). This is precisely the kind of fraud-by-hindsight pleading not permitted in this Circuit. *See* UW Br. at 25; Silvergate Br. at 10-17.

---

Cal. July 21, 2005) (refusing to construe "customer" and "customer base" at the motion to dismiss stage). Here, Plaintiffs' theory is that Silvergate performed no due diligence whatsoever, expressly eschewing debates over how terms like "thorough" and "extensive" should be interpreted.

[12] Plaintiffs' cases (Opp. at 22) are inapposite. In *In re Honest Co. Sec. Litig.*, the court merely recognized that where a defendant used an "invented term, 'costovation,'" the lack of objective definition did not automatically render it inactionable puffery. 615 F. Supp. 3d 1149, 1154 (C.D. Cal. 2022). *In re Qualcomm Inc. Sec. Litig.* likewise stands for the unremarkable proposition that what constitutes puffery depends on the context. 2019 WL 1239301, at *7 (S.D. Cal. Mar. 18, 2019).

***Fourth***, the FE accounts do not establish that Silvergate had *absolutely no* compliance systems at the time of the Offerings.  *See* UW Br. at 22-24.  The parties appear to agree that Plaintiffs can demonstrate falsity only by alleging "contemporaneous facts" showing "why the statement was false or misleading at the time it was made."  *See Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 809 (N.D. Cal. 2019); *In re Cloudera, Inc.*, 2021 WL 2115303, at *11 (N.D. Cal. May 25, 2021) (holding that without "contemporaneous facts" showing a "contradiction between the alleged materially misleading statements and reality," the AC must be dismissed).  Plaintiffs concede that four of six FEs were not employed at Silvergate at the time of the 2021 Offerings, but ask the Court to make a "reasonable inference" that the FEs somehow knew that there were *no compliance systems* during 2021.  Opp. at 27.  This inference is not warranted, however, because the FEs do not establish this was true either before or after the 2021 Offerings.  Rather, as Plaintiffs admit, the FEs at most observed "deficient conditions."  Opp. at 27.  However, the claim that a process is "deficient" undermines the claim that there was no process at all and, in any event, Plaintiffs offer no basis to conclude that the FEs would be well-placed enough to know that absolutely no one else at Silvergate was conducting any compliance procedures.  UW Br. at 23-24; Silvergate Reply Br. at 2-6.[13]  The FE accounts—even if credited—do not support an inference that Silvergate had *no* compliance systems at the time of each of the Offerings.

---

[13] For example, FE 4—who worked at Silvergate "from February 2011 to July 2021"—alleged that Silvergate "would not investigate" when it "received reports [] of unauthorized transactions," yet the account lacks any details about any actual such report or transaction, or whether Silvergate received and failed to investigate any such report during her final months at Silvergate.  AC ¶ 394.  The Opposition attempts to resolve the lack of specificity by claiming that FE 4's account referred to a "continuous and ongoing failure on Silvergate's part that existed throughout her tenure."  Opp. at 28.  For starters, this claim appears nowhere in the AC, but even if it did, it still would not explain what Silvergate's processes were in 2021 and how they differed from what was disclosed in the 2021 Offering Materials.  *See* UW Br. at 22-24.

## <u>CONCLUSION</u>

For the foregoing reasons, all claims against the Underwriter Defendants should be dismissed.

Dated:  October 23, 2023

**LATHAM & WATKINS LLP**

/s/ Michele D. Johnson
Michele D. Johnson
michele.johnson@lw.com

Attorneys for Defendants Goldman Sachs & Co. LLC, Keefe, Bruyette & Woods, Inc., Canaccord Genuity LLC, Compass Point Research & Trading, LLC, Craig-Hallum Capital Group LLC, J.P. Morgan Securities LLC, Wedbush Securities Inc., Citigroup Global Markets Inc., and UBS Securities LLC