# EXHIBIT A

# EXHIBIT A

No *Shepard's* Signal™
As of: March 26, 2024 4:33 AM Z

## *Sec. Litig. v. Sorrento Therapeutics, Inc. (In re Sorrento Therapeutics, Inc.)*

United States Court of Appeals for the Ninth Circuit

February 14, 2024, Argued and Submitted; March 25, 2024, Filed

No. 22-55641

### Reporter

2024 U.S. App. LEXIS 6979 *

In re: SORRENTO THERAPEUTICS, INC. SECURITIES LITIGATION, ANDREW R. ZENOFF, Lead Plaintiff, individually and on behalf of all others similarly situated, Plaintiff-Appellant, v. SORRENTO THERAPEUTICS, INC.; HENRY JI; MARK R. BRUNSWICK, Defendants-Appellees.

**Prior History: [*1]** Appeal from the United States District Court for the Southern District of California. D.C. Nos. 3:20-cv-00966-AJB-DEB, 3:20-cv-01066-AJB-DEB, 3:21-cv-01331-AJB-DEB. Anthony J. Battaglia, District Judge, Presiding.

## Core Terms

scienter, cure, antibody, stock, Defendants', district court, misleading, falsity, strong inference, articles, announcement, common stock, particularity, allegations, promise, survive, testing, sales, press release, give rise, manipulate, infection, requisite, offering, omission, Finance, trading

**Summary:**

**SUMMARY**[**]

**Securities Fraud**

The panel affirmed the district court's dismissal, for failure to state a claim, of an action alleging violations of the Securities Exchange Act and the Securities and Exchange Commission's Rule 10b-5 when Sorrento Therapeutics, Inc., its chief executive officer, and its vice president announced that Sorrento might have discovered a "cure" for COVID-19.

The panel held that, in context, defendants' representations in a press release, a *Fox News* article, and a BioSpace.com article were not materially false or misleading.

The panel also held that the allegations in plaintiff's class-action complaint did not support the requisite strong inference of scienter in defendants' intent to improperly manipulate the price of Sorrento's shares.

**Counsel:** Steven F. Hubachek (argued), Trig R. Smith, and Nicole Q. Gilliland, Robbins Geller Rudman & Dowd LLP, San Diego, California; Lauren E. Paglini, Robbins Geller Rudman & Dowd LLP, San Francisco, California; for Plaintiff-Appellant.

Edward Han (argued), Sean D. **[*2]** Unger, and Austin M. Prouty, Paul Hastings LLP, Palo Alto, California; Timothy D. Reynolds, Paul Hastings LLP, Los Angeles, California; for Defendants-Appellees.

**Judges:** Before: Richard C. Tallman and Consuelo M. Callahan, Circuit Judges, and Robert S. Lasnik,[*] District Judge. Opinion by Judge Callahan.

**Opinion by:** Consuelo M. Callahan

## Opinion

CALLAHAN, Circuit Judge:

When on May 15, 2020, Sorrento Therapeutics, Inc. ("Sorrento") announced that it might have discovered a "cure" for COVID-19, the price of its stock rose precipitously but then declined a week later following further explanations of Sorrento's discovery. Andrew R. Zenoff ("Zenoff"), individually, and on behalf of other similarly situated individuals who purchased Sorrento common stock between May 15 and May 21, 2020,

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

[*] The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

commenced this action alleging violations of the Exchange Act and the Securities and Exchange Commission's Rule 10b-5 by Sorrento, its Chief Executive Officer (Henry Ji), and its Vice President (Mark Brunswick) (referred to collectively as the "Defendants"). The district court granted Defendants' motion to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)* finding that Zenoff had failed to make plausible showings of falsity or scienter. We affirm because, in context, Defendants' **[*3]** representations were not false, and Zenoff's pleadings do not support the requisite strong inference of scienter.

**I**

Sorrento is a clinical-stage biopharmaceutical company based in San Diego, California, that researches and develops treatments for cancer, pain, and COVID-19. On May 15, 2020, at the height of the COVID-19 pandemic, Sorrento announced a promising development of a COVID-19 antibody, STI-1499. This litigation arises from three particular documents released that day: (1) Sorrento's press release entitled "STI-1499, A Potent Anti-SARS-COV-2 Antibody Demonstrates Ability to Completely Inhibit In Vitro Virus Infection In Preclinical Studies" (the "May 15 Press Release"); (2) a *Fox News* article entitled "California biopharmaceutical company claims coronavirus antibody breakthrough" (the "*Fox News* article"); and (3) a BioSpace.com article entitled "Sorrento IDS Antibody Against COVID-19 That Appears 100% Effective" (the "May 15 *BioSpace* article").

