**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
LAUREN M. CRUZ (Bar No. 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470

**COHEN MILSTEIN SELLERS**
  **& TOLL PLLC**
CAROL V. GILDEN (*pro hac vice*)
cgilden@cohenmilstein.com
200 S. Wacker Drive, Suite 2375
Chicago, IL 60606
Tel: (312) 629-3737

*Lead Counsel for Lead Plaintiffs*
*and for the Class*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SILVERGATE CAPITAL CORPORATION SECURITIES LITIGATION | Case No. 3:22-cv-01936-JES-MSB |
| | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS** |
| | Judge:      Hon. James E. Simmons, Jr. |
| | Courtroom:  4B |
| | Date:       June 25, 2025 |
| | Time:       9:00 a.m. |
| | **No Oral Argument Requested** |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS
CASE NO. 22-CV-01936-JES-MSB

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................................ 1

II.   BACKGROUND OF THE LITIGATION ............................................................................. 2

III.  ARGUMENT ........................................................................................................................ 5

      A.    The Court Should Grant Preliminary Approval of the Proposed Settlement ................................................................................................................ 5

            1.    The Settlement Is the Product of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel and a Mediator ....................... 6

            2.    The Proposed Settlement Falls Well Within the Range of Approval ................................................................................................................ 7

            3.    The Settlement Treats All Settlement Class Members Fairly .................... 9

            4.    The Settlement Does Not Excessively Compensate Plaintiffs' Counsel .................................................................................................. 11

            5.    Plaintiffs Have Identified All Agreements Made in Connection with the Settlement ................................................................ 12

      B.    The Proposed Settlement Class Satisfies Rule 23 ................................................ 12

            1.    The Settlement Class Satisfies the Requirements of Rule 23(a) .......................................................................................................... 13

                  a)    The Settlement Class Is So Numerous That Joinder Is Impracticable .................................................................................. 14

                  b)    There Are Common Questions of Law and Fact ........................... 14

                  c)    Plaintiffs' Claims Are Typical of Those of the Settlement Class ............................................................................. 15

                  d)    Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class ................................................... 15

            1.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ......................................................................................................... 16

                  a)    Common Legal and Factual Questions Predominate .................... 16

                  b)    A Class Action Is Superior to Other Methods of Adjudication ................................................................................. 17

IV.   THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS ........................................................................................................ 18

V.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................................. 19

VI.    CONCLUSION ..................................................................................................................... 19

Appendix A ..................................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abadilla v. Precigen, Inc.*,
   2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) ........................................................................... 7

*Akins v. Facebook, Inc.*,
   2025 WL 484621 (9th Cir. Feb. 13, 2025) ............................................................................... 6

*In re Allergan, Inc. Proxy Violation Derivative Litig.*,
   2018 WL 4959014 (C.D. Cal. Aug. 13, 2018) ........................................................................ 11

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................................... 17

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ....................................................................... 11

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act ("ERISA")*
   *Litig.*,
   281 F.R.D. 134 (S.D.N.Y. 2012) ............................................................................................. 15

*In re BofI Holding, Inc. Sec. Litig.*,
   2022 WL 2068424 (S.D. Cal. June 8, 2022) ........................................................................... 13

*In re Capacitors Antitrust Litig.*,
   2020 WL 13210652 (N.D. Cal. July 10, 2020) ....................................................................... 19

*City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*,
   348 F.R.D. 372 (S.D. Cal. 2024) ........................................................................ 14, 15, 16, 17

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .................................................................................................. 5

*Ford v. CEC Ent. Inc.*,
   2015 WL 11439033 (S.D. Cal. Dec. 14, 2015) ........................................................................ 6

*Guevoura Fund Ltd. v. Sillerman*,
   2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ........................................................................... 7

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................................................. 15

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ................................................................................................... 15

*Hardy v. Embark Tech., Inc.*,
    2023 WL 6276728 (N.D. Cal. Sept. 26, 2023)...................................................................... 13

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)........................................................................ 12

*In re Hewlett-Packard Co. Sec. Litig.*,
    No. 8:11-cv-1404-AG, slip op. (C.D. Cal. Sept. 15, 2014), ECF No. 167 ............................ 11

*Holmes v. NCO Fin. Sys., Inc.*,
    2014 WL 12899143 (S.D. Cal. Mar. 10, 2014)........................................................................ 5

*In re Immune Response Sec. Litig.*,
    2007 WL 9777749 (S.D. Cal. Mar. 14, 2007)........................................................................ 19

*In re ImmunityBio, Inc. Sec. Litig.*,
    2025 WL 834767 (S.D. Cal. Mar. 17, 2025).......................................................................... 12

*In re Int'l Rectifier Corp. Sec. Litig.*,
    Case No. 2:07-cv-02544-JFW, slip op. (C.D. Cal. Feb. 8, 2010), ECF No. 316 ................... 11

*Lemieux v. EZ Lube, Inc.*,
    2014 WL 12102167 (S.D. Cal. June 25, 2014) ..................................................................... 19

*In re: Lithium Ion Batteries Antitrust Litig.*,
    2017 WL 6728701 (N.D. Cal. Dec. 22, 2017) ....................................................................... 19

*Norris-Wilson v. Delta-T Grp., Inc.*,
    270 F.R.D. 596 (S.D. Cal. 2010).......................................................................................... 17

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015)................................................................................................ 11

*Purple Mountain Tr. v. Wells Fargo & Co.*,
    2022 WL 3357835 (N.D. Cal. Aug. 15, 2022)....................................................................... 15

*Ruiz Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016).............................................................................................. 17

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) .......................................................................... 7

