**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470

**COHEN MILSTEIN SELLERS
 & TOLL PLLC**
CAROL V. GILDEN (*pro hac vice)*
cgilden@cohenmilstein.com
200 S. Wacker Drive, Suite 2375
Chicago, IL 60606
Tel: (312) 629-3737

*Lead Counsel for Lead Plaintiffs
and for the Settlement Class*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SILVERGATE CAPITAL CORPORATION SECURITIES LITIGATION | Case No. 3:22-cv-01936-JES-MSB<br><br>**LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: September 3, 2025<br>Time: 9:00 a.m.<br>Dept: 4B<br>Hon. James E. Simmons, Jr. |

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 3, 2025 at 9:00 a.m., in Courtroom 4B of the Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, California 92101, before the Honorable James E. Simmons, Jr., Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), counsel for Lead Plaintiffs Indiana Public Retirement System, Boston Retirement System, Public School Teachers' Pension & Retirement Fund of Chicago, International Union of Operating Engineers, Local No. 793, Members Pension Benefit Trust of Ontario, UMC Benefit Board, Inc. and Wespath Institutional Investments LLC, both as administrative trustees of the Wespath Funds Trust; and Bucks County Employees Retirement Fund (collectively "Plaintiffs") and the Settlement Class, will and hereby do move, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, for an Order granting an award of attorneys' fees and Litigation Expenses.

This motion is made pursuant to the Court's May 22, 2025 Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement (ECF No. 140) ("Preliminary Approval Order") and is based upon: (1) this Notice of Motion, (2) the supporting Memorandum of Points and Authorities set forth below, (3) the accompanying Joint Declaration of Jonathan D. Uslaner and Carol V. Gilden and the exhibits attached thereto, (4) the pleadings and records on file in this action, and (5) other such matters and argument as the Court may consider at the hearing of this motion.

Pursuant to the Preliminary Approval Order, any objection to the motion for attorneys' fees and Litigation Expenses must be filed on or before August 13, 2025. To date, no objections have been filed. A proposed Order will be submitted with Lead Counsel's reply brief, which will be filed on August 27, 2025, after the deadline for objections has passed.

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................1

I.      PRELIMINARY STATEMENT ....................................................................1

II.     ARGUMENT .................................................................................................3

        A.      THE REQUESTED ATTORNEYS' FEES ARE
                REASONABLE ....................................................................................3

                1.      The Requested Attorneys' Fees Are Well in Line
                        with the Ninth Circuit's Percentage-of-Fund
                        Benchmark, Which Is the Preferred Approach.........................3

                2.      Other Factors Confirm the Reasonableness of the
                        Requested Fee .........................................................................5

                        a)      The Requested Fee Is Supported by the
                                Quality of the Settlement........................................6

                        b)      The Requested Fee Is Reasonable in Light of
                                the Substantial Time and Labor Expended ......................7

                        c)      Counsel's Experience and Skill Support the
                                Requested Fee..........................................................8

                        d)      The Magnitude and Complexity of the
                                Litigation Support the Requested Fee .............................9

                        e)      The Substantial Risk and Duration of the
                                Litigation Support the Requested Fee ...........................10

                        f)      The Reaction of the Settlement Class
                                Supports the Requested Fees.........................................12

                        g)      A Comparison With Counsel's Lodestar
                                Supports the Requested Fees.........................................13

                3.      The Requested Fee Is Consistent with the Notice ...................16

        B.      PLAINTIFFS' COUNSEL'S EXPENSES ARE
                REASONABLE AND WERE NECESSARILY
                INCURRED TO ACHIEVE THE BENEFIT OBTAINED ...............16

        C.      PLAINTIFFS SHOULD BE AWARDED THEIR
                REASONABLE COSTS AND EXPENSES UNDER THE
                PSLRA ...............................................................................................18

III.    CONCLUSION .............................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Franklin Wireless Corp.*,
2024 WL 5179910 (S.D. Cal. Dec. 19, 2024) .......................................................14

*In re Allergan, Inc. Proxy Violation Derivatives Litig.*,
2018 WL 4959014 (C.D. Cal. Aug. 13, 2018) .......................................................4

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ................................................5, 18

*In re Anthem, Inc. Data Breach Litig.*,
2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ......................................................4

*Baker v. SeaWorld Ent., Inc.*,
2020 WL 4260712 (S.D. Cal. July 24, 2020) ..........................................4, 18, 20

*In re Banco Bradesco S.A. Sec. Litig.*,
2019 WL 6114713 (S.D.N.Y. Nov. 18, 2019) .....................................................13

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
772 F.3d 125 (2d Cir. 2014) ................................................................................18

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) .........................................................................3

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ................................................................................6

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......................................................15

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
2019 WL 6043440 (S.D. Tex. Feb. 13, 2019) .....................................................18

*Cosby v. KPMG LLP*,
2022 WL 4129703 (E.D. Tenn. July 12, 2022) ...................................................15

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018) ................................................................10

*Farrell v. Bank of Am., N.A.*,
  327 F.R.D. 422 (S.D. Cal. 2018) .................................................................... 2, 4, 5

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
  307 F.3d 997 (9th Cir. 2002) ............................................................................ 1, 3

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ...................................................... 18

*In re GreenSky Sec. Litig.*,
  No. 1:18-cv-11071-AKH, slip op. (S.D.N.Y. Oct. 22, 2021) ............................ 15

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................ 2

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) .................................................................................... 16

*In re Hewlett-Packard Co. Sec. Litig.*,
  No. 8:11-cv-01404-AG, slip op. (C.D. Cal. Sept. 15, 2014)................................. 5

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...................................................... 15

*Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*,
  No. 1:19-cv-00128-TS, slip op. (D. Utah Feb. 5, 2025) ..................................... 15

*Khoja v. Orexigen Therapeutics, Inc.*,
  2021 WL 5632673 (S.D. Cal. Nov. 30, 2021)........................................ 10, 11, 14