Within a week, several articles were published questioning the importance of Sorrento's development. Among these were (1) a May 20 *Yahoo!Finance* interview entitled "Sorrento Therapeutics CEO [Henry Ji] on focusing on 'the real deal' antibody **[*4]** test rather than stock performance"; (2) a May 20 *Hindenburg Research* article entitled "Sorrento's Pandemic Profiteering: Experts and Former Employees Speak Out on Sensational Claims of Covid-19 Cure";[1] (3) a May 20 *Viceroy Research* article entitled "Sorrento's Predatory Propaganda"; and (4) a May 22 BioSpace.com article entitled "Sorrento Responds to Criticism of COVID-19 Neutralizing Antibodies."

Sorrento's stock prices responded to these

announcements and articles. On May 15, following the initial announcement, Sorrento's stock price increased to a daily high of $9.00 per share—or 243.5% higher than the prior trading day's close of $2.62—and its common stock traded hands at nearly seventy-eight times its daily volume. Following the May 20 articles, Sorrento's stock price dropped from $6.82 per share to $4.55 per share. After Defendant Ji's interview on *Yahoo!Finance*, the price increased to $5.70, but then dropped to $4.67 per share following the May 22 BioSpace.com article.

Meanwhile, Sorrento was experiencing some financial difficulties. In March 2020, Sorrento's independent auditor had issued a "going concern" qualification to its 2019 audit opinion noting Sorrento's high cash burn **[*5]** rate and over-leveraged capital structure. In its 2019 Form 10-K filed with the Securities and Exchange Commission ("SEC"), Sorrento had indicated that if it could not raise sufficient financing for its day-to-day operations, it would have to shut down. This condition was in part the result of Oak Tree Capital Management, L.P. ("Oaktree," Sorrento's high-interest debt holder) requiring Sorrento to raise certain amounts of outside capital and repay debts in 2020.

The district court noted that in response to its financial situation, Sorrento: (1) on March 13, 2020, filed a shelf-registration statement with the SEC, authorizing Sorrento to sell up to $1 billion in securities; (2) on April 27, 2020, entered into a sales agreement with Alliance Global Partners, authorizing it to sell up to $250 million of Sorrento's stock in at-the-market ("ATM") offerings; and (3) simultaneously issued a prospectus stating it was offering up to 250 million shares of its common stock to Arnaki Ltd. ("Arnaki") pursuant to a purchase agreement. The district court further noted that under this agreement, "Sorrento could direct Arnaki to purchase up to 650,000 shares of Sorrento's common stock per business day, **[*6]** and the purchase price was equal to 97.5% of the daily volume weighted average purchase price of the common stock on the purchase date." The court observed that during the second quarter of 2020, Sorrento "raised over $67 million in ATM common stock offerings and used these proceeds to retire the unpaid balance of the Oaktree loan."

On May 26, 2020, Zenoff filed this securities fraud class-action complaint against the Defendants. The proposed class consisted of all purchasers of Sorrento common stock between May 15 and May 21, 2020, and the complaint alleged violations of §§ 10(b) and *20(a) of the*

---

[1] Hindenburg Research and Viceroy Research held "short" positions against Sorrento, which means they would profit from a decline in Sorrento's stock price.

*Exchange Act (15 U.S.C. §§ 78j(b)* and 78t(a)), and SEC Rule 10b-5 (*17 C.F.R. § 240.10b-5*). Related actions were filed, and on February 21, 2021, the district court consolidated the actions, appointed Zenoff as lead plaintiff, and approved his choice of lead counsel. On November 30, 2021, Zenoff filed a "First Amended Consolidated Class Action" complaint ("FAC"). The gravamen of the FAC was that Sorrento had falsely claimed to have developed a cure for COVID-19, misleading investors. It emphasized CEO Ji's statements in media articles on May 15 that: "We want to emphasize there is a cure. There is a solution that works 100 percent," and "if we have the neutralizing antibody in your **[*7]** body, you don't need the social distancing. You can open up a society without fear."