*In re Silvergate Capital Corp.*,
    Case No. 1:24-12158-KBO (Bankr. D. Del. Apr. 22, 2025), ECF No. 664 ............................ 8

*In re Silvergate Capital Corp.*,
    No. 1:24-12158-KBO (Bankr. D. Del. May 13, 2025), ECF No. 728 ..................................... 5

*In re Splunk Inc. Sec. Litig.*,
    2024 WL 923777 (N.D. Cal. Mar. 4, 2024) .......................................................................... 12

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. (2016) ............................................................................................................. 16

*Valentino v. Carter–Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ......................................................................................... 17

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ....................................................................................... 11

*In re Volkswagen "Clean Diesel" Mktg. Sales Pracs., & Prods. Liab. Litig.*,
    2019 WL 2077847 (N.D. Cal. May 10, 2019) .......................................................... 11

*In re Wireless Facilities, Inc. Sec. Litig.*,
    253 F.R.D. 630 (S.D. Cal. 2008) ................................................................................... 13

**Statutes**

11 U.S.C. § 362 ...................................................................................................................... 4, 5

11 U.S.C. § 510(b) .................................................................................................................... 8

15 U.S.C. § 78u-4(e) ............................................................................................................... 18

Private Securities Litigation Reform Act .................................................................... 7, 12, 18

Securities Act of 1933 ............................................................................................................... 2

Securities Exchange Act of 1934 ................................................................................. 2, 10, 14

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................................ *passim*

## I.      PRELIMINARY STATEMENT

Indiana Public Retirement System, Boston Retirement System, Public School Teachers' Pension & Retirement Fund of Chicago, International Union of Operating Engineers, Local No. 793, Members Pension Benefit Trust of Ontario, UMC Benefit Board, Inc. and Wespath Institutional Investments LLC, both as administrative trustees of the Wespath Funds Trust (collectively, "Lead Plaintiffs"); and Bucks County Employees Retirement Fund ("Bucks County," and collectively with the Lead Plaintiffs, "Plaintiffs") are pleased to report that they have reached an agreement, subject to the Court's approval, to settle this securities class action (the "Action") in exchange for a cash payment totaling $37,500,000.00 for the benefit of the Settlement Class (the "Settlement"). Lead Plaintiffs now seek preliminary approval of the Settlement pursuant to Rule 23(e)(1).[1]

The proposed $37.5 million cash Settlement represents a favorable recovery for the Settlement Class under the circumstances. Those circumstances include Silvergate Capital Corporation's bankruptcy and the significant ability-to-pay risks resulting from that bankruptcy and the limits on available directors' and officers' insurance. The Settlement ensures that the Settlement Class will receive: (a) essentially all of the remaining $27.5 million in insurance; (b) more than $5 million indirectly from Silvergate's bankruptcy estate by way of the Preferred Equity Holder Contribution,[2] a rare source of recovery in a securities class action with a bankrupt issuer; and (c) $4.68 million from the Underwriter Defendants. The recovery also eliminates the real risks that protracted litigation might lead to lesser or no recovery—including very significant risks relating to liability, loss causation, and damages—and guarantees a significant and near-term recovery for the Settlement Class.

---

[1] All capitalized terms that are not otherwise defined in this memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated May 9, 2025 (the "Stipulation"), filed contemporaneously herewith.

[2] As described in the Stipulation and in footnote 8 below, pursuant to the Preferred Equity Holder Contribution, $5.32 million of funds that otherwise would be distributed to holders of preferred stock in Silvergate Capital under the Debtors' Chapter 11 Plan will be paid over to the Settlement Class.

The proposed Settlement was achieved after over two years of hard-fought litigation, motion practice, and vigorous and extended arm's-length negotiations occurring over many months before the Honorable Layn Phillips, a former federal judge and well-respected mediator. The Plaintiffs—all sophisticated institutional investors—actively oversaw the litigation and fully endorse the Settlement. The proposed Settlement readily satisfies each of the approval factors required by Federal Rule of Civil Procedure 23(e) and Ninth Circuit precedent.

For these reasons and those discussed further below, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order (Exhibit A to the Stipulation). Entry of the proposed Preliminary Approval Order would authorize the dissemination of notice of the Settlement to the Settlement Class, after which there would be a final approval hearing for the Court to make a final determination as to whether the Settlement is fair, reasonable, and adequate (the "Settlement Hearing"). Pursuant to the terms of the Settlement, Defendants agree to entry of the proposed Preliminary Approval Order and, accordingly, Plaintiffs respectfully suggest that this motion may be decided without a hearing.

## II.    BACKGROUND OF THE LITIGATION

This matter involves allegations that Silvergate Capital Corporation ("Silvergate Capital" or "the Company") and its CEO, Alan Lane, made false and misleading statements to investors in violation of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities Act of 1933 (the "Securities Act").  Plaintiffs alleged that, throughout the Class Period, Silvergate Capital and Lane repeatedly represented that the Company's "vetting," "due diligence," and "monitoring" procedures gave the Company and its subsidiary bank a "distinct competitive advantage," allowing them to "know" their customers and "eliminating counterparty risk" for the Company's customers transacting on Silvergate-approved cryptocurrency exchanges. Plaintiffs further alleged that, while these representations had the effect of increasing Silvergate Capital's shareholder price, in truth, Silvergate Capital did not conduct the customer vetting, due diligence, or ongoing monitoring that Defendants touted. Plaintiffs alleged that, as a result, Silvergate failed to discover that its approved cryptocurrency exchange customers—including FTX—were sham entities. When the truth emerged, the Company's stock price plummeted from over $225 to roughly $1 per share.