*Martínek v. Amtrust Fin. Servs., Inc.*,
  2022 WL 16960903 (S.D.N.Y. Nov. 16, 2022) .................................................. 12

*Maxin v. RHG & Co., Inc.*,
  2018 WL 9540503 (S.D. Cal. Feb. 16, 2018) ....................................................... 5

*McKenzie v. Fed. Exp. Corp.*,
  2012 WL 2930201 (C.D. Cal. July 2, 2012) ....................................................... 14

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y 2015) .................................................................... 10

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,
  292 F. Supp. 3d 1018 (S.D. Cal. 2017) ......................................................... 8, 10

*In re NVIDIA GPU Litig.*,
   539 F. App'x 822 (9th Cir. 2013)...........................................................................14

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008)....................................................................4

*In re Oracle Corp. Sec. Litig.*,
   No. 5:18-cv-04844-BLF, slip op. (N.D. Cal. Jan. 13, 2023)..............................19

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ......................................................................................2

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
   No. 1:16-cv-03591-GHW, slip op. (S.D.N.Y. Nov. 21, 2022) .........................15

*In re Qualcomm Inc. Sec. Litig.*,
   No. 3:17-cv-00121-JO-MS, slip op. (S.D. Cal. Sept. 27, 2024) ..............4, 14, 19

*In re Questcor Sec. Litig.*,
   No. 8:12-cv-01623-DMG, slip op. (C.D. Cal. Sept. 21, 2015) ...........................5

*In re Regulus Therapeutics Sec. Litig.*,
   2020 WL 6381898 (S.D. Cal. Oct. 30, 2020)........................................................14

*Reyes v. Experian Info. Sols., Inc.*,
   856 F. App'x 108 (9th Cir. 2021)............................................................................2

*Ruiz v. Xpo Last Mile, Inc.*,
   2017 WL 6513962 (S.D. Cal. Dec. 20, 2017)......................................................2, 4

*In re SanDisk LLC Sec. Litig.*,
   No. 3:15-cv-01455-VC, slip op. (N.D. Cal. Oct. 23, 2019) ...............................5

*Schulein v. Petro. Dev. Corp.*,
   2015 WL 12762256 (C.D. Cal. Mar. 16, 2015) ....................................................4

*Schulein v. Petro. Dev. Corp.*,
   No. 8:11-cv-01891-AG, slip op. (C.D. Cal. Mar. 16, 2015) ...............................5

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020)...................................................13, 14

*In re Silvergate Capital Corp.*,
   No. 1:24-bk-12158-KBO (Bankr. D. Del. July 15, 2025).............................15, 16

*In re Snap Inc. Sec. Litig.*,
  2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ..........................................................4

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995)......................................................................14

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ......................................................................3, 4, 5

*In re Volkswagen "Clean Diesel" Mktg. Sales Pracs., & Prods. Liab. Litig.*,
  2019 WL 2077847 (N.D. Cal. May 10, 2019) .......................................................5

*In re Wells Fargo & Co. Sec. Litig.*,
  No. 1:20-cv-04494-JLR, slip op. (S.D.N.Y. Sept. 8, 2023)..........................15, 19

*In re Wells Fargo & Co. Securities Litigation*,
  No. 1:20-cv-04494-JLR-SN (S.D.N.Y.)..................................................................9

*Wilhoite v. Hou*,
  No. 3:23-cv-02333-BEN-MSB, slip op. (S.D. Cal. July 23, 2025) ...................14

**Statutes**

15 U.S.C. § 78u-4(a)(4) ........................................................................................18

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein" and, together with BLB&G, "Lead Counsel"), respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees in the amount of 17% of the Settlement Fund.[1] Lead Counsel also seek $991,648.74 for Plaintiffs' Counsel's Litigation Expenses and $88,373.98 for costs incurred by Plaintiffs, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## I.    PRELIMINARY STATEMENT

The proposed $37.5 million Settlement of this securities class action is the result of Lead Counsel's vigorous prosecution of this Action without any compensation and on a fully contingent basis for more than two years. The litigation risks were real at every turn, and Lead Counsel's adversaries included some of the premier defense firms in the country. Lead Counsel seek attorneys' fees of 17% of the Settlement Fund—an amount approved by the six highly sophisticated Plaintiffs. We respectfully submit that the fee request is fair and reasonable for multiple reasons.

First, courts have long acknowledged the importance of incentivizing class counsel to pursue the largest possible recoveries. In the Ninth Circuit, a district court has discretion to apply either a lodestar method or a percentage-of-the-fund method in calculating a class fee award in a common fund case. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). When applying the

---

[1] Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated May 9, 2025 (ECF No. 139-1) (the "Stipulation"), or in the Joint Declaration of Jonathan D. Uslaner and Carol V. Gilden in Support of (I) Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (the "Joint Declaration" or "Joint Decl."), filed herewith. In this memorandum, citations to "¶ __" refer to paragraphs in the Joint Declaration and citations to "Ex. __" refer to exhibits to the Joint Declaration. Throughout, citations and internal quotation marks are omitted.

percentage-of-the-fund method, an attorney's fee award of "twenty-five percent is the 'benchmark' that district courts should award." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995). The requested 17% fee is substantially below that benchmark and, as discussed below, is also well within or below the range of percentage fees typically awarded in securities class actions with comparable settlements. Moreover, the requested 17% represents essentially a 1 multiplier on Plaintiffs' Counsel's lodestar, despite the fact that positive multipliers are typically awarded in securities class actions to reflect contingent-fee risks and other factors.