**II**

On April 11, 2022, the district court granted Sorrento's motion to dismiss the FAC.[2]

Addressing Zenoff's claims of materially false and misleading statements, the district court noted that Zenoff's claims were based on three particular statements, and rejected Zenoff's argument that Defendants had misled investors through these statements.[3] The district court found the assertion of a

---

[2] The district court granted Sorrento's motion to take judicial notice of the various articles concerning STI-1499 and Sorrento's SEC filing. On appeal, Zenoff does not challenge the taking of judicial notice.

[3] Zenoff relied on:

(1) CEO Ji's May 15 statement to *Fox News*: "We want to emphasize there is a cure. There is a solution that works 100 percent If we have the neutralizing antibody in your body, you don't need the social distancing. You can open up a society without fear."

(2) VP Brunswick's May 15 statement to *Fox News*: "As soon as it is infused, that patient is now immune to the disease For the length of time, the antibody is in that system. So, if we were approved [by the FDA] today, everyone who gets that antibody can go back to work and have no fear of catching COVID-19."

(3) the May 15 *BioSpace* article's quote of CEO Ji stating: "One of the antibodies is so powerful that at a very low concentration it is able to 100% completely prevent infection or inhibit the infection So what we've done is identified an antibody that recognizes the COVID-19 virus and completely inhibits its binding to the specific

cure and a solution that works 100% to be "a statement of corporate optimism"—in other words, mere "puffery" which "cannot state an actionable material misstatement of fact under federal securities law." *See Glen Holly Ent. Inc. v. Tektronix, Inc., 352 F.3d 367, 379 (9th Cir. 2003)*. The court further found that there was "nothing about the representation of STI-1499's success that is inaccurate or misleading." It noted that on May 15, VP Brunswick was quoted in the *Fox News* article as saying, "[w]e anticipate having enough material to start a Phase I trial in patients in the ICU within two months"; that the May 20 *Yahoo!Finance* article reported that Sorrento had found an antibody "in a preclinical trial"; and the May 15 *Fox News* article noted that "a quick approval from the [Federal Drug Administration **[*8]** ("FDA")] would be needed to make the antibody treatment available within months." The district court concluded that "[i]n reviewing each of these statements within the context of each entire article, [Zenoff has not] sufficiently pled the existence of false or misleading statements."

The district **[*9]** court next considered scienter, another essential element of a § 10(b) claim. *See Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1034 (9th Cir. 2002)*. Scienter is the intent to deceive, manipulate or defraud. *Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 319 (2007)*. To plead scienter for security fraud a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *15 U.S.C. § 78u-4(b)(2)*. "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc., 551 U.S. at 324*.

The district court determined that Zenoff had failed to establish a strong inference of scienter. Zenoff asserted scienter based on allegations that: (1) the pandemic represented a huge financial opportunity for Sorrento; (2) the individual defendants had access to and knowledge of the real-time data relating to STI-1499; (3) Sorrento needed to raise capital to fund its operations; (4) Sorrento had an ongoing ATM stock offering to fund its continued operations; (5) Sorrento had a purchase agreement with Arnaki; and (6) Sorrento needed to eliminate its high-interest debt.

The district court was not persuaded. First, it found that Sorrento's need to raise funds to retire its high-

---

receptor."

interest **[\*10]** debt did not give rise to a strong inference of scienter. *See Mallen v. Alphatec Holdings, Inc., 861 F. Supp. 2d 1111, 1137 (S.D. Cal. 2012)* (holding that generalized assertions of motive based on potential profit are insufficient to meet the heightened pleading requirement of scienter). Second, the court noted that the FAC did not sufficiently allege any contemporaneous statements by the Defendants showing "their knowledge of purported falsity." Finally, the district court concluded that even upon a holistic review of all scienter allegations, Zenoff had not adequately alleged a strong inference of scienter in part because the facts that STI-1499 was still in preclinical stages and had not yet received FDA approval was disclosed contemporaneously with the announcement of the development of STI-1499.

The district court granted the motion to dismiss with leave to amend. Zenoff, however, declined to amend the complaint. Judgment was entered on June 3, 2022, and Zenoff timely appealed on June 30, 2022.