On February 28, 2023, the Court appointed Lead Plaintiffs to litigate the Action and approved their selection of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the putative class.

On May 11, 2023, Plaintiffs filed an Amended Consolidated Class Action Complaint (the "Complaint") asserting claims against the Company and Lane under Section 10(b) of the Exchange Act and against Lane under Section 20(a) of the Exchange Act. Plaintiffs also asserted claims arising under the Securities Act against Silvergate Capital, Lane, and the other Executive Defendants,[3] the Director Defendants,[4] and the Underwriter Defendants[5] under Sections 11 and 12(a)(2), and against Lane and the Director Defendants under Section 15 of the Securities Act.

On July 10, 2023, Defendants moved, in three separate motions, to dismiss the Complaint. On September 8, 2023, Plaintiffs opposed the motions and, on October 23, 2023, Defendants served their reply papers. On November 29, 2023, the Court heard oral argument on Defendants' motions. Defendants' motions remained pending until they were denied as moot, without prejudice to refiling, in light of this Settlement, on March 26, 2025. ECF No. 130.

At the end of June 2024, the Parties held their first mediation session, in what would become extended settlement negotiations conducted through the Honorable Layn Phillips, a former federal judge and well-respected mediator. In connection with the mediation, the Parties exchanged extensive mediation statements, including as to potential damages, and Defendants provided Plaintiffs' counsel with additional financial information. During that first session, Plaintiffs and Defendants exchanged multiple offers. A resolution was not achieved during the first mediation

---

[3] In addition to Lane, the Executive Defendants include Antonio Martino (Silvergate Capital's CFO).

[4] In addition to Lane, the Director Defendants include Karen F. Brassfield; Robert C. Campbell; Paul D. Colucci; Thomas C. Dircks; Dennis S. Frank; Aanchal Gupta; Michael Lempres; Scott A. Reed; and Colleen Sullivan.

[5] The Underwriter Defendants include Canaccord Genuity LLC; Citigroup Global Markets Inc; Compass Point Research & Trading, LLC; Craig-Hallum Capital Group LLC; Goldman Sachs & Co. LLC; J.P. Morgan Securities LLC; Keefe, Bruyette & Woods, Inc.; UBS Securities LLC; and Wedbush Securities Inc.

session. However, the Parties continued to engage in settlement negotiations through Judge Phillips, with Defendants providing Plaintiffs further financial information over the next several months.

On September 18, 2024, Silvergate Capital filed for Chapter 11 bankruptcy protection. The Parties engaged in further negotiations in light of the bankruptcy over the next few months and ultimately agreed to a second in-person mediation session with Judge Phillips on February 6, 2025. The Parties met for a full-day session with Judge Phillips on that date and continued their negotiations. That mediation session was ultimately unsuccessful, but extensive negotiations continued over subsequent months. Finally, the Parties came to agreement on key monetary and non-monetary terms, which then culminated in a signed term sheet and, ultimately, a stipulation of settlement.

The proposed $37.5 million Settlement is comprised of (a) $27,500,000 to be paid on behalf of the Silvergate Defendants from the insurance proceeds for which the Individual Defendants are beneficiaries (the "D&O Insurance Contribution"); (b) $4,680,000 to be paid by or on behalf of the Underwriter Defendants (the "Underwriter Contribution"); and (c) $5,320,000 to be paid from the cash distribution made by the Debtors (Silvergate Capital and its subsidiary Silvergate Bank) to the preferred equity holders under the Debtors' Chapter 11 Plan (the "Preferred Equity Holder Contribution"). *See* Stipulation ¶ 10. The D&O Insurance Contribution and Underwriter Contribution will be paid within twenty business days after preliminary approval of the Settlement; the Preferred Equity Holder Contribution will be paid on the effective date of the Debtors' Chapter 11 Plan. *Id*.

On April 22, 2025, the Debtors filed in the Bankruptcy Court (a) a motion (the "Rule 9019 Motion") seeking entry of an order approving the Debtors' entry into and performance of their obligations under the Settlement of this Action as well a separate March 27, 2025 settlement term sheet among the Individual Defendants, certain other indemnified individuals, the *ad hoc* group of preferred equity holders and the Debtors (the "Indemnified Individuals Term Sheet"); and (b) a motion (the "Stay Modification Motion") seeking entry of an order modifying the automatic stay under Section 362 of the Bankruptcy Code, to the extent necessary, to permit the Parties to seek and

obtain this Court approval of the Settlement and consummate the Settlement. 11 U.S.C. § 362; Stipulation ¶ 3.

On May 13, 2025, the Bankruptcy Court entered an order granting the Stay Modification Motion, and on May 14, 2025, the Bankruptcy Court entered an order granting the Rule 9019 Motion, enabling the Parties to seek preliminary and final approval of the Settlement in this Court. *See In re Silvergate Capital Corp.*, No. 1:24-12158-KBO (Bankr. D. Del. May 13, 2025), ECF No. 728. Consistent with the Stipulation, the Settlement is contingent on the Debtors filing the Chapter 11 Plan, and the release of all claims held or potentially held by the Debtors (and their affiliates and assigns) against the Defendant Releasees and the Indemnified Individuals, as approved by a non-appealable order of the Bankruptcy Court, with such release occurring upon the Chapter 11 Plan Effective Date. The Settlement will be effective once this Court has finally approved the Settlement and the Effective Date of the Chapter 11 Plan has occurred. *See* Stipulation ¶¶ 36, 37.

## III.    ARGUMENT

The Settlement readily meets the standards for preliminary approval. The Settlement provides valuable benefits to investors and avoids the substantial risks and delays that would otherwise accompany the Action. The Settlement is the product of extensive, hard-fought litigation and arm's-length settlement negotiations overseen by Judge Phillips, a preeminent mediator.