Second, all additional factors contemplated under *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), also strongly support the requested fee. "Factors courts commonly consider in determining a reasonable percentage include the result obtained; the reaction of the class; the effort, experience, and skill of counsel; complexity of issues; risks of nonpayment assumed by class counsel; and comparison with counsel's lodestar." *Farrell v. Bank of Am., N.A.*, 327 F.R.D. 422, 431 (S.D. Cal. 2018) (citing *Ruiz v. Xpo Last Mile, Inc.*, 2017 WL 6513962, at *7 (S.D. Cal. Dec. 20, 2017)). These additional factors would support an even higher percentage and thus clearly support the 17% requested. Courts have noted that a class action litigated on contingency is fundamentally different from a case where litigation expenses are funded by the client and attorneys are continuously paid, even if they lose, *see, e.g.*, *id.* (noting risk of non-payment in adverse legal landscape); *Reyes v. Experian Info. Sols., Inc.*, 856 F. App'x 108, 110 (9th Cir. 2021) (noting risk of proceeding on contingent basis), and the risks in this case were quite substantial.

Even if they overcame Defendants' motions to dismiss, Lead Counsel—nationally recognized securities litigators who, together, recently achieved a monumental $1 billion settlement in another matter—continued to face significant risks in discovery, in connection with class certification, and at summary judgment and/or trial. Defendants vigorously contested every element of liability and damages, and there was no guarantee that Plaintiffs would be able to establish that Defendants

made material misrepresentations, with scienter, that damaged investors. *See infra* at pp. 10-12. In addition, and as discussed in the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation, filed herewith, Lead Counsel also faced serious risks to Defendants' ability to pay—even assuming Plaintiffs were successful in litigating the merits of their case. *See* Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation at 9-11. To achieve the Settlement in the face of these risks, Lead Counsel expended an enormous amount of time, resources, and effort.

By surmounting the risks of this case and investing immense time and effort—while navigating a contentious and complex bankruptcy proceeding—Lead Counsel obtained a favorable $37.5 million result for the Settlement Class.

## II.   ARGUMENT

### A.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

#### 1.   The Requested Attorneys' Fees Are Well in Line with the Ninth Circuit's Percentage-of-Fund Benchmark, Which Is the Preferred Approach

The Ninth Circuit has approved two methods of determining attorneys' fees in cases where, as here, the amount of the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel*, 307 F.3d at 1007.

While the district court retains discretion in common fund cases to choose either method, *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 259-60 (N.D. Cal. 2015), "[m]any courts and commentators have recognized that the percentage of the available fund analysis is the preferred approach in class action fee requests

because it more closely aligns the interests of the counsel and the class, *i.e.*, class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner." *Ruiz*, 2017 WL 6513962, at *6.

"Under the percentage of the fund method, the Court awards some specific percentage of the fund as fees. The Ninth Circuit benchmark rate is twenty-five percent." *Farrell*, 327 F.R.D. at 431. Courts have recognized that the Ninth Circuit's 25% "benchmark is 'presumptively reasonable,' and it should only be adjusted upward or downward for 'unusual circumstances.'" *In re Snap Inc. Sec. Litig.*, 2021 WL 667590, at *3 (C.D. Cal. Feb. 18, 2021); *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *4 (N.D. Cal. Aug. 17, 2018).

Of note, while a 25% fee is the "benchmark" in the Ninth Circuit, courts have observed that, in "most common fund cases, the award *exceeds* that benchmark," with a 30% fee "the norm 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage.'" *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047-48 (N.D. Cal. 2008); *accord In re Allergan, Inc. Proxy Violation Derivatives Litig.*, 2018 WL 4959014, at *1 (C.D. Cal. Aug. 13, 2018); *Schulein v. Petro. Dev. Corp.*, 2015 WL 12762256, at *1 (C.D. Cal. Mar. 16, 2015).

The 17% fee requested here is well below both the Ninth Circuit's "benchmark" of 25%, and the "norm" of 30%. It is also within or below the range of percentage fees that have been awarded in other securities class actions in this District and Circuit with comparable recoveries. *See*, *e.g.*, *Vizcaino*, 290 F.3d at 1051 (affirming award of 28% of $97 million settlement, representing a 3.65 multiplier); *In re Qualcomm Inc. Sec. Litig.*, No. 3:17-cv-00121-JO-MS, slip op. at 1-2 (S.D. Cal. Sept. 27, 2024), ECF No. 450 (awarding 23% of $75 million settlement) (Ex. 11A); *Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *10 (S.D. Cal. July 24, 2020) (awarding 22% of $65 million settlement); *In re SanDisk LLC Sec. Litig.*, No. 3:15-cv-01455-VC, slip op. at 2 (N.D. Cal. Oct. 23, 2019), ECF No. 284 (Ex. 11B) (awarding 25% of $50 million settlement); *In re Volkswagen "Clean Diesel" Mktg. Sales Pracs., & Prods. Liab.*

*Litig.*, 2019 WL 2077847, at \*4 (N.D. Cal. May 10, 2019) (awarding 25% of $48 million settlement); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at \*9-10 (C.D. Cal. Oct. 25, 2016) (awarding 25% of $95 million settlement); *In re Hewlett-Packard Co. Sec. Litig.*, No. 8:11-cv-01404-AG (RNBx), slip op. at 2 (C.D. Cal. Sept. 15, 2014), ECF No. 167 (Ex. 11C) (awarding 25% of $57 million settlement); *In re Questcor Sec. Litig.*, No. 8:12-cv-01623-DMG (JPRx), slip op. at 2 (C.D. Cal. Sept. 21, 2015), ECF No. 255 (Ex. 11D) (awarding 22% of $38 million settlement); *Schulein v. Petro. Dev. Corp.*, No. 8:11-cv-01891-AG (ANx), slip op. at 11 (C.D. Cal. Mar. 16, 2015), ECF No. 265 (Ex. 11E) (awarding 30% of $37.5 million settlement).