## III

A Rule 10b-5 claim requires that plaintiff prove '"(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; **[\*11]** (5) economic loss; and (6) loss causation."' *Mattrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 37-38 (2011)* (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157 (2008)*). Both falsity and scienter must be alleged with particularity. *Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009)*. Thus, for falsity, a plaintiff must allege with particularity each statement alleged to be misleading and the reasons why it is misleading. *See In re Rigel Pharm., Inc. Sec. Litig., 697 F.3d 869, 877 (9th Cir. 2012)*. For scienter, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Zucco, 552 F.3d at 991*(quoting *15 U.S.C. § 78u-4(b)(1)*). The inference must be "cogent and compelling, thus strong in light of other explanations." *Tellabs, 551 U.S. at 324*. "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*

Pursuant to Rule 12(b)(6), a complaint can be dismissed for: "(1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996)*. When the complaint includes allegations of fraud, a party must "state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Fed. R. Civ. P. 9(b)*. Furthermore, claims under the Exchange Act are subject to the provisions of the **[\*12]** Private Securities Litigation Reform Act of 1995 ("PSLRA"), which "requires that a complaint alleging misleading statements or omissions 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . all facts on which that belief is formed.'" *Reese v. BP Expl. (Alaska) Inc., 643 F.3d 681, 690 (9th Cir. 2011)* (quoting *15 U.S.C. § 78u-4(b)(1)*).

We review Rule 12(b)(6) dismissals de novo. *Chavez v. Robinson, 12 F.4th 978, 985 (9th Cir. 2021)*. We may consider "the face of the complaint, materials incorporated into the complaint by reference, and matters of which we may take judicial notice." *Zucco, 552 F.3d at 989*.

## IV

### A. Falsity

Zenoff contends that Sorrento "told the world multiple whoppers" concerning a 100% cure for COVID-19. While Defendants' enthusiasm for STI-1499 might have been overblown, in context, their statements were not materially misleading. The May 15 Press Release starts with the statement that its antibody "demonstrated 100% inhibition of SARS-CoV-2 virus infection in an *in vitro* virus infection *experiment* at a very low antibody concentration." (Emphasis added). The *Fox News* article's headline is "California biopharmaceutical company claims coronavirus antibody breakthrough" and it has a subsection **[\*13]** in bold print entitled "possible coronavirus vaccine enters human testing trial." The article further states that Sorrento has partnered with Mount Sinai Healthcare System to develop an antibody cocktail, that STI-1499 is likely to be the first antibody in the cocktail, and that Sorrento "can provide up to 200,000 doses per month." The May 15 *BioSpace* article commences with the statement that Sorrento is "one of the companies deeply involved in

clinical antibody development against COVID-19." The article states that Sorrento is teaming with Mount Sinai to develop an antibody cocktail, and notes that "if the Phase 1 trial starts by the beginning of July, they will know withing a week or two whether the antibody is having an effect."

A fair reading of the press release and the articles reveals that there was no promise of an immediate 100% cure. Despite Defendants' enthusiasm about STI-1499, in context, all of the articles reveal that its development was at the stage of an in vitro virus infection experiment, i.e., it had only been tested in a laboratory. Zenoff has not shown that a reasonable person reading the articles would think that Defendants were representing that STI-1499, without **[\*14]** further testing, was an immediate cure for COVID-19.

Moreover, the only basis that Zenoff offers to support his claim that Defendants' representations were knowingly false is that there is still no cure for COVID-19. He does not address whether, in May 2020, STI-1499 showed some promise as a cure for COVID-19. Rather, he reasons from the fact that there still is no cure for COVID-19, that Defendants could not, in good faith, have thought that STI-1499 was a cure. However, many initially promising discoveries do not survive the testing required for FDA approval; failure to survive testing is hardly evidence that the developer's initial enthusiasm was unwarranted or inherently false at the time.

### B. Scienter

Even if the Defendants' statements could be construed to be misleading, Zenoff would still not be entitled to relief unless his allegations raised the requisite strong inference of scienter. On appeal, Zenoff argues that he has made the requisite showing through the combination of: (1) Ji's and Brunswick's management roles; (2) Ji's and Brunswick's undisputed access to STI-1499 data; (3) "the blatant falsity of Defendants' statements"; (4) "the extremely short time period between Defendants' **[\*15]** false statements and their admission of falsity"; and (5) "Sorrento's dire financial situation."

Certainly, Ji and Brunswick had management roles and access to STI-1499 data, but there is no indication or allegation that those roles gave them access to some information about STI-1499 that was not mentioned in the press release or the articles. In contrast, the cases cited by Zenoff concern situations where senior

executives were alleged to have inside information that was not available to others.[4] Here, Defendants were forthright in stating that STI-1499 was at the in vitro experiment stage. Zenoff does not suggest or allude to what other relevant information Defendants had about STI-1499 that should have been disclosed.