### A.    The Court Should Grant Preliminary Approval of the Proposed Settlement

Federal Rule of Civil Procedure 23(e)(2) provides that a class action settlement warrants court approval if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In the Ninth Circuit, there is a "strong judicial policy that favors settlement[s], particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Holmes v. NCO Fin. Sys., Inc.*, 2014 WL 12899143, at *2 (S.D. Cal. Mar. 10, 2014) (same).

Judicial approval of a class action settlement is a two-step process—*first*, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class, *see* Fed. R. Civ. P. 23(e)(1); *second*, after notice has been provided and a hearing has been held, the court determines whether to grant final approval of the settlement, *see* Fed. R. Civ. P. 23(e)(2). A court grants preliminary approval upon a finding that it

"will likely be able" to (i) finally approve the settlement under Rule 23(e)(2); and (ii) certify the proposed class for purposes of the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B).

In considering *final* approval of the Settlement, Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[6] These factors are satisfied here, and preliminary approval is appropriate.

### 1. The Settlement Is the Product of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel and a Mediator

The Settlement was achieved after extensive, vigorous negotiations among well-informed and experienced counsel following over two years of hard-fought litigation. The Parties and their counsel were knowledgeable about the strengths and weaknesses of the case before entering into the Stipulation. Plaintiffs conducted an extensive pre-suit investigation, which included speaking with dozens of former Silvergate employees; briefed three motions to dismiss; and consulted with experts, including on issues of regulatory compliance, loss causation, and damages. As a result, Plaintiffs and Lead Counsel had a firm basis to assess the Action's strengths and weaknesses and the reasonableness of the proposed Settlement.

---

[6] "The Ninth Circuit has enumerated various factors that the court should consider in determining whether a proposed settlement meets the fair, reasonable, and adequate standard, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Ford v. CEC Ent. Inc.*, 2015 WL 11439033, at *3 (S.D. Cal. Dec. 14, 2015) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998)). In 2018, the key Ninth Circuit factors were baked into the text of Rule 23(e), and the remaining ones can still be considered for Rule 23(e)(2) analysis. *See, e.g.*, *Akins v. Facebook, Inc.*, 2025 WL 484621, at *1 (9th Cir. Feb. 13, 2025).

Plaintiffs fully endorse the Settlement. Plaintiffs were each well-informed of the strengths and weaknesses of the claims. They consulted extensively with Lead Counsel throughout the litigation and actively participated in and consulted with Lead Counsel during the Parties' mediation and settlement negotiations. They are precisely the type of sophisticated institutional investors favored by Congress when it enacted the PSLRA.

Each of these facts supports preliminary approval of the Settlement in this case. *See, e.g.*, *Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at *9 (N.D. Cal. Nov. 6, 2023) (granting final approval following mediation before Judge Phillips); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *3 (S.D.N.Y. July 21, 2020) (granting final approval of a settlement following mediation before, and a mediator's proposal by, Judge Phillips); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *2 (S.D.N.Y. Dec. 18, 2019) (granting final approval of a settlement after an all-day mediation with Judge Phillips).

### 2.    The Proposed Settlement Falls Well Within the Range of Approval

The Settlement amount is $37.5 million in cash. The Settlement accounts for the meaningful risks associated with the litigation, including the substantial risks related to Plaintiffs' ability to recover a larger judgment through litigation as a result of Silvergate Capital's bankruptcy and limits on insurance coverage, as well as the risks arising from Defendants' pending motions to dismiss, and at class certification, summary judgment, trial, and appeal.

As noted above, Silvergate Capital and two of its affiliates (collectively, the "Debtors") filed for Chapter 11 bankruptcy protection in September 2024, while the motions to dismiss the Complaint in this Action were still being litigated. The bankruptcy automatically stayed all litigation against the Debtors and created significant hurdles for the Settlement Class in obtaining any substantial recovery in this litigation. The Debtors' filings in the Bankruptcy Court have made clear that, if litigation were to proceed, there likely would not be sufficient funds available in the Debtors' estate to allow any payment from the estate to members of the Settlement Class, whose securities law claims based on purchases or other acquisitions of common stock are subordinated to the claims of the Debtors' other creditors and preferred shareholders and are treated as on par with common stock. *See* 11 U.S.C. § 510(b). Moreover, the amount of available directors' and officers' insurance

was limited and was being continuously diminished as a result of defense costs in this Action, other civil litigation, and government investigations.

Particularly in light of these significant ability-to-pay limitations, the $37.5 million Settlement reflects a very favorable outcome for the Settlement Class. As noted, the $27.5 million D&O Insurance Contribution constitutes essentially ***all*** of the Silvergate Defendants' remaining available insurance.[7] The $27.5 million D&O Insurance Contribution exceeds the amount that could reasonably be obtained directly from the personal assets of the Individual Defendants, which could only be obtained after years of additional hard-fought litigation. In addition to maxing out the available insurance, the Settlement Class will also receive an additional $5,320,000 payment indirectly from Silvergate Capital's estate by way of the Preferred Equity Holder Contribution.[8] Because securities class action claims are subordinated in bankruptcy, such a contribution is a very favorable outcome for the Settlement Class. Finally, the Underwriter Defendants have also agreed to contribute an additional $4,680,000 to the Settlement. Plaintiffs and Lead Counsel believe that the proposed Settlement is not just adequate; it is the best result that could be achieved under these circumstances.

In addition to the above considerations, the Action also presented several substantial risks to establishing liability and damages.