### 2.    Other Factors Confirm the Reasonableness of the Requested Fee

"Meeting the benchmark rate does not end the analysis because '[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case.'" *Farrell*, 327 F.R.D. at 431 (quoting *Vizcaino*, 290 F.3d at 1048). "Although not mandated by the Ninth Circuit, courts often consider the following factors when determining the benchmark percentage to be applied: (1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of nonpayment assumed by counsel; (7) the reaction of the class; and (8) comparison with counsel's lodestar." *Maxin v. RHG & Co., Inc.*, 2018 WL 9540503, at \*5 (S.D. Cal. Feb. 16, 2018)

Each of these factors supports the requested fee in this case.[2]

---

[2] Courts in the Ninth Circuit also look for the "subtle warning signs" of collusion between class counsel and defense counsel, identified in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). None of those factors are present here, namely: (1) as indicated by the percentage-of-fund analysis, counsel does not seek a disproportionate distribution of the settlement; (2) there is no "clear sailing" agreement wherein Defendants agreed not to object to the fee application presented to the Court; and (3) the Stipulation provides that, in the event of a reduction in the amount of attorneys' fees award, any reduction reverts to the class fund.

### a)    The Requested Fee Is Supported by the Quality of the Settlement

As discussed in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and the declarations filed herewith, the recovery of $37.5 million in this Action is an extremely favorable result given the circumstances of the case. Those circumstances include Silvergate Capital's notice of bankruptcy and the significant ability-to-pay risks resulting from that bankruptcy and the limits on available directors' and officers' insurance. The Settlement ensures that the Settlement Class will receive: (a) $27.5 million from Silvergate Capital's D&O Insurance, which is essentially all of the remaining insurance funds; (b) more than $5 million indirectly from Silvergate's bankruptcy estate by way of the Preferred Equity Holder Contribution,[3] a rare source of recovery in a securities class action with a bankrupt issuer; and (c) $4.68 million from the Underwriter Defendants. The recovery also eliminates the real risks that protracted litigation might lead to lesser or no recovery—including very significant risks relating to liability, loss causation, and damages—and guarantees a significant and near-term recovery for the Settlement Class.

The $37.5 million Settlement followed extensive and complex negotiations between experienced counsel, which included two mediation sessions overseen by Layn R. Phillips, a former United States District Judge and experienced mediator of securities class actions and other complex litigation. The $37.5 million Settlement amount was based on a mediator's recommendation made by Judge Phillips. Judge Phillips has submitted a declaration in support of the Settlement, which details the Parties' mediation efforts and states that "the negotiations between the Parties were

---

[3] As described below, pursuant to the Preferred Equity Holder Contribution, $5.32 million of funds that otherwise would be distributed to holders of preferred stock in Silvergate Capital under the Debtors' Chapter 11 Plan will be paid over to the Settlement Class, which is a highly unique provision in a bankruptcy case.

vigorous and conducted at arm's-length and in good faith," and "the Settlement represents a recovery and outcome that is reasonable and fair for the Settlement Class and all Parties involved." Declaration of Layn R. Phillips in Support of Plaintiffs' Motion for Final Approval of Settlement ("Phillips Decl."), attached hereto as Exhibit 1, at ¶¶ 13, 14.

In assessing this factor, courts consider whether the requested fee (i) is in line with fee percentages in comparable actions; and (ii) would not result in an "unwarranted windfall." Here, a 17% fee in this case is consistent with—or below— fee percentages awarded in comparable cases and would not result in any "windfall."

### b) The Requested Fee Is Reasonable in Light of the Substantial Time and Labor Expended

Lead Counsel's substantial work prosecuting this Action and achieving the Settlement support the requested fee percentage. As detailed in the Joint Declaration, Lead Counsel dedicated significant time and exerted substantial effort over the last several years diligently litigating the claims, all without receiving any form of compensation or reimbursement for expenses. Among other things, Lead Counsel: (1) conducted an extensive investigation into the alleged fraud, including interviews with dozens of former Silvergate employees and a thorough review of public information such as SEC filings, analyst reports, conference call transcripts, news articles, and information from other litigation and public inquiries involving Silvergate and FTX; (2) drafted a detailed Complaint based on Lead Counsel's extensive investigation; (3) researched and drafted two detailed opposition briefs to the motions to dismiss filed by three sets of Defendants, including oppositions to two requests for judicial notice filed by Defendants and motions to seal; (4) conducted oral argument on the motions; (5) consulted extensively with experts, including on issues of damages, loss causation, and traceability; (6) worked extensively with bankruptcy counsel to protect the interests of Plaintiffs and the Settlement Class in

light of Silvergate Capital's bankruptcy; and (7) engaged in extended arm's-length settlement negotiations overseen by an independent mediator, including through two mediation sessions that took place seven months apart and which included extended discussions and negotiations over several months following the sessions.

To date, Lead Counsel has expended over 6,700 hours prosecuting this Action. After the Court's approval of the Settlement, Lead Counsel will dedicate further time to effectively oversee the claims administration process and facilitate the distribution of the Settlement funds, which will be uncompensated. The time and effort invested by Lead Counsel in this case played a pivotal role in securing this settlement, thereby underscoring the reasonableness of the fee request. *See Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1055-56 (S.D. Cal. 2017) (noting efforts of counsel, including "investigating Plaintiff's claims and filing the complaint and successive amended complaints; (2) negotiating and preparing extensive settlement documents, including preparation for the mediation …; (3) moving for preliminary and final approval of the Settlement; and" (4) addressing objections).

### c)   Counsel's Experience and Skill Support the Requested Fee

Copies of the firm resumes of Lead Counsel, BLB&G and Cohen Milstein, which includes information about the standing of the firms, are attached as Exhibits 9A-3 and 9B-3, respectively.