As previously noted, Zenoff's claim of "blatant falsity" does not survive scrutiny. When viewed in context, Defendants did not promise an immediate 100% cure to COVID-19. Moreover, Defendants only "admitted falsity" if their initial assertions are read as claiming an immediate 100% cure. The May 20 *Yahoo!Finance* interview reiterates the prerequisite of clinical testing and asserts that Sorrento, "instead of watching the stock going up or going down," is "focusing on mak[ing] **[\*16]** sure we have the real deal." The May 22 BioSpace.com article reported that CEO Ji did not say STI-1499 was a cure. It reported that he stated that "*if* it gets through safety studies, *if* it demonstrates efficacy, it *potentially* is a cure—*if* you have the antibody in the blood and it prevents infection." The May 20 and May 22 articles can only be read as retractions if Defendants' prior statements are interpreted—contrary to Sorrento's protestations—as a promise of an immediate 100% solution. The more reasonable interpretation is that the later statements are consistent elaborations of what was initially stated.[5]

Next, although Sorrento's financial situation was clearly helped by the market's response to the announcement of the development of STI-1499, Sorrento had taken steps to meet its "dire financial situation" well before the announcements of STI-1499. It seems likely that the bump in the price of Sorrento's stock in the week of May 15 provided it with more revenue from its agreement with Anarki to purchase stock, but Zenoff does not

---

[4] For example, *South Ferry LP, No. 2 v. Killinger, 542 F.3d 776 (9th Cir. 2008)*, concerned statements by high-ranking corporate officers as to core corporate operations, including claims that the corporation "had fully integrated the information systems that are central to WAMU's ability to maintain and update their various hedges." *Id. at 781*. *In re Alphabet, Inc. Sec. Litig., 1 F.4th 687 (9th Cir. 2021)*, concerned allegations that the defendants made materially misleading statements by failing to disclose security problems. Both cases concerned critical information that was known only to corporate insiders.

[5] Zenoff cites a couple of cases for the proposition that temporal proximity between a fraudulent statement and a later disclosure can be circumstantial evidence of scienter. But this is so only if the first statement is fraudulent.

allege any particular improper or inflated sales. Indeed, as Defendants note, Zenoff identifies no individual stock sales at all. Accordingly, Zenoff **[*17]** has not made the requisite showing of trading history necessary to raise an inference of scienter. See *Zucco, 552 F.3d at 1005* (holding that "for individual defendants' stock sales to raise an inference of scienter, plaintiffs must provide a 'meaningful trading history' for purposes of comparison to the stock sales within the class period," and that "[e]ven if the defendant's trading history is simply not available, for reasons beyond a plaintiff's control, the plaintiff is not excused from pleading the relevant history").

Zenoff has not pled any allegations giving rise to the requisite strong inference that Defendants intended to improperly manipulate the price of Sorrento's shares. At best, we can infer that Defendants' excitement about the development of STI-1499 (and the public's excitement) produced a one-week bump in the price of Sorrento's stock. This may well have helped Sorrento's efforts to raise capital, but as Zenoff has failed to point to any particular sales or purchases by Sorrento or its officers, there is no inference of intent to manipulate. We have held that "[a] court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the **[*18]** complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." *Zucco, 552 F.3d at 991*. Zenoff has not shown that Sorrento's promotion of its development of STI-1499 created a strong inference that Sorrento intended to manipulate the price of its stock.

## V

The record shows that as a result of Defendants' enthusiastic announcement of the development of STI-1499 as a possible cure for COVID-19, the price of Sorrento's stock rose sharply for about a week. Zenoff filed this lawsuit asserting both that Sorrento falsely claimed that STI-1499 was a 100% cure for COVID-19 and did so with the intent to manipulate the price of its stock. However, the PSLRA requires that Zenoff allege both falsity and scienter with particularity. On this record, Zenoff has not adequately pled that Defendants' statements about STI-1499, when viewed in context, were false as opposed to overstated. Furthermore, even if the allegations of falsity were deemed plausible, Zenoff has failed to plead factual allegations that give rise to a strong inference of scienter. He does not allege any particular stock sales or purchases by Sorrento or

either of the individual defendants. **[*19]** Indeed, in the spring of 2020, the possibility of a cure for COVID-19 generated many innocent explanations for Defendants' statements and the market's reaction to those statements. The district court's dismissal of Zenoff's First Amended Complaint is **AFFIRMED**.

---

**End of Document**