First, Plaintiffs faced challenges at trial in establishing that each misstatement was false and misleading. Plaintiffs alleged that, from 2019 through 2023, Defendants repeatedly assured

---

[7] *See* Rule 9019 Motion, at 6, *In re Silvergate Capital Corp.*, Case No. 1:24-12158-KBO (Bankr. D. Del. Apr. 22, 2025), ECF No. 664 ("The Proposed Securities Litigation Settlement contemplated a total settlement amount of $37.5 million, of which $27.5 million would be paid ***from all remaining D&O insurance proceeds***") (emphasis added); *id.* at 11 ("Approximately $27.5 million in insurance currently remains available under the D&O Policies.").

[8] Essentially, the holders of Silvergate Capital's preferred equity, who are the "fulcrum" stakeholders in the bankruptcy case (*i.e.*, the group in priority order under the bankruptcy that is expected to receive the last available dollars), have agreed to allow $5,320,000 from the funds that would otherwise be distributed to the preferred equity holders in the bankruptcy to be paid to the Settlement Class in order to permit a global settlement resolving significant indemnity claims against the Debtors and complex legal issues associated therewith and materially reducing legal costs of the estate.

investors and the public that Silvergate Capital had instituted adequate due diligence procedures for the customers it chose to onboard. However, Defendants maintained that Plaintiffs' allegations relied on unreliable former employees, and that the FTX fraud could not retroactively establish that Silvergate Capital failed to perform adequate due diligence. In support of this argument, Plaintiffs anticipate that Defendants would pursue discovery and seek to establish that the frauds perpetrated by FTX and other bank customers were unique, unforeseeable, and undetectable.

Second, with respect to scienter, Defendants asserted that they did not act with fraudulent intent. Specifically, Defendants argued that, even if they were aware of some shortcomings of their due diligence protocols, it is implausible that they would deliberately perform *no* due diligence for the sake of allowing any entity wanting to use their banking services to do so.

Third, Plaintiffs faced risks in proving price impact, loss causation, and damages. The Parties' disputes concerning the amount of the Company's stock price drops attributable to the alleged fraud (versus other confounding factors, *i.e.*, negative causation) would be a hotly contested issue at class certification, summary judgment, and trial, with Plaintiffs and Defendants providing dueling expert testimony. This anticipated "battle-of-the-experts" created significant uncertainty and risks to recovery.

Finally, even if Plaintiffs ultimately prevailed at trial, they still faced likely appeals—a process that could extend for years and might lead to a smaller recovery, or no recovery at all. As noted above, given the Company's ongoing bankruptcy proceedings and wasting insurance, any prolonged litigation created very substantial risks of non-recovery, even if Plaintiffs *were* successful on the merits.

Given all these significant litigation risks, Plaintiffs and Lead Counsel believe that the proposed $37.5 million Settlement is a very favorable result for the Settlement Class.

**3.      The Settlement Treats All Settlement Class Members Fairly**

The Settlement treats all Settlement Class Members fairly and does not improperly grant preferential treatment to Plaintiffs or any segment of the Settlement Class. All Settlement Class Members will receive a distribution from the Net Settlement Fund pursuant to a plan of allocation approved by the Court.

At the final Settlement Hearing, Plaintiffs will ask the Court to approve the proposed Plan of Allocation for the Net Settlement Fund (the "Plan"), which is set forth in the Notice (Exhibit A-1) and was developed by Plaintiffs' damages expert, in consultation with Lead Counsel. The Plan is based on Plaintiffs' allegations (i) that Defendants' materially false and misleading statements and omissions caused artificial inflation in the prices of Silvergate Capital stock during the Class Period, and that a series of public disclosures that each partially corrected the alleged misrepresentations and omissions removed that inflation, and (ii) that the Offering Materials for Silvergate Capital's 2021 Offerings were materially misleading, allowing investors who purchased stock in or traceable to those offerings to recover under the Securities Act.

The Plan calculates an "Exchange Act Recognized Loss" amount for each purchase or acquisition of Silvergate Capital common stock or preferred stock during the Class Period that is listed in the Claim Form and for which adequate documentation is provided by the Claimant. The calculation of Exchange Act Recognized Loss under the Plan will depend on when the Claimant purchased and/or sold their shares, whether the Claimant held their shares through the statutory 90-day look-back period, *see* 15 U.S.C. § 78u-4(e), and the value of their shares when the Claimant purchased, sold, or held them. The portions of the Settlement Fund paid on behalf of the Individual Defendants (the D&O Insurance Contribution) and Silvergate Capital's bankruptcy estate (Preferred Equity Holder Contribution) (collectively, the "Exchange Act Fund") will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Exchange Act Recognized Losses. In addition, Claimants who purchased Silvergate Capital common stock or preferred stock in or traceable to one of the 2021 Offerings will also be eligible for a Securities Act Recognized Loss for those shares, which will be calculated using the measure of damages in Section 11 of the Securities Act.

The Claims Administrator will calculate Claimants' Recognized Losses under the Plan using the transaction information that Claimants provide to the Claims Administrator in their Claim Forms. Once the Claims Administrator has processed all submitted claims, notified Claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will make distributions to eligible Authorized Claimants in the form of checks and

wire transfers. If any monies remain in the Net Settlement Fund, the Claims Administrator will conduct additional re-distributions until it is no longer cost-effective to do so.  At such time, any remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s), to be recommended by Lead Counsel and approved by the Court.

### 4.    The Settlement Does Not Excessively Compensate Plaintiffs' Counsel

The proposed Settlement does not grant excessive compensation to Plaintiffs' Counsel. The Settlement does not contemplate any specific award to Plaintiffs' Counsel, and Plaintiffs' Counsel will be compensated solely out of the Settlement Fund after approval by the Court.