As demonstrated by its firm resume, BLB&G is among the most experienced and skilled law firms in the securities litigation field and in the country, with a long and successful track record representing investors in such cases. BLB&G is consistently ranked among the top plaintiffs' firms in the country. BLB&G was recently ranked as the top firm in the nation for plaintiff-side securities litigation work in *Chambers USA*'s 2025 guide. In addition, as reflected in ISS/Securities Class Action Services' latest report on the "Top 100 U.S. Class Action Settlements of All Time," BLB&G has been lead or co-lead counsel in more top recoveries than any

other firm in U.S. history. Further, BLB&G has taken complex cases such as this to trial, and is among the few firms with experience doing so on behalf of plaintiffs in securities class actions. This willingness and ability added valuable leverage in the settlement negotiations.

As demonstrated by its firm resume, Cohen Milstein similarly is regarded as one of the top plaintiff-side law firms in the country. In 2025, *The National Law Journal* named the firm Plaintiff Law Firm of the Year. In addition, Cohen Milstein's Securities Litigation & Investor Protection practice is ranked as among the nation's leading practices of its kind, including being named Securities Practice of the Year by *The National Law Journal* (2024) and *Law360* (2020, 2022, 2023). In addition, *Chambers USA*, *Legal 50*0, and *Benchmark Litigation* consistently rank the firm among the top plaintiff-side securities litigation practices in the nation.

Cohen Milstein has recovered billions of dollars for its public pension fund and Taft-Harley fund clients, and other institutional investor clients, including in some of the largest and most complex securities class actions in recent history. For example, together with BLB&G as Co-Lead Counsel noted above, Cohen Milstein obtained a $1 billion settlement for the class in *In re Wells Fargo & Co. Sec. Litig.*, No. 1:20-cv-04494-JLR-SN (S.D.N.Y.), which is the 17th largest securities class action settlement ever, the sixth largest in the last decade, the ninth largest ever in the Second Circuit, and the largest ever without a restatement or related actions by the Securities Exchange Commission or U.S. Department of Justice. Cohen Milstein also played a prominent role in seeking justice for those affected by the mortgage-backed securities ("MBS") crisis, serving as lead or co-lead counsel in nine MBS cases that settled for a total of $2.03 billion.

### d) The Magnitude and Complexity of the Litigation Support the Requested Fee

The magnitude and complexity of this case further support the requested fee award. *Nunez*, 292 F. Supp. 3d at 1055-56. Class action suits "have a well-deserved

reputation as being most complex." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 669 (S.D.N.Y 2015); *see also, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at \*10 (S.D. Cal. Nov. 30, 2021) (noting the complexity of securities class actions). This reputation is especially warranted for securities class actions, which are "notably difficult and notoriously uncertain to litigate." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018).

This case was no exception. This action—involving six plaintiffs and twenty-one defendants—gave rise to a multitude of hotly disputed issues concerning price impact, truth-on-the-market, loss causation, and damages. These complex legal and factual disputes demanded that Lead Counsel utilize their expertise and specialized knowledge in effectively prosecuting securities class actions. Lead Counsel dedicated enormous resources to investigate the claims; oppose Defendants' motion to dismiss; and construct persuasive written and oral presentations of legal arguments and damages at mediation. It was only through Lead Counsel's effective and sophisticated prosecution of this case that the Settlement was achieved.

### e) The Substantial Risk and Duration of the Litigation Support the Requested Fee

The significant risks that Lead Counsel shouldered for the benefit of the Settlement Class in prosecuting this securities class action on a fully contingent basis further support the requested fee reward. Lead Counsel undertook this representation on a fully-contingent basis, recognizing from the outset that it would necessitate an outlay of significant resources and the payment of millions of dollars in expenses—all without any assurance that Lead Counsel would receive any compensation or recoup any expenses. *See Khoja*, 2021 WL 5632673, at \*10 ("Lead Counsel's request for 33 percent of the \$4.8 million Settlement Amount is reasonable under the circumstances, particularly considering the substantial results achieved, the risk to Lead Counsel in taking a complex securities class action on contingency[.]").

As discussed at length in the accompanying Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation, first, with respect to ability-to-pay risks, Silvergate Capital and two of its affiliates (collectively, the "Debtors") filed for Chapter 11 bankruptcy protection in September 2024, while the motions to dismiss the Complaint in this Action were still pending, having been extensively briefed and argued. The notice of bankruptcy automatically stayed all litigation against Silvergate Capital and created significant hurdles for the Settlement Class to obtaining any substantial recovery in this litigation. The Debtors' filings in the Bankruptcy Court have made clear that, if litigation were to proceed, there likely would not be sufficient funds available in the Debtors' estate to allow payment from the estate to members of the Settlement Class.

Second, the Action also presented several substantial risks to establishing liability. Plaintiffs would have faced substantial risks in establishing each of the required elements of falsity, scienter, loss causation, and damages. For one, Plaintiffs faced challenges at trial in establishing that each alleged misstatement was in fact false and misleading. For another, with respect to scienter for the Exchange Act[4] claims, Defendants contended that they did not act with fraudulent intent. Finally, Plaintiffs faced risks in proving price impact, loss causation, and damages, as the Parties' disputes concerning the amount of the Company's stock price drops attributable to the alleged fraud (versus other confounding factors, *i.e.*, negative causation) would be a hotly contested issue at class certification, summary judgment, and trial, with Plaintiffs and Defendants providing dueling expert testimony.

All of these issues would be litigated over many years. At the time the Settlement was reached, the motions to dismiss had not yet been resolved (and the

---

[4] With respect to the Securities Act claims against the Underwriter Defendants and Silvergate's directors, while there was no scienter requirement as to these claims, the set of alleged misstatements contained in the Offering Materials was substantially narrower than the misstatements at issue for the Exchange Act claims.

resolution of the motions might have narrowed Plaintiffs' claims). Thereafter, Plaintiffs would have had to prevail on a contested motion for class certification, at summary judgment, and at trial. Even if Plaintiffs ultimately prevailed at trial, they still faced likely appeals—a process that could extend for years and might lead to a smaller recovery, or no recovery at all.