In connection with Plaintiffs' Counsel's fee and expense application, Lead Counsel will seek a fee of no more than 17% of the Settlement Fund, which is well below the 25% "benchmark" and the 30% "norm" in cases, such as this one, that are prosecuted on a contingency basis. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (recognizing 25% fee percentage as the Ninth Circuit "benchmark"); *In re Allergan, Inc. Proxy Violation Derivative Litig.*, 2018 WL 4959014, at *1 (C.D. Cal. Aug. 13, 2018) (recognizing "a 30% award" is "the norm"). The 17% fee request is also below the range of fee requests that Ninth Circuit courts repeatedly approve in similarly sized or larger settlements in securities class actions with contingency fee risks. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming award of 28% of $97 million); *In re Volkswagen "Clean Diesel" Mktg. Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (awarding 25% of $48 million settlement); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9-10 (C.D. Cal. Oct. 25, 2016) (awarding 25% of $95 million settlement); *In re Hewlett-Packard Co. Sec. Litig.*, No. 8:11-cv-1404-AG, slip op. at 2 (C.D. Cal. Sept. 15, 2014), ECF No. 167 (awarding 25% of $57 million settlement); *In re Int'l Rectifier Corp. Sec. Litig.*, Case No. 2:07-cv-02544-JFW, slip op. at 1 (C.D. Cal. Feb. 8, 2010), ECF No. 316 (awarding 25% of $90 million). The 17% requested fee percentage is also consistent with fee agreements entered into between Lead Counsel and Lead Plaintiffs.  Lead Counsel will also seek payment of litigation expenses incurred in connection with the institution, prosecution, and resolution of the Action, in an amount not to exceed $1.4 million, which may include requests for reimbursement of costs and expenses of Lead Plaintiffs under the PSLRA.

Plaintiffs' Counsel's fee and expense application will be fully briefed in a motion filed in accordance with the Preliminary Approval Order. By granting preliminary approval of the proposed Settlement, the Court does not in any way rule upon the reasonableness of the fee or expense application, which will be decided *de novo* at the Settlement Hearing.

**5.    Plaintiffs Have Identified All Agreements Made in Connection with the Settlement**

In addition to the Stipulation, Plaintiffs and Defendants have entered into a confidential agreement (the "Supplemental Agreement") regarding requests for exclusion ("opt-outs") from the Settlement Class. *See* Stipulation ¶ 42. The Supplemental Agreement sets forth the conditions under which Defendants may terminate the Settlement if the opt-outs from the Settlement Class exceed an agreed-upon threshold. "[T]his type of agreement is common in securities fraud actions and does not weigh against preliminary approval." *In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 834767, at *12 (S.D. Cal. Mar. 17, 2025); *see also In re Splunk Inc. Sec. Litig.*, 2024 WL 923777, at *6 (N.D. Cal. Mar. 4, 2024) ("The existence of a termination option triggered by the number of class members who opt out of the settlement does not by itself render the settlement unfair."). The agreement's terms are confidential "to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts" for themselves at the expense of other Settlement Class members. *ImmunityBio*, 2025 WL 834767, at *12; *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018).

**B.    The Proposed Settlement Class Satisfies Rule 23**

In determining whether to grant preliminary approval, the Court also determines whether it "will likely be able to" grant certification to the proposed Settlement Class for purposes of the Settlement at final approval. Fed. R. Civ. P. 23(e)(1)(B). The proposed Settlement Class, which has been stipulated to by the Parties, consists of:

> (a) all persons and entities who purchased or otherwise acquired the publicly traded common stock of Silvergate Capital from November 7, 2019, through March 21, 2023, inclusive (the "Class Period"), and were damaged thereby, and

(b) all persons and entities who purchased Silvergate Capital securities in and/or traceable to any of Silvergate Capital's securities offerings during 2021, and were damaged thereby.

Stipulation ¶ 1(yy).[9] Defendants have stipulated to the certification of the Settlement Class only for purposes of the Settlement. *See* Stipulation ¶ 2. If the Settlement is not approved, Defendants reserve their right to object for any and all reasons to the certification of the Settlement Class, the appointment of Lead Plaintiffs as Class Representatives for the Settlement Class, or to the appointment of Lead Counsel as Class Counsel for the Settlement Class. *Id*.

The Ninth Circuit acknowledges the propriety of certifying a class for purposes of a class action settlement. *See, e.g.*, *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 2068424, at *11 (S.D. Cal. June 8, 2022); *Hardy v. Embark Tech., Inc.*, 2023 WL 6276728, at *12 (N.D. Cal. Sept. 26, 2023). Certification of a settlement class "is superior to other available methods of adjudication of the controversy because the claims of many individuals will be efficiently resolved at one time, eliminating the possibility of repetitious litigation that would waste the parties' and the Court's resources." *In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008).

As demonstrated below, the proposed Settlement Class satisfies all the applicable requirements of Rules 23(a) and 23(b)(3).

**1.    The Settlement Class Satisfies the Requirements of Rule 23(a)**

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

---

[9] Excluded from the Settlement Class are: (a) Defendants; (b) directors and officers of Defendants (at all relevant times); (c) Defendants' Immediate Family Members and their legal representatives, heirs, successors or assigns; and (d) any entity in which any Defendant has or had a controlling interest; provided, however, that no "Investment Vehicle" shall be excluded from the Settlement Class. "Investment Vehicle" means any investment company or pooled investment fund, including but not limited to mutual fund families, exchange-traded funds, funds of funds, private equity funds, real estate funds, and hedge funds, in which Defendants, or any of them, have, has or may have a direct or indirect interest, or as to which their affiliates may act as an investment advisor, but in which any Defendant alone or together with its, his or her respective affiliates does not hold a majority beneficial interest. *Id.* ¶¶ 1(aa), 1(yy).