In sum, given the very significant risks of continued litigation and the range of potential outcomes at trial and on appeal, Plaintiffs and Lead Counsel strongly believe that the $37.5 million Settlement represents a highly favorable result for the Settlement Class.

**f)**     **The Reaction of the Settlement
Class Supports the Requested Fees**

The Settlement Class's support for the requested fees further confirms that they should be approved. For one, Lead Counsel's fee request received authorization from all Plaintiffs. Following the resolution of this Action, Plaintiffs individually assessed and reviewed Lead Counsel's performance and considered the amount of an appropriate fee in light of the circumstances. At the conclusion of that process, each granted approval to the 17% fee request. *See Martínek v. Amtrust Fin. Servs., Inc.*, 2022 WL 16960903, at *1 (S.D.N.Y. Nov. 16, 2022) (that requested fee of 33.3% had "been reviewed and approved as reasonable by Lead Plaintiff, who is an experienced investor, and who closely supervised the prosecution and Settlement of the Action" supported approval); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *17 (S.D.N.Y. July 21, 2020) ("the approval of the requested fee by Lead Plaintiff, which was actively involved in the prosecution and settlement of the Action, supports approval of the fee"); *In re Banco Bradesco S.A. Sec. Litig.*, 2019 WL 6114713, at *2 (S.D.N.Y. Nov. 18, 2019) (fact that requested fee of 25% had been "reviewed and approved as reasonable by Lead Plaintiff, who oversaw the prosecution and resolution of the Action" supported approval).

Furthermore, as discussed in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and the declarations filed herewith, although the August 13, 2025, deadline set by the Court for Settlement Class Members to object to the Settlement has not yet passed, to date, no objections to the fee request or to the Settlement or the Plan of Allocation have been received. ¶ 67. Plaintiffs will file reply papers by August 27, 2025, addressing any objections that may be received.

### g) A Comparison With Counsel's Lodestar Supports the Requested Fees

Exhibits 9A, 9B, and 9C are Declarations from Jonathan D. Uslaner on behalf of BLB&G, Carol V. Gilden on behalf of Cohen Milstein, and Mark Zigler on behalf of Koskie Minsky, in support of the motion for attorneys' fees and Litigation Expenses. The first page of Exhibit 9 contains a summary chart of the hours expended and lodestar amounts for each firm, as well as a summary of each firm's Litigation Expenses. Included within each supporting Declaration are schedules summarizing the hours and lodestar of each firm from the inception of the case through June 30, 2025; a summary of Litigation Expenses, by category; and a firm resume, among other documents. No time expended in preparing the application for fees and expenses has been included.

As set forth in Exhibit 9, Plaintiffs' Counsel collectively expended a total of 6,761.5 hours in the prosecution of the Action from its inception through June 30, 2025, for a lodestar of $6,181,391.30. The requested fee of 17% of the Settlement Fund would be $6,375,000 (plus interest accrued at the same rate as the Settlement Fund), and therefore represents a multiplier of just 1.03 of Plaintiffs' Counsel's lodestar. This is at the very low end of the range of multipliers typically seen in comparable securities class actions and in other class actions involving significant contingency fee risk, in this Circuit and elsewhere. *See, e.g.*, *Ali v. Franklin Wireless Corp.*, 2024 WL 5179910, at *13 (S.D. Cal. Dec. 19, 2024) ("In securities class

actions cases, 'courts have approved multipliers ranging between 1 and 4.'"); *McKenzie v. Fed. Exp. Corp.*, 2012 WL 2930201, at *10 (C.D. Cal. July 2, 2012) ("[C]ourts using the lodestar method to calculate attorney fees awards in civil class actions typically apply multipliers in the range of 2 to 4."); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *In re NVIDIA GPU Litig.*, 539 F. App'x 822, 826 (9th Cir. 2013) (granting fees of $13 million for $10 million worth of lodestar); *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *10 (S.D. Cal. Nov. 30, 2021) ("[T]he lodestar cross-check here yields a fractional multiplier, which further supports Lead Counsel's 33 percent fee request."); *In re Regulus Therapeutics Sec. Litig.*, 2020 WL 6381898, at *7 (S.D. Cal. Oct. 30, 2020) ("[A] multiplier less than 1.0 is below the range typically awarded by courts [in common fund cases] and is presumptively reasonable.").

Of note, federal district courts have repeatedly determined that Lead Counsel's rates in securities cases are reasonable for purposes of the lodestar cross-check analysis. For cases recently approving BLB&G's rates for the purpose of lodestar cross-check see, for example, *Signet*, 2020 WL 4196468, at *16; *Hefler*, 2018 WL 6619983, at *14; *Wilhoite v. Hou*, No. 3:23-cv-02333-BEN-MSB, slip op. at 1-3 (S.D. Cal. July 23, 2025), ECF No. 331 (Ex. 11F) (approving fee based on lodestar cross-check using BLB&G's current 2025 rates); *In re Qualcomm Inc. Sec. Litig.*, No: 3:17-cv-00121-JO-MS, slip op. at 1-2 (S.D. Cal. Sept. 27, 2024), ECF No. 450 (Ex. 11A) (approving fee based on lodestar cross-check using BLB&G's 2024 rates). For cases recently approving Cohen Milstein's rates for the purpose of lodestar cross-check see, for example, *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, No. 1:19-cv-00128-TS, slip op. at 2 (D. Utah Feb. 5, 2025), ECF No. 293 (Ex. 11G); *In re Wells Fargo & Co. Sec. Litig.*, No. 1:20-cv-04494-JLR-SN, slip op. at 2 (S.D.N.Y. Sept. 8, 2023), ECF No. 206 (Ex. 11H); *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, No. 1:16-cv-03591-GHW, slip op. at 2-3 (S.D.N.Y. Nov. 21, 2022), ECF No. 303 (Ex. 11I); *Cosby*

*v. KPMG LLP*, 2022 WL 4129703, at *2 (E.D. Tenn. July 12, 2022); *In re GreenSky Sec. Litig.*, No. 1:18-cv-11071-AKH, slip op. at 3 (S.D.N.Y. Oct. 22, 2021), ECF No. 211 (Ex. 11J).