(4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### a) The Settlement Class Is So Numerous That Joinder Is Impracticable

In the Ninth Circuit, Rule 23(a)(1)'s numerosity requirement is satisfied for classes larger than 60 members and, in securities fraud class actions, is shown where there are a large number of shares outstanding and traded during the relevant period. *See, e.g.*, *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*, 348 F.R.D. 372, 382-83 (S.D. Cal. 2024) (noting a class of more than 60 satisfies numerosity). Here, Silvergate Capital traded on the New York Stock Exchange and had tens of millions of shares of common stock issued and outstanding during the Class Period, which were owned by many thousands of investors. *See* ECF No. 43, at ¶ 462. These metrics easily demonstrate numerosity.

### b) There Are Common Questions of Law and Fact

Under Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Acadia*, 348 F.R.D. at 383. Commonality exists when "[e]ven a single common question of law or fact … resolves a central issue." *Id.* at 383 (citing *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020)).

The common questions of law and fact in this case are numerous and include: (i) whether Defendants' statements were materially false and misleading when made; (ii) whether Defendants omitted material information regarding the status of the Company's customer due diligence; (iii) whether the Exchange Act Defendants acted with scienter; (iv) whether the Underwriter Defendants were statutory liable for the alleged misstatements in the Offering Materials for the 2021 Offerings and whether they conducted sufficient due diligence before those Offerings; (v) whether the price of Silvergate Capital's stock was artificially inflated during the Class Period due to these alleged misstatements; (vi) whether Defendants' misrepresentations and omissions caused Settlement Class Members to suffer economic losses when the truth was revealed; and (vii) whether Defendant Lane controlled Silvergate Capital during the Class Period. Because these questions of

law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met.

### c) Plaintiffs' Claims Are Typical of Those of the Settlement Class

Under Rule 23(a)(3), the claims or defenses of the named plaintiffs must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Acadia*, 348 F.R.D. at 383-84. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.*; *see also Acadia*, 348 F.R.D. at 383-84. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Acadia*, 348 F.R.D. at 384 (citing *Hanlon*, 150 F.3d at 1020).

Here, Plaintiffs' claims arise from the same alleged course of conduct that gives rise to claims of other Settlement Class Members, are based on the same legal theory, and will be proven by the same set of operative facts. As such, the typicality requirement is satisfied. *See Purple Mountain Tr. v. Wells Fargo & Co.*, 2022 WL 3357835, at *2 (N.D. Cal. Aug. 15, 2022); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act ("ERISA") Litig.*, 281 F.R.D. 134, 139 (S.D.N.Y. 2012).

### d) Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class

Under Rule 23(a)(4), the named plaintiffs must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Plaintiffs are adequate here.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS
CASE NO. 22-CV-01936-JES-MSB          15

First, "the interests of Plaintiffs align with the interests of the proposed Class because all allegedly suffered injuries from the same conduct." *Acadia*, 348 F.R.D. at 384. Like all Settlement Class Members, Plaintiffs purchased Silvergate Capital stock during the Class Period and were subjected to the same fraudulent conduct. No conflicts exist between Plaintiffs and the Settlement Class.

Second, Plaintiffs put forth evidence that they are represented by competent and qualified counsel who have vigorously litigated this Action, including by litigating dispositive motions, negotiating through extensive, sophisticated mediations, and generating a strong settlement despite a complex bankruptcy proceeding with many stakeholders involved. Plaintiffs fully understand their duties and responsibilities as class representatives, have demonstrated their commitment to lead this Action for the Settlement Class, and will continue to actively participate in and supervise the litigation through trial. *See, e.g.*, ECF No. 16-5 (Joint Declaration of Lead Plaintiffs). Plaintiffs have also retained qualified counsel who have extensive experience and success in prosecuting securities litigation. *See, e.g.*, ECF Nos. 16-9, 10 (Lead Counsel resumes). Accordingly, Rule 23(a)(4) is satisfied here.

### 1.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class satisfies these requirements.

### a)    Common Legal and Factual Questions Predominate

"The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. at 442, 453 (2016). For purposes of this analysis, "[a]n individual question is one 'where members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence

will suffice for each member to make a *prima facie* showing [or] the issue is susceptible to generalized, class-wide proof.'" *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (quoting *Tyson Foods*, 577 U.S. at 453). Considering whether common questions are more prevalent than individual ones "begins, of course, with the elements of the underlying cause of action." *Acadia*, 348 F.R.D. at 385 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011)). This "test [is] readily met in certain cases alleging … securities fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Here, the central issue for establishing Defendants' liability is whether the Defendants made misstatements or omissions of material fact. *See id.* This issue is susceptible of generalized proof and, accordingly, the predominance requirement of Rule 23(b)(3) is satisfied.

### b) A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) also asks whether class resolution will be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," and it is superior "if no realistic alternative exists." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). The four factors under the superiority prong are "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 611-12 (S.D. Cal. 2010).

Each of the factors supports certification here. First, the number of Settlement Class members is far too numerous, and the typical claim is too small, for each individual Settlement Class Member to have an interest in maintaining a separate action. Second, Plaintiffs are aware of no other action that seeks recovery under the federal securities laws for damages caused by Defendants' alleged fraud. Third, the geographical dispersion of the Settlement Class Members makes it

desirable to litigate Plaintiffs' claims in this forum. Finally, there are no management difficulties that would preclude this Action from being maintained as a class action.