The significantly higher rates typically charged by defense counsel underscore the reasonableness of Lead Counsel's rates and the lodestar multiplier. *See In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *14 (S.D.N.Y. Dec. 19, 2014) (approving as reasonable hourly rates in securities action that were "comparable to . . . defense-side law firms litigating matters of similar magnitude"); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *13 (S.D.N.Y. May 9, 2014) (approving hourly rates as reasonable because they were "in line with rates charged by New York firms that *defend* class actions on a regular basis") (emphasis in original, citation omitted).

For example, the hourly rates for Silvergate's counsel, Sheppard, Mullin, Richter & Hampton LLP and Cravath Swaine & Moore LLP, based on their most recent filings in Silvergate's bankruptcy proceedings, ranged from $1,140 to $1,680 for partners; $950 to $1,025 for special counsel; and $910 to $1,025 for associates at Sheppard Mullin; and from $1,970 to $2,360 for partners; $1,475 to $1,810 for "practice area attorney" or of counsel; $860 to $1,260 for associates; and $610 for discovery attorneys at Cravath. *See In re Silvergate Capital Corp.*, No. 1:24-bk-12158-KBO, Notice of Third Interim Application of Sheppard, Mullin, Richter & Hampton LLP, as Special Counsel to the Debtors and Debtors in Possession (Bankr. D. Del. July 15, 2025), ECF No. 862 (Ex. 11K) (noting an attorney blended rate of $1,154); *In re Silvergate Capital Corp.*, No. 1:24-bk-12158-KBO, Notice of Third Interim Fee Application of Cravath, Swaine & Moore LLP (Bankr. D. Del. July 15, 2025), ECF No. 861 (noting a blended rate of $1,424) (Ex. 11L). These rates are comparable to or, in most cases, *higher* than Lead Counsel's rates.

---

### 3.    The Requested Fee Is Consistent with the Notice

The Notice was approved by the Court in its Preliminary Approval Order. ECF No. 140. The Notice advised Settlement Class Members that Lead Counsel intended to apply to the Court for attorneys' fees of an amount up to 17% of the Settlement Fund—*i.e.*, the amount that Lead Counsel is seeking. *See* Notice ¶¶ 5, 43 (Segura Decl. Ex. A). Again, to date, there has been no objection from Settlement Class Members to such a fee request.

\*        \*        \*

For each of these reasons, Lead Counsel respectfully requests a fee award of 17% of the Settlement Fund.

### B.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

An attorney usually may recover "out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (*e.g.*, costs for "service of summons and complaint, service of trial subpoenas, fee for defense expert at deposition, postage, investigator, copying costs, hotel bills, meals, messenger service and employment record reproduction").

As set forth in Exhibit 9, Plaintiffs' Counsel have paid or incurred a total of $991,648.74 in Litigation Expenses in connection with the prosecution of the Action. These expense items are billed separately by Plaintiffs' Counsel, and such charges are not duplicated in Plaintiffs' Counsel's hourly rates.

Of the total amount of expenses, $178,807.15, was expended for the retention of experts and consultants. As discussed above, Lead Counsel consulted with several well-qualified experts in financial economics concerning market efficiency, loss causation, and damages during their investigation and the preparation of the Complaint, during the settlement negotiations with Defendants, and in connection with the development of the proposed Plan of Allocation. In addition, Lead Counsel

also consulted with an expert in securities tracing relevant to the Settlement Class's Securities Act claims.

Another major component of expenses was for the retention of Plaintiffs' specialized bankruptcy counsel at Lowenstein Sandler who played a critical role in assisting Plaintiffs and Lead Counsel to navigate the complex bankruptcy process and protect the interests of the class in the settlement negotiations. Lowenstein Sandler's total fees and expenses are $499,280.00 or 50% of the total.

Another large component of the Litigation Expenses was for online legal and factual research, which included research necessary to prepare the Complaint, research the law pertaining to the claims asserted in the Action, and oppose Defendants' motions to dismiss. The charges for online research amounted to $130,543.86 or 13% of the total amount of expenses.

Lead Counsel also incurred $9,810.00 in attorneys' fees for the retention of independent counsel, Hach Rose Schirripa & Cheverie LLP, to represent former Silvergate employees that Lead Counsel contacted during the course of their investigation and who wished to be represented by independent counsel.

The other expenses for which Lead Counsel seek payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, court fees, court reporting costs, travel costs, long distance telephone charges, and postage and delivery expenses. All of the Litigation Expenses incurred by Plaintiffs' Counsel were reasonable and necessary to the successful litigation of the Action, and have been approved by Plaintiffs. *See* Gill Decl. ¶ 7; Thomas Decl. ¶ 7; Lenoir Decl. ¶ 7; Nosè Decl. ¶ 7; Igel-Harris Decl. ¶ 7; Fitzpatrick Decl. ¶ 7.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for reimbursement of Litigation Expenses in an amount not to exceed $1.4 million, which may include the reasonable costs and expenses of Plaintiffs directly related to their representation of the Settlement Class. Notice ¶¶ 5, 44. The

total amount of Litigation Expenses requested is \$1,080,022.72, which includes \$991,648.74 for expenses incurred by Plaintiffs' Counsel and \$88,373.98 in reimbursement of costs and expenses incurred by Plaintiffs, an amount well below that in the Notice.

### C. PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES UNDER THE PSLRA

The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). There is "persuasive authority supporting approval of the requested awards 'to compensate representative plaintiffs for the time and effort they spent on behalf of a class.'" *Baker*, 2020 WL 4260712, at \*12; *see also, e.g.*, *Amgen*, 2016 WL 10571773, at \*10 (awarding institutional class representative \$30,983.99 in expenses related to its participation in litigation, including reimbursement of time for various staff); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 133 (2d Cir. 2014) (affirming award of over \$450,000 to representative plaintiffs for time spent by their employees on the action); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2019 WL 6043440, at \*3 (S.D. Tex. Feb. 13, 2019) (awarding aggregate of over \$56,000 to four institutional plaintiffs); *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at \*19 (E.D.N.Y. Sept. 18, 2007) (granting PSLRA awards where, as here, "the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks and rates appear reasonable to the furtherance of the litigation").

Here, Plaintiffs seek reimbursement of a total of \$88,373.98 in costs and expenses they incurred directly related to their representation of the Settlement Class. Specifically, Lead Plaintiff Indiana seeks \$14,062.50 based on 72.75 hours that its employees dedicated to the Action. *See* Gill Decl. ¶¶ 3-4, 9. Lead Plaintiff Boston seeks \$9,076.86 based on over 98 hours devoted to the Action by its employees. *See*

Thomas Decl. ¶¶ 3-4, 9. Lead Plaintiff Chicago Teachers requests $26,956.38 based on the time its employees dedicated to the Action. *See* Lenoir Decl. ¶¶ 3-4, 9. Similarly, Lead Plaintiff Local 793 requests $20,200 in compensation for the time dedicated by its employees and Trustees. *See* Nosè Decl. ¶¶ 3-4, 9. Lead Plaintiff Wespath requests $16,800 for 120 hours spent by its Associate General Counsel. *See* Igel-Harris Decl. ¶¶ 3-4, 9. Finally, Plaintiff Bucks County requests $1,278.24 in compensation for the time devoted by its staff. *See* Fitzpatrick Decl. ¶¶ 3-4, 9.

The number of hours worked, the hourly rates applied to the time devoted by Plaintiffs' employees, and total amounts sought are all reasonable here. While the case had only proceeded through the motion to dismiss stage, the extended settlement negotiations and complications arising from Silvergate's bankruptcy necessitated the substantial time devoted to communication between Plaintiffs and their counsel. Plaintiffs' hourly rates, which are based on either the employees' annual salaries or an estimate of their market value rates, are within the range that have been awarded in prior PSLRA awards in comparable cases. *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, No. 5:18-cv-04844-BLF, slip op. at 3 (N.D. Cal. Jan. 13, 2023), ECF No. 147 (Ex. 11M) (awarding PSLRA award of $64,750 to Lead Plaintiff based on hourly rates ranging from $200 to $500); *In re Wells Fargo & Co. Sec. Litig.*, No. 1:20-cv-04494-JLR-SN, slip op. at 3-4 (S.D.N.Y. Sept. 8, 2023), ECF No. 206 (awarding $83,600 to three lead plaintiffs based on hourly rates ranging up to $550) (Ex. 11H). The overall amount awarded, totaling $88,373.98, or an average of approximately $15,000 per Plaintiff, is also well within the range commonly awarded. *See, e.g.*, *In re Qualcomm Inc. Sec. Litig.*, No: 3:17-v-00121-JO-MS, slip op. at 3 (S.D. Cal. Sept. 27, 2024), ECF No. 450 (Ex. 11A) (awarding $16,552.77 to one lead plaintiff and $17,500 to another); *Baker*, 2020 WL 4260712, at *12 (awarding $10,569 to one lead plaintiff and $60,000 to another).

## III.   CONCLUSION

For the foregoing reasons, Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 17% of the Settlement Fund; $991,648.74 for the reasonable expenses incurred by Plaintiffs' Counsel in connection with the prosecution of the Action; and $88,373.98 for Plaintiffs' costs and expenses, as authorized by the PSLRA.

Dated:  July 30, 2025                                    Respectfully submitted,

*/s/ Carol V. Gilden*                                       */s/ Jonathan D. Uslaner*
**COHEN MILSTEIN SELLERS**              **BERNSTEIN LITOWITZ BERGER**
   **& TOLL PLLC**                                         **& GROSSMANN LLP**
Carol V. Gilden (*pro hac vice*)                    Jonathan D. Uslaner (Bar No. 256898)
cgilden@cohenmilstein.com                       jonathanu@blbglaw.com
200 S. Wacker Drive, Suite 2375               Lauren M. Cruz (Bar No. 299964)
Chicago, IL 60606                                      lauren.cruz@blbglaw.com
Tel: (312) 629-3737                                    2121 Avenue of the Stars, Suite 2575
                                                              Los Angeles, CA  90067
                                                              Tel: (310) 819-3470
-and-

                                                              -and-
Steven J. Toll (*pro hac vice*)
stoll@cohenmilstein.com
S. Douglas Bunch (*pro hac vice*)                John J. Rizio-Hamilton (*pro hac vice* pending)
dbunch@cohenmilstein.com                       johnr@blbglaw.com
Jan Messerschmidt (*pro hac vice*)             Shane D. Avidan (*pro hac vice* pending)
jmesserschmidt@cohenmilstein.com          shane.avidan@blbglaw.com
Brendan Schneiderman (*pro hac vice*)        1251 Avenue of the Americas
bschneiderman@cohenmilstein.com            New York, NY  10020
1100 New York Ave., N.W., Suite 800          Tel: (212) 554-1400
Washington, DC 20005
Tel: (202) 408-4600

-and-

Christina D. Saler (*pro hac vice*)
csaler@cohenmilstein.com
100 N. 18th Street
Suite 1820
Philadelphia, PA 19103

Tel: (267) 479-5707

*Lead Counsel for Plaintiffs and the Settlement Class*