In sum, the proposed Settlement Class meets all of the requirements of Rules 23(a) and (b)(3) and is appropriate for certification for purposes of the Settlement.

## IV.    THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail the Notice and Claim Form (Exhibits 1 and 2 to the Preliminary Approval Order) to all Settlement Class Members who can be identified with reasonable effort, as well as post the Notice and the Claim Form on a website to be developed for the Settlement.[10] The Claims Administrator will utilize a list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice.  The Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses. The Notice will also provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class. In addition to the mailing of the Notice and Claim Form, the Summary Notice will be published in *The Wall Street Journal* and transmitted over the *PR Newswire*.

The form and manner of providing notice to the Settlement Class satisfies the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice contains all of the

---

[10] Lead Plaintiffs request that the Court approve retention of JND Legal Administration ("JND"), as the claims administrator for this case. JND has successfully administered numerous complex securities class action settlements in this District and elsewhere. *See, e.g.*, *In re BofI Holding, Inc. Sec. Litig.*, No. 3:15-cv-02324-GPC (S.D. Cal.) (JND administered $14.1 million securities class action settlement); *In re Fibrogen, Inc., Sec. Litig.*, Case No. 3:21-cv-02623-EMC (N.D. Cal.) (JND administered $28.5 million securities class action settlement); *In re Mattel, Inc. Securities Litigation,* No. 2:19-cv-10860-MCS (C.D. Cal.) (JND administered $98 million securities class action settlement).

information required by Rule 23(c)(2)(B) and the PSLRA, and will be "reasonably calculated to apprise Settlement Class Members of the pendency of this Action and their right to object to or exclude themselves from the Settlement Class." *Lemieux v. EZ Lube, Inc.*, 2014 WL 12102167, at *3 (S.D. Cal. June 25, 2014). This manner of providing notice, which includes individual notice by first-class mail to all class members who can be reasonably identified, supplemented by additional publication and internet notice, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See, e.g.*, *In re Capacitors Antitrust Litig.*, 2020 WL 13210652, at *2 (N.D. Cal. July 10, 2020); *In re: Lithium Ion Batteries Antitrust Litig.*, 2017 WL 6728701, at *2 (N.D. Cal. Dec. 22, 2017); *In re Immune Response Sec. Litig.*, 2007 WL 9777749, at *5 (S.D. Cal. Mar. 14, 2007).

Accordingly, Plaintiffs respectfully submit that the proposed notice procedures are appropriate and should be approved.

## V.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs respectfully propose the schedule for Settlement-related events as set forth in Appendix A. If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Settlement Hearing for a date 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. If the Court grants preliminary approval as requested, the only date that the Court need schedule is the date for the final Settlement Hearing. The remaining dates will be determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (i) preliminarily approve the proposed Settlement; (ii) approve the proposed form and manner of notice to putative Settlement Class Members; and (iii) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

Dated: May 21, 2025

s/ Carol V. Gilden
**COHEN MILSTEIN SELLERS**
  **& TOLL PLLC**
Carol V. Gilden (*pro hac vice*)
cgilden@cohenmilstein.com
200 S. Wacker Drive, Suite 2375
Chicago, IL 60606
Tel: (312) 629-3737

-and-

Steven J. Toll (*pro hac vice*)
stoll@cohenmilstein.com
S. Douglas Bunch (*pro hac vice*)
dbunch@cohenmilstein.com
Jan Messerschmidt (*pro hac vice*)
jmesserschmidt@cohenmilstein.com
Brendan Schneiderman (*pro hac vice*)
bschneiderman@cohenmilstein.com
1100 New York Avenue, N.W., Suite 800
Washington, DC 20005
Tel: (202) 408-4600

-and-

Christina D. Saler (*pro hac vice*)
csaler@cohenmilstein.com
100 N. 18th Street
Suite 1820
Philadelphia, PA 19103
Tel: (267) 479-5707

s/ Jonathan D. Uslaner
**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA  90067
Tel: (310) 819-3470

-and-

John J. Rizio-Hamilton (*pro hac vice* pending)
johnr@blbglaw.com
Shane D. Avidan (*pro hac vice* pending)
shane.avidan@blbglaw.com
1251 Avenue of the Americas
New York, NY  10020
Tel: (212) 554-1400

*Lead Counsel for Plaintiffs and the Settlement Class*

**Appendix A**

**Proposed Schedule of Settlement Events**

| Event | Proposed Timing | Example Date[11] |
|---|---|---|
| Deadline for mailing the Notice and Claim Form to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶ 5(b)) | No later than 20 business days after entry of Preliminary Approval Order | June 24, 2025 |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶ 5(d)) | No later than 10 business days after the Notice Date | July 9, 2025 |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses (Preliminary Approval Order ¶ 25) | 35 calendar days before the date set for the Settlement Hearing | July 29, 2025 |
| Deadline for receipt of requests for exclusion or objections (Preliminary Approval Order ¶¶ 12, 15, 16) | 21 calendar days before the date set for the Settlement Hearing | August 12, 2025 |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 25) | 7 calendar days before the Settlement Hearing | August 26, 2025 |
| Settlement Hearing (Preliminary Approval Order ¶ 3) | 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter | September 2, 2025 |
| Postmark deadline for submitting Claim Forms (Preliminary Approval Order ¶ 9) | 120 calendar days after the Notice Date | September 15, 2025 |

---

[11] The example dates provided are based on the assumptions that the Court enters the Preliminary Approval Order on May 23, 2025 and schedules the Settlement Hearing for September 2, 2